1   Christopher C. McNatt, Jr.
    Cal. Bar No. 174559
2   SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP
    2 North Lake Avenue, Suite 460
3   Pasadena, CA 91101
    Tel.: (626) 795-4700
4   Fax: (626) 795-4790
    cmcnatt@scopelitis.com
5
    Attorney for Defendants,
6   Exel Direct Inc.; DPWN Holdings (USA), Inc., improperly named and served as DHL Express
7   (USA), Inc.; and Deutsche Post Beteiligungen Holding GmbH, improperly named as Deutsche
    Post DHL

8              UNITED STATES DISTRICT COURT
9           NORTHERN DISTRICT OF CALIFORNIA

10  DANIEL VILLALPANDO, individually and on  )
    behalf of all others similarly situated,       )
11                            )   CASE NO. _____
                            )
12        Plaintiffs,              )
                            )
13      vs.                   )
                            )   **CLASS ACTION**
14  EXEL DIRECT INC., DEUTSCHE POST DHL, )   **NOTICE OF REMOVAL**
    DHL EXPRESS (USA), INC., and        )
15  DOES 1 to 50,              )
                            )
16      Defendants.          )
                            )
17                            )
   _____)

18      PLEASE TAKE NOTICE that Defendants, Exel Direct, Inc. ("Exel"), Deutsche Post

19  DHL ("Deutsche Post"), DHL Express (USA), Inc. ("DHL"), hereby removes this case from the

20  Superior Court of Alameda County, California, to the U.S. District Court for the Northern

21  District of California. In support of this removal, Defendants state as follows:

22      1.    **The Action.**  Plaintiff, Daniel Villalpando, filed his Class Action Complaint

23  captioned *Daniel Villalpando, individually and on behalf of others similarly situated v. Exel*

24  *Direct Inc., Deutsche Post DHL, DHL Express (USA), Inc., and Does 1 through 50, inclusive,*

25  Case No. RG12634666 (the "*Class Action Complaint*"), in the Superior Court of Alameda

26  County, California, on June 14, 2012. The *Class Action Complaint* asserts causes of action for

27

28

1 │ (1) failure to pay minimum wage & liquidated damages (Labor Code §§ 1182.11, 1182.12, 1194,
2 │ 1197, and 1197.1; IWC Wage Order No. 9; and Minimum Wage Order); (2) failure to pay
3 │ overtime (Labor Code §§ 510 and 1194 *et seq.*, and IWC Wage Order No. 9); (3) failure to
4 │ provide off-duty meal periods (Labor Code §§ 226.7 and 512; and Cal. Code Regs., Title 8
5 │ § 11090 sections 7 and 11); (4) failure to provide off-duty rest periods (Labor Code §§ 226.7 and
6 │ C.C.R., Title 8 § 11090 section 12); (5) unlawful deductions from wages (Labor Code §§ 221,
7 │ 223, and 400-410; IWC Wage Order No. 9; and Title 8 C.C.R. § 11090 section 8); (6) cost of
8 │ physical examinations (Labor Code § 222.5); (7) coerced purchases (Labor Code § 450 *et seq.*);
9 │ (8) reimbursement of business expenses (Labor Code § 2802); (9) failure to keep accurate
10 │ payroll records (Labor Code §§ 1174 & 1174.5); (10) failure to furnish accurate wage
11 │ statements (Labor Code § 226); (11) waiting time penalties (Labor Code §§ 201-203); (12)
12 │ willful misclassification of individual as independent contractor (Labor Code § 226.8); and (13)
13 │ unfair competition (Bus. & Prof. Code §§ 17200, *et seq.*) Copies of all of the pleadings and
14 │ papers filed in the Superior Court of Alameda County, California, of which Defendants are
15 │ aware, are attached as *Exhibit A*.

16 │     **2.**    **Statutory Grounds for Removal.** This action is removable under 28 U.S.C.
17 │ § 1441(a) and 28 U.S.C. § 1453. 28 U.S.C. § 1441(a) provides for the removal of state court
18 │ civil actions over which U.S. District Courts have original jurisdiction. As is explained in
19 │ greater detail below, this Court has original jurisdiction over this case under 28 U.S.C. §
20 │ 1332(d)(2)(A) because this is a class action in which the proposed class includes at least 100
21 │ members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at
22 │ least one putative class member is a citizen of a state different from one of the defendants. As
23 │ such, this action is removable pursuant to 28 U.S.C. § 1453, which provides that a class action
24 │ may be removed to federal court in accordance with 28 U.S.C. § 1446.

25 │     The Court also has original jurisdiction over this case under 28 U.S.C. § 1332(d)(2)(C)
26 │ because this is a class action in which the proposed class includes at least 100 members, the

1
2
3

amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one putative class member is a United States citizen, while at least one defendant is a citizen of a foreign nation.

4
5
6

       3.    **Citizenship of the Parties.**  Plaintiff Villalpando alleges he is a resident of Contra Costa County, California. *Class Action Complaint,* ¶ 10. He is therefore a citizen of California.

7
8
9
10
11
12
13
14
15
16
17

      Defendant Exel is a California corporation with its principal place of business in Ohio and is therefore a citizen of both California and Ohio. *See id.* at ¶ 12; *Hertz Corp. v. Friend,* 130 S.Ct. 1181, 1192 (2010) ("We conclude that "principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's "nerve center." And in practice it should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination"). Co-defendant Deutsche Post[1] is a German corporation with its principal place of business in Germany and is therefore a citizen of Germany. Co-defendant DHL is an Ohio corporation with its principal place of business in Florida and is therefore a citizen of both Ohio and Florida.

18
19
20
21
22
23

      Plaintiff's naming of unidentified "Doe" defendants is irrelevant to removability. *See* 28 U.S.C. § 1441(a) ("For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded."); *Kruso v. Int'l Tel. & Telegraph Corp.,* 872 F.2d 1416, 1424 (9th Cir. 1989) (the naming of Doe defendants cannot defeat diversity

24
25
26
27

[1] Plaintiff wrongly identifies Deutsche Post as the entity owning Exel. *Class Action Complaint,* ¶ 12 ("Exel Direct is a wholly-owned entity of Deutsche Post DHL"). Exel is owned by DPWN Holdings (USA), Inc., an Ohio corporation with its principal place of business in Ohio. DPWN Holdings (USA), Inc. is wholly-owned by Deutsche Post Beteiligungen Holding GmbH, a German corporation with its principal place of business in Germany. This mistake does not affect the citizenship analysis.

28

1    jurisdiction).    Thus, the diversity requirements of both 28 U.S.C. §§ 1332(d)(2)(A) and

2    1332(d)(2)(C) are satisfied.

3        **4.    The Aggregate Number of Proposed Class – 28 U.S.C. 1332(d)(5)(B).**  Plaintiff

4    defines the proposed class to consist of

5
6              All current and former Drivers who were required to sign the
               "Independent Truckman's Agreement" and provided delivery services for
7              Exel Direct in the State of California during the period of June 2008
               through the present.

8    *Class Action Complaint,* ¶ 70.  It is not clear if Plaintiff intends to include only California

9    residents or all independent contractors that work or otherwise perform services in California in

10   the class definition.  For instance, at any given time Exel utilizes the transportation services of a

11   substantial number of independent contractor drivers across the country.  Some indeterminate

12   number of these independent contractors have delivered loads from or to California during the

13   proposed class period.  Only a portion of these independent contractors are offered work by

14   Exel's California offices.  It is unclear whether Plaintiff claims that no California law causes of

15   action apply extraterritorially to California residents outside of California or to non-California

16   residents who happen to be performing work in California.

17       In any case, regardless of how Plaintiff's insufficient definition is interpreted, the

18   proposed class contains more than 100 members.  Based on a review of its financial records,

19   Exel has determined that the aggregate number of independent contractors who are residents of

20   California and have been offered work by its California offices ("California-Based Independent

21   Contractors") is at least 347, which is more than the 100 members or greater required by 28

22   U.S.C. § 1332(d)(5)(B).  *Declaration of Renee Albarano ("Albarano Decl."),* ¶ 2, attached

23   hereto as *Exhibit B.*

24       **5.    Amount in Controversy – 28 U.S.C. §§ 1332(a) and (d)(2).**    Although

25   Defendants deny all of Plaintiff's material allegations, the amount in controversy exceeds the

26
27
28
                                        Notice of Removal

                                              4

1  $5,000,000 jurisdictional threshold under CAFA by virtue of the *Class Action Complaint's*
2  allegations in the Third, Fourth, Eighth, and Twelfth Causes of Action alone.

3          i.      *Reimbursement of Business Expenses (Cal. Lab. Code § 2802).* Plaintiff claims
4  he "and the Class members incurred necessary expenditures and losses in direct consequence of
5  the discharge of their" work including "truck rentals/leases, towing, gasoline, tires, maintenance,
6  repairs, car washes, and insurance" costs and requests that the Court award "plaintiff and the
7  Class restitution for" all business expenses. *Class Action Complaint*, ¶¶ 107-108(a); Prayer for
8  Relief, ¶ P. A review of Exel's settlement statement records shows that in 2011 and 2012,
9  respectively, $2,203,650 and $942,232 were deducted from California-Based Independent
10  Contractor settlements for the kind of items for which Plaintiff seeks reimbursement. *Albarano*
11  *Decl.*, ¶ 3. Accordingly, the amount in controversy for the Cal. Lab. Code § 2802 claim based on
12  2011 and 2012 data alone is **$3,145,882**, a number that would only increase when settlement
13  deduction information for 2008, 2009, and 2010 are considered.

14          ii.     *Willful Misclassification of Individual as Independent Contractor (Cal. Lab.*
15  *Code § 226.8).* Plaintiff alleges Defendants have "engaged in or is engaging in a pattern or
16  practice of misclassifying its drivers" and seeks the "recovery of civil penalties of not less than
17  ten thousand dollars ($10,000) and not more than twenty-five thousand dollars ($25,000) for
18  each violation." *Class Action Complaint*, ¶ 129. Between January 1, 2012 and August 2, 2012,
19  Exel has contracted with 158 California-Based Independent Contractors. *Albarano Decl*, ¶ 5.
20  The amount in controversy based on this claim alone is therefore **$3,950,000** (158 California-
21  Based Independent Contractors x $25,000).

22          iii.    *Meal and Rest Break Claims (Cal. Lab. Code § 512).* Plaintiff alleges
23  "Defendants knowingly and wrongfully refused to perform their obligation to provide" off-duty
24  meal periods to him and class members. *Class Action Complaint*, ¶ 85. The 347 California-
25  Based Independent Contractors worked a total of at least 20,000 weeks during the potential
26  recovery period from June 14, 2008 to August 2, 2012. *Albarano Decl.*, ¶ 2. Consequently, the
27
28

1
2

aggregate value of the meal break claim would be, at a minimum, **$800,000** ($8.00 an hour for each meal period missed[2] x 5 missed meal periods per week[3] x 20,000 weeks worked).

3
4
5
6
7

Plaintiff further asserts that "Defendants knowingly and willingly refused to perform their obligations to authorize and permit" he and other class members to take off-duty rest breaks. *Class Action Complaint,* ¶ 89. Consequently, the aggregate claim of Plaintiff's rest break claim would be at least **$800,000** ($8.00 an hour for each rest period missed x 5 missed rest periods per week x 20,000 weeks worked).

8
9
10
11

c. Attorney Fees. Attorney fees may also be included in the amount in controversy if an underlying statute authorizes their award. *Galt G/S v. JSS Scandinavia,* 142 F.3d 1150, 1155-56 (9th Cir. 1998) (attorney fees award may be included in the amount in controversy when an

12
13
14
15
16
17
18
19
20

[2] The $8.00 an hour number is a significant reduction from the actual average hourly wage of the Plaintiff, who claims in the *Class Action Complaint* his experience is representative of the putative class. Plaintiff's independent contractor file and IRS 1099 Forms indicate he contracted with Exel for 162 weeks between June 14, 2008 and August 2, 2012, and earned gross settlement amounts totaling $315,419.83. *Albarano Decl.,* ¶ 4. The *Class Action Complaint* alleges Plaintiff worked "approximately 12-14 (12-14) hours a day" and had "to be available to make deliveries seven (7) days a week." *Class Action Complaint,* ¶¶ 45, 48. These allegations suggest Plaintiff drove the maximum amount of hours allowed by the U.S. Department of Transportation regulations – 70 hours – every week. If Plaintiff did work the maximum of 70 hours each week, his average hourly wage while contracting with Exel would be **$27.81** ($315,419.80/(162 weeks x 70 hours per week). Despite his average hourly wage being $27.81, for purposes of this removal petition, Defendants calculated the hourly rate using the California minimum wage. *Behrazfar v. Unisys Corp.,* 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (noting that defendant is not required to "research, state, and prove the plaintiff's claims for damages" and that a good faith conservative estimate is sufficient to support amount in controversy calculations).

21
22
23
24
25
26
27

[3] The Class Action Complaint does not define the frequency with which meal and rest breaks were missed other than to say "Defendants knowingly and willfully refused to perform their obligations to provide Plaintiff and Class members the off-duty" breaks they are entitled to under California law. *Class Action Complaint,* ¶¶ 85, 89. Based on the *Class Action Complaint's* allegation that California-Based Independent Contractors were available seven days a week for deliveries and worked 12-14 hours per day, a conservative conclusion is at least 5 meal breaks and 5 rest breaks were purportedly missed each week by each class member. *See Ray v. Wells Fargo Bank, NA,* CV 11-01477 AHM (JCx), 2011 WL 1790123, at *7 (C.D. Cal. May 9, 2011) (finding conservative estimate of overtime in calculating amount in controversy was sufficient for removal purposes where plaintiff's complaint made vague assertion that "consistent" overtime was performed).

28

1  underlying statute authorizes their award). Plaintiff seeks reasonable attorneys' fees in this case.

2  *Class Action Complaint*, ¶¶ 76, 80, 85, 89, 97, 101, 105, 109, 112,, 115, 119, 123. In class action

3  cases in California, prevailing plaintiffs have requested, and courts have awarded, attorneys' fees

4  of approximately 25% of the overall recovery. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

5  1047 (9th Cir. 2002) (28%); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301,

6  1311 (9th Cir. 1990) (25%); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th

7  Cir. 1989) (25%). Consistent with the cited cases, Plaintiff's counsel has requested similar

8  attorney fee awards in other wage and hour lawsuits. *See Hammock v. Oracle Corp., No. 06-

9  2846-SBA (N.D. Cal. Mar. 17, 2009)* (approving request for attorney fee award of 25% of

10 amount recovered as part of FLSA collective action and Rule 23 class action settlement); *Gomez

11 v. Perot Sys. Corp.*, No. CV-08-03337-SC (N.D. Cal. Jan. 7, 2011) (approving request for

12 attorney fee award of 25% of amount recovered as part of a Rule 23 class action settlement

13 involving alleged California Labor Code violations). It is therefore anticipated that Plaintiff's

14 attorneys will seek, at a minimum, 25% of any amounts they recover as awardable attorneys'

15 fees. Thus, if Plaintiff is awarded the $8,695,882 amount in controversy in this case based on the

16 Third, Fourth, Eighth, and Twelfth Causes of Action alone, Plaintiff's attorneys are expected to

17 seek at least $2,173,970 in attorneys' fees. When this figure is added to the $8,695,882 Plaintiff

18 seeks in connection with his Third, Fourth, Eighth, and Twelfth Causes of Action, the total

19 amount in controversy is at least **$10,869,852**.

20     When the putative value of Plaintiff's nine additional causes of action and the putative

21 value of Plaintiff's attorney fee claims are considered, there can be no question that the

22 jurisdictional threshold is met here.

23     **6.    Class Action.**   This case is a class action within the meaning of 28 U.S.C.

24 §§ 1332(d)(2) and 1453. Those statutes provide that a class action is a civil action filed either

25 under Fed. R. Civ. P. 23 or a similar state statute or rule that authorizes one or more

26 representative persons to maintain a class action. *Id.* In this case, Plaintiff filed his *Class Action*

27

28

1    *Complaint* in a California state court and accordingly seek certification under Cal. Code of Civ.

2    P. § 382, which authorizes representative actions. And as noted above, there are more than 100

3    persons falling within the class definition set out at ¶ 70 of the *Class Action Complaint*.

4         7.    **Timeliness of Removal.** Pursuant to 28 U.S.C. § 1446(b), a defendant must file

5    its notice of removal within 30 days of receiving a copy of the complaint. Exel and DHL were

6    served a copy of the *Class Action Complaint* on July 5, 2012; Deutsche Post has not been served.

7    Thirty-days from July 5, 2012 is Saturday, August 4, 2012. Defendants' notice of removal is

8    accordingly due to be filed by Monday, August 6, 2012. *See* Fed.R. Civ. P. 6(a); *Williams v.*

9    *Leonard*, No. C02-05084 CRB, 2003 WL 163183, at *1 (N.D. Cal. 2003). Defendants' notice of

10   removal is therefore timely filed on this date, August 6, 2012.    *See Murphy Bros., Inc. v.*

11   *Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

12         8.    **Notice of Removal to Adverse Parties and to State Court Clerk**. Pursuant to

13   28 U.S.C. § 1446(d), Defendants will give written notice of the removal to Plaintiff and to the

14   Clerk of the Superior Court of Alameda County, California. Specifically, promptly after filing

15   this Notice of Removal, Defendants shall send a Notice of Removal to Adverse Parties and State

16   Court Clerk, a true and correct copy of which is attached hereto as *Exhibit C*.

17         9.    **No Waiver**. By filing this Notice of Removal, Defendants do not waive any

18   defenses available to it.

19         WHEREFORE, Defendants respectfully remove this case to this Court.

20         Dated: August 6, 2012

21

22                                    Respectfully submitted,

23

24                                    Christopher C. McNatt, Jr.,

25                                    Attorney for Defendants

26

27

28

Exhibit "A"







1   Todd M. Schneider, SBN 158253
    Clint J. Brayton, SBN 192214
2   SCHNEIDER WALLACE
    COTTRELL BRAYTON KONECKY LLP
3   180 Montgomery Street, Suite 2000
    San Francisco, CA 94104
4   Telephone: (415) 421-7100
    Facsimile: (415) 421-7105
5



F I L E D
ALAMEDA COUNTY

JUN 1 4 2012

CLERK OF THE SUPERIOR COURT

6

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                  IN AND FOR THE COUNTY OF ALAMEDA

10                          RG12634666

11   DANIEL VILLALPANDO, individually        Case No.: _____
     and on behalf of all others similarly situated,
12
                                             **COMPLEX CASE; CLASS ACTION**
13     Plaintiff,                            1) **Failure To Pay Minimum Wage &**
                                                **Liquidated Damages (Labor Code §§**
14   vs.                                        **1182.11, 1182.12, 1194, 1197, and 1197.1;**
                                                **IWC Wage Order No. 9; and Minimum**
15   EXEL DIRECT INC., DEUTSCHE POST          **Wage Order);**
     DHL, DHL EXPRESS (USA), Inc., and       2) **Failure To Pay Overtime (Labor Code**
16   DOES 1 to 50,                              **§§ 510 and 1194 et seq., and IWC Wage**
                                                **Order No. 9);**
17     Defendants.                           3) **Failure To Provide Off-Duty Meal**
                                                **Periods (Labor Code §§ 226.7 and 512;**
18                                              **and Cal.Code Regs., Title 8 § 11090**
                                                **sections 7 & 11);**
19                                           4) **Failure To Provide Off-Duty Rest**
                                                **Periods (Labor Code §§ 226.7 and C.C.R.,**
20                                              **Title 8 § 11090 section 12);**
                                             5) **Unlawful Deductions From Wages**
21                                              **(Labor Code §§ 221, 223, and 400-410;**
                                                **IWC Wage Order No. 9; and Title 8**
22                                              **C.C.R. § 11090 section 8);**
23                                           6) **Cost Of Physical Examinations**
                                                **(Labor Code § 222.5);**
24                                           7) **Coerced Purchases (Labor Code § 450**
                                                **et seq.);**
25                                           8) **Reimbursement Of Business Expenses**
                                                **(Labor Code § 2802);**
26                                           9) **Failure To Keep Accurate Payroll**
                                                **Records (Labor Code §§ 1174 & 1174.5);**
27                                           10) **Failure To Furnish Accurate Wage**
28

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

*Daniel Villalpando, et al. v. Exel Direct Inc., Deutsche Post DHL, et al.*
COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Statements (Labor Code § 226);
11)  Waiting Time Penalties (Labor Code §§ 201-203);
12)  Willful Misclassification Of Individual As Independent Contractor (Labor Code § 226.8); and
13)  Unfair Competition (Bus. & Prof. Code §§ 17200, et seq.).

*Daniel Villalpando, et al. v. Exel Direct Inc., Deutsche Post DHL, et al.*
COMPLAINT

# I. INTRODUCTION

1.    Plaintiff Daniel Villalpando (hereinafter "Plaintiff") brings this class action on behalf of himself and all other similarly situated Drivers currently and formerly employed by Defendants within the State of California against Defendants Exel Direct Inc. (hereinafter "Exel Direct"), Deutsche Post DHL (hereinafter "DHL"), DHL Express, Inc., (hereinafter "DHL Express"), and Does 1-50 (hereinafter collectively referred to as "Defendants"). Throughout the relevant time period of this action, which began four years prior to the filing of the present Complaint, Defendants have routinely violated the following the California Labor Code and California Code of Regulations, by improperly categorizing Class Members, including Plaintiff, as independent contractors when they are, in fact, employees.

2.    Plaintiff, on his own behalf and on behalf of all Class Members, brings this action pursuant to Labor Code §§ 201-203, 221, 222.5, 223, 226.8, 226.3, 226.7, 400-410, 450, 510, 512, 1182, 1174, 1194, 1197, 1197.1, and 2802; California Code of Regulations, Title 8 § 11090 section 7 & 11-12; California Wage Order No. 1-2001 (8 Cal. Code Reg., § 11090); and Industrial Wage Commission Wage (hereinafter "IWC") Order No. 9. Specifically, Plaintiff challenges Defendants' policies of: (1) classifying Drivers as independent contractors instead of employees; (2) failing to reimburse Plaintiff and the Class for reasonable business expenses; (3) making deductions from Plaintiff's and the Class' wages; (4) requiring Plaintiff and the Class to pay for pre-employment medical and physical examinations; (5) coercing or compelling Plaintiff and the Class to purchase things of value from Defendants; (6) failing to provide, authorize, permit and/or make available bona fide meal and rest periods to Plaintiff and the Class as required by California law; (7) denying Plaintiff and the Class full compensation for all hours worked; (8) failing to pay Plaintiff and the Class minimum wage; (9) failing to pay Plaintiff and the Class overtime and double time; (10) failing to provide Plaintiff and the Class with accurate, itemized wage statements; (11) failing to timely pay Plaintiff and the Class full wages upon termination or resignation; and (12) engaging in a pattern or practice of willfully misclassifying employees as independent contractors.

3.    Plaintiff seeks full compensation, on behalf of himself and all others similarly situated, of all damages, penalties and interest owed for unpaid minimum wages, payment of all wages earned,

1    denial of meal and rest periods, reimbursement of all illegal deductions made from their wages,

2    failure to furnish accurate and itemized wage statements, and waiting-time penalties, and

3    reimbursement of expenses and losses incurred by them in discharging their duties, and civil

4    penalties.

5    4.    Plaintiff, on behalf of himself and all others similarly situated, also requests reasonable

6    attorneys' fees and costs pursuant to, inter alia, Labor Code §§ 225.5, 226, 226.7, 558, 1194, 1197,

7    and 2802; and Code of Civil Procedure § 1021.5.

8    5.    Plaintiff, on behalf of himself and all others similarly situated, also brings this action pursuant

9    to Business & Professions Code §§ 17200-17208, seeking injunctive relief and restitution due to

10    Defendants' unlawful violation of the Labor Code.

11

12    <div align="center">II. VENUE AND JURISDICTION</div>

13    6.    The Court has jurisdiction over this class action pursuant to Article 6, § 10 of the California

14    Constitution and California Code of Civil Procedure § 410.10.

15    7.    Additionally, this Court has jurisdiction over Plaintiff's and the Class' claims for injunctive

16    relief, including restitution of earned wages, arising from Defendants' unfair competition under

17    Business & Professions Code §§ 17203 and 17204. The Court also has jurisdiction over Plaintiff's

18    and the Class' claims for penalties in violation of the Labor Code pursuant to Business and

19    Professions Code § 17202, as well as pursuant to the applicable Labor Code provisions.

20    The Court has jurisdiction over Defendants because they are corporations authorized to do business

21    in the State of California and are registered with the California Secretary of State. Defendants do

22    sufficient business with sufficient minimum contacts in California, and/or otherwise intentionally

23    avail themselves of the California market through the advertising, marketing and sale of goods and

24    services, to render the exercise of jurisdiction over Defendants by the California court consistent

25    with traditional notions of fair play and substantial justice.

26    8.    Venue is proper in this judicial district pursuant to Code of Civil Procedure § 395.5.

27    Defendants employ Class members and transact business in Alameda County.

28

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

## III. PARTIES

### A. Plaintiff

9.    Plaintiff and all putative Class members as set forth below are current or former Drivers of Defendants who are or were employed as "independent contractors" by Defendants in California at some time during the period beginning four years prior to the filing of the original Complaint in this action to the present.

10.    Plaintiff Daniel Villalpando is a resident of Oakley, California in Contra Costa County. Plaintiff worked as a Driver at Defendants' office located in the Sears' warehouse in California between approximately September 2008 and December 2011.

11.    Mr. Villalpando was employed by Defendants as a Driver and he has held this same job position since he began working for Defendants in September 2008. Mr. Villalpando's agreement was terminated by Exel Direct in December of 2011.

### B. Defendants

12.    Plaintiff is informed, believes and alleges that, at all times mentioned herein, Defendants Exel Direct Inc. is and was engaged in the business of delivery services in the State of California. Exel Direct is a wholly owned entity of Deutsche Post DHL and is part of the Supply Chain division of Deutsche Post DHL. Deutsche Post DHL owns and operates under a number of different names and/or entities, which are headquartered in Ohio, including, but not limited to, DHL Express (USA), (collectively referred to as "Exel Direct").

13.    Exel Direct Inc. and DHL Express (USA), Inc. both have a registered agent at 818 W. Seventh Street, Los Angeles, California 90017.

14.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 through 50, inclusive, are currently unknown to Plaintiff, who therefore sues Defendants by such fictitious names under Code of Civil Procedure § 474. Plaintiff is informed, believes, and based thereon alleges, that each of the Defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein and for Plaintiff's

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY w

1   and the Class' damages as herein alleged. Plaintiff will amend this Complaint and/or seek leave of

2   court to amend this Complaint to reflect the true names and capacities of the Defendants designated

3   hereinafter as DOES when such identities become known to her.

4   15.    Defendants are or were the joint employers of Plaintiff and the class of employees he seeks to

5   represent. Plaintiff is informed and believes that each and every of the acts and omissions alleged

6   herein were performed by, and/or attributable to, all Defendants, each acting as agents and/or

7   employees, and/or under the direction and control of each of the other Defendants, and that said acts

8   and failures to act were within the course and scope of said agency, employment and/or direction

9   and control.

10   16.    Plaintiff is informed and believes that each of the Defendants is liable to Plaintiff and the

11   Class as an "employer," as that term is defined in Section 18 of the Labor Code, Wage Order 9,

12   section 2(F) and Wage Order 14-2001, section 2(F). As employers of Plaintiff and the Class

13   throughout the relevant time period, Defendants, and each of them, are either solely or jointly and

14   severally liable for back pay and other economic damages, including statutory penalties, owed to

15   Plaintiff and the Class under common law and by statute.

16

17                       **IV. FACTUAL ALLEGATIONS**

18   17.    During the relevant time period of this action, Defendants have employed Plaintiff and other

19   similarly situated individuals to provide delivery services (hereinafter "Drivers").

20   18.    Prior to commencing work for Exel Direct, the Defendants required all prospective Drivers to

21   fill out an application, which requested information such as their employment history, driver's

22   license, driving records from the DMV and MVR, credit check scores, background and criminal

23   check, and personal references.

24   19.    Exel Direct required prospective Drivers to undergo a physical examination and to submit to

25   drug and alcohol testing prior to employment. Drivers must agree to continue to submit to drug and

26   alcohol testing whenever requested by Exel Direct throughout their employment. Drivers were

27   required to pay for the costs of such examinations and tests, which Exel Direct would deduct from

28   the Drivers' paychecks.

20.    Exel Direct required Drivers to obtain a business licenses showing that they were a LLC or Corporation. Exel Direct would assist the Drivers in the process by assisting them in the completion of the paperwork and/or loan the Drivers the money necessary to obtain a business license, which was later deducted out of Drivers' paychecks weekly.

21.    Exel Direct required the applicants to sign an "Independent Truckman's Agreement" (hereinafter "Agreement") with no ability to negotiate the terms, but rather as a condition of employment.

22.    The Agreement was drafted exclusively by Exel Direct and/or its legal counsel.

23.    The Agreement purports to classify Drivers as independent contractors so as to conceal the true nature of the relationship between Exel Direct and its Drivers, i.e., that of employer and employees. The Agreement was only in English. Plaintiff requested an Agreement in Spanish but was told Exel did not have one.

24.    Although the Agreement stated that it would be in effect for a period of one (1) year, it simultaneously stated that it would remain in effect from year-to-year unless either party terminated it.

25.    Exel Direct required that Drivers provide sixty (60) days written notice prior to terminating their employment with Exel Direct with or without cause. If Exel Direct terminated the Agreement without cause, it had the right, at its option, to transfer the driver to another location. If the Driver did not comply with the transfer, it constituted a breach of the agreement and Exel Direct could terminate the agreement without notice. Exel Direct additionally retained the right to terminate Drivers without notice if they failed adhere to any part of the agreement.

26.    Exel Direct required each Driver to execute an Equipment Lease Agreement (hereinafter the "Lease"). Under the Lease, the Driver agreed to provide Exel Direct with a delivery vehicle (hereinafter the "Vehicle").

27.    The Drivers must purchase or lease the Vehicles from a third party or through Exel Direct from Enterprise. If a Driver leased a Vehicle through Exel Direct, then Exel Direct deducted the leasing costs from the Drivers' paychecks.

28.     All Vehicles used by Drivers must conform to a specific criteria set forth by Exel Direct, which included the type and color of Vehicle.

29.     Exel Direct required Drivers' Vehicles to be marked with several Exel Direct and large Sears decals on the sides and front of the Vehicle to identify it as being part of Sears and Exel Direct.

30.     Exel Direct required control and exclusive use of any equipment, including the Vehicles used throughout their employment.  Drivers are told that they are unable to use their Vehicles to provide any other type of delivery services.

31.     Exel Direct furnished the Drivers with additional equipment necessary to deliver the appliances, such as straps, hand trucks, pallet jacks and blankets. Drivers were unable to deny the additional equipment, and told that if they did deny it, then their agreement would be terminated.

32.     Exel Direct required Drivers to attend training for a minimum of two weeks conducted by Exel Direct.  The training discussed how to drive the Vehicle, what speed to drive the Vehicle, what subjects to discuss with the Customer, exactly what to say to the Customer, how to install each appliance, and how to load and unload the appliances. Additional training was also required when a new appliance would arrive. Exel Direct did not compensate the Drivers in anyway while they attended training.

33.     Exel Direct required the Drivers and their assistants to speak only English while performing deliveries at the customer's home.

34.     Exel Direct controlled the amount that Drivers paid their assistants. Exel Direct required Drivers to pay their assistants a minimum of one hundred dollars ($100) a day.

35.     Approximately twice a week, Exel Direct conducted routine on-site evaluations of Drivers. A manager or an assistant manager would perform a surprise visit at one of the delivery locations of the Drivers and closely evaluated the Driver while he performed his delivery and installation of the appliance(s).

36.     Exel Direct prohibited its Drivers from wearing a uniform with their business name on it. Instead, Exel Direct required the Drivers to wear uniforms that it selected.

37.     The Drivers' uniform shirt is only available for purchase through Exel Direct. The cost of the uniforms is deducted from the Drivers' weekly pay.

1   38.   Exel Direct required it Drivers to adhere to strict requirements regarding the Drivers' and

2   their assistants' appearances. Exel Direct required Drivers to wear a uniform, their shirt to be

3   buttoned and tucked in, have groomed hair, be clean shaven, and have no visible tattoos or piercings.

4   39.   Exel Direct exercised its power to set eligibility requirements for Drivers' assistants. All

5   assistants must undergo criminal background checks; may not be convicted of certain crimes that

6   involve violence, dishonesty or drug use; and may not use illegal drugs.

7   40.   Exel Direct trained Drivers on how to interact with customers. Exel Direct required Drivers to

8   follow a certain dialogue when greeting the customers and at the end of the delivery service, to make

9   eye contact, and not to shake a female customer's hand.

10   41.   Exel Direct had strict protocols on how Drivers were to interact with Customers. For example,

11   Exel Direct did not permit Drivers to use the restroom at the customer's house, accept any type of

12   food, water or any gratuity, despite Customers offering such things.

13   42.   Drivers were rated by Exel Direct based on customers' reviews. Exel Direct's ratings of the

14   Drivers determined what route the Drivers would receive. If a Driver received a low score and did

15   not improve it within two weeks, the Driver would be terminated.

16   43.   Exel Direct required its Drivers to report to Exel Direct's office at the warehouse at 6:00 a.m.

17   each workday. At 6:30 a.m., Exel Direct required the Drivers to attend a meeting with Exel Direct

18   for approximately thirty minutes to discuss topics related to customer service and Drivers'

19   performance. After, the Drivers would load the appliances into their Vehicles until approximately

20   8:00 a.m. or 8:30 a.m.

21   44.   Exel Direct required its Drivers to return their delivery logs and all old appliances from the

22   Customers to the warehouse after completing all of their deliveries. The warehouse closed at 5:30

23   p.m., but Drivers were generally unable to complete their deliveries before. As a result, Drivers were

24   required to return the next morning even if they were not scheduled to work.

25   45.   On average, the Driver's daily delivery route consisted of 20 (20) individual delivery

26   locations. Drivers worked approximately twelve to fourteen (12-14) hours a day to complete such

27   assigned routes.

28

46. Drivers were prohibited from using the Vehicles to offer delivery services independent from the delivery services that they were required to provide for Exel Direct.

47. Drivers were prohibited from using the Vehicles offer any non-Exel Direct delivery services.

48. Exel Direct required Drivers to be available to make deliveries seven (7) days a week. Exel Direct retained the right to order Drivers to work holidays and days after holidays (such as the Friday after Thanksgiving). Failure to work such days resulted in a deduction, suspension and/or termination of the Driver by Exel Direct.

49. Drivers were required to ask Exel Direct for permission to take days off, however Exel Direct routinely denied Drivers' requests. If Drivers took a day off without permission from Exel Direct, then the Drivers were subject to termination of their agreement without cause.

50. Exel Direct assigned the delivery routes to the Drivers, which they were required to complete. If the Driver did not complete or refused to accept the assigned delivery route, Exel Direct would deduct the cost of another driver to perform the delivery route from the Driver's paycheck. As stated in Exhibit D of the Agreement, Drivers "will be responsible for any expense(s) incurred by the Company in performing or having other parties perform the general duties for the Contractor when he/she is unable or unwilling to perform the general duties prescribed in Section 1 of the Independent Truckman's Agreement." Section 1 of the Agreement requires Drivers to deliver consumer items and other related services necessary to serve Exel Direct's customers when requested by Exel Direct.

51. Exel Direct assumed complete authority over what home deliveries each Driver serviced. Exel Direct assigned Drivers to a specific home delivery route. The Drivers were not permitted to exchange assignment among them.

52. Exel Direct exercised total control over the workload of the Drivers, including how many deliveries each Driver made and when the deliveries were made each day. Drivers were given a two hour delivery window to deliver the appliances, which was scheduled by Exel. If the Drivers did not complete each delivery during the specified time window, Drivers were subject to a deduction and/or termination of their agreement.

1  53,  Drivers were not permitted to allow persons who were already pre-approved by Exel Direct to
2  assume their job duties, even temporarily.

3  54.  Drivers were continuously evaluated regarding their adherence to Exel Direct's standards
4  regarding when pick-ups and deliveries are made, whether they were on time for deliveries, how
5  many deliveries and when were to be made, whether they called in any anticipated delays to
6  dispatch, whether they called each customer thirty (30) minutes prior to delivery, and whether they
7  honored special time requests.

8  55.  Exel Direct controlled when and how the Drivers' Vehicles were maintained. Exel Direct
9  routinely checked the Vehicles' condition. Exel Direct inspected and controlled what maintenance
10  needed to be done to the Vehicle and deducted the cost of the maintenance from the Driver's weekly
11  paychecks.  This included oil changes, new tires, and car washes.

12  56.  Drivers were required to adhere to Exel Direct standards regarding the upkeep of their
13  Vehicle, such as whether all equipment was clean and in good condition, the cab was organized and
14  clean, the truck bed was clean and whether decals were in good condition.  Exel Direct performed
15  daily inspections to ensure that these requirements were met.

16  57.  Exel Direct required its Drivers to follow specific instructions as to how to load and unload,
17  and transport the appliances,  Drivers were trained and evaluated by Exel Direct regarding their
18  adherence to Exel Direct approved delivery techniques, such as the speed limits they must drive,
19  which is lower than the legal requirements; how to strap and unstrap the appliances in the Vehicle;
20  how to carry the appliances; how to complete their "trip sheets;" and how to and what equipment
21  could be used to carry the appliance inside the customer's house.

22  58.·  Exel Direct required its Drivers to complete a daily log, which is a "trip sheet," of each
23  delivery that they made each day and obtain each customer's signature on the log. Drivers were
24  instructed as to precisely how to complete the log. The drivers were required to return the log to
25  Exel Direct at the end of each business day.

26  59.  Exel Direct required its Drivers to call Exel Direct using the Driver's cellular telephone
27  throughout the day for the following purposes, but not limited to: notifying customers thirty (30)
28  minutes prior to arriving at the customer's location; report their arrival and departure times; and to

1  report whether the Driver was going to be delayed or unable to make the delivery at the scheduled

2  time. If the Drivers did not follow any of these delivery procedures, they were subject to a

3  deduction or termination.

4  60.    Drivers were not reimbursed for the cellular telephones despite it being a business expense of

5  Exel Direct.

6  61.    Exel Direct required each Driver to "purchase" certain items, which were properly

7  Defendants' business expenses, such as maintenance fees, drug and alcohol tests, background and

8  criminal checks, DMV and MVR records, service apparel and cleaning, vehicle washes, physical

9  examinations, and delivery supplies. All of these "purchases" were from Exel Direct itself, and Exel

10  Direct deducted an amount for each of these items from each Driver's gross pay. The Drivers could

11  not negotiate the amounts that were deducted for each of Exel Direct's business expenses. Thus,

12  Exel Direct created a façade that Drivers were paying for their own tools and equipment used in the

13  course of their supposed independent business, but in reality Exel Direct improperly forced Drivers

14  to pay for Exel Direct's own business expenses.

15  62.    Drivers were required by Exel Direct to obtain specific types and levels of insurance. The

16  Drivers could purchase insurance through a third party, which had to meet Exel Direct's

17  requirements; or through the Company's insurer, which Exel Direct deducted a weekly amount from

18  their paychecks for insurance. If the Driver purchased insurance through Exel Direct, Exel Direct

19  would complete the paper work for the Driver and all documents returned by the Insurance

20  Company regarding the policy were received and kept by Exel Direct and not by the Driver.

21  Furthermore, if Drivers obtained insurance through the Exel Direct's obtained insurance program,

22  Exel Direct would charge an administration fee that was equal to ten percent (10%) of the total

23  insurance cost, which was deducted from the Drivers' paychecks.

24  63.    Exel Direct required Drivers to list Exel Direct to be named as an additional insured on all

25  liability coverage.

26  64.    Exel Direct required its Drivers to give and maintain a fifteen hundred dollar ($1,500) bond

27  with Exel Direct. If Drivers were unable to pay the bond at the beginning of their employment, Exel

28  Direct would deduct a certain amount from Drivers' weekly paychecks to supplement the bond.

1   65.   Drivers were compensated on a highly structured system that gave them no opportunity to
2   exercise entrepreneurship or otherwise engage in the risks and rewards associated with owning a
3   business. Accordingly, Drivers were paid either a flat weekly rate or a set commission, as
4   determined by Exel Direct, with no opportunity to negotiate individually for a higher rate or
5   commission. Plaintiff was told that the flat rate paid per a delivery was the equivalent of the
6   commission amount.

7   66.   Exel Direct decided which method of payment would be utilized. Drivers were not able to
8   choose the method of payment. The amount of the weekly payment or commission was not
9   negotiable, nor was the amount of various chargebacks that Exel Direct deducts from the Driver's
10  weekly paychecks.

11  67.   The Driver's weekly paychecks are deposited by direct deposit into their bank accounts.
12  Alternatively, if a Driver preferred to receive payment by check, that Driver was charged a fifteen
13  dollar ($15) administration fee for each check, which Exel Direct deducted from the Driver's weekly
14  paycheck.

15  68.   Plaintiff is informed and believes and thereon alleges that, through common policies and
16  practices collectively and individually, have systematically engaged in a fraud designed to make its
17  Drivers appear to be running independent businesses, when in reality its Drivers are Exel Direct's
18  employees.

19  69.   Defendants' unlawful conduct has been widespread, repeated, and willful throughout
20  California. Defendants knew or should have known that their policies and practices have been
21  unlawful and unfair.

22                          **V. CLASS ALLEGATIONS**

23  70.   *Proposed Class Definition.*  Plaintiff brings this case as a class action on behalf of himself and
24  all others similarly situated pursuant to Code of Civil Procedure § 382. The Class that Plaintiff
25  seeks to represent are composed of and defined as follows:

26         (a) This Class is defined as: "All current and former Drivers who were required to sign the
27                "Independent Truckman's Agreement" and provided delivery services for Exel Direct in
28                the State of California during the period June 2008 through the present.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY ᴸᴸᴾ

71.   *Community of Interest.* This action has been brought and may properly be maintained as a class action under Code of Civil Procedure § 382 because the proposed Class is easily ascertainable and there is a well-defined community interest in the litigation:

    a)   *Numerosity*: The potential members of the Class as defined are so numerous that joinder of all the members of the Class is impracticable. While the precise number of Class members has not been determined at this time, Plaintiff is informed and believes that Defendants have employed over 250 persons to work as Independent Drivers. Joinder of all members of the Class is therefore impracticable.

    b)   *Common Questions of Law and/or Fact*: There are questions of law and fact common to Plaintiff and the Class that predominate over any questions affecting only individual members of the Class. These common questions of fact include, without limitations:

        i.   Whether all Class members are properly categorized as independent contractors and not as employees.

        ii.   Whether Defendants exercises control, directly or indirectly, over Class Members' work hours.

        iii.   Whether Defendants exercises control, directly or indirectly, over Class Members' working conditions.

        iv.   Whether Class members are entitled to compensatory damages for violations of the Labor Code as set forth herein.

        v.   Whether the Class members who have terminated their employment relationship with Defendants are entitled to penalty wages for Exel Direct's failure to timely pay all outstanding amounts of compensation owed upon termination of the employment relationship.

        vi.   Whether the Class members are entitled to compensation for the coerced purchases.

        vii.   Whether the Class members are entitled to be reimbursed for Defendants' business expenses and deductions.

        viii.   Whether the Class members are entitled to attorneys' fees and litigation costs for violations of the Labor Code as set forth herein.

ix.   Whether Class members are entitled to restitution for the unlawful business practices as set forth herein.

x.   Whether the actions of Defendants are applicable to the Class as whole entitling Class members to injunctive relief to enjoin further unlawful business practices as those set forth herein.

c) *Typicality*: Plaintiff's claims are typical of the claims of the Class. Plaintiff and the Class have sustained the same or similar injuries-in-fact and damages arising out of, and caused by, Defendants' common course of conduct in violation of law, as alleged herein. Plaintiff's claims are thereby representative of and co-extensive with the claims of the Class.

d) *Adequacy of Representation*: Plaintiff is a member of the Class that he seeks to represent, does not have any conflicts of interest with other putative Class members, and will fairly and adequately represent and protect the interests of the members of the Class. Counsel representing Plaintiff is competent and experienced in litigating wage and hour class actions.

e) *Superiority of Class Action*: A class action is superior to other available means for the fair and efficient adjudication of this controversy. Individual joinder of all putative Class members is not practicable, and questions of law and fact common to the proposed Class predominate over any questions affecting only individual members of the proposed Class.

i.   If each individual Class member were required to file an individual lawsuit, the large corporate Defendants would necessarily gain an unconscionable advantage because Defendants would be able to exploit and overwhelm the limited resources of each member of the Class with Defendants' vastly superior financial legal resources.

ii.   Requiring each individual class member to pursue an individual remedy would also discourage the assertion of lawful claims by the Class members who would be disinclined to pursue against Defendants because of an appreciable and justifiable fear of retaliation and permanent damage to their lives, careers and well-being.

1    iii.  Each proposed Class member has suffered injury and is entitled to recover by reason

2          of Defendants' illegal policies and/or practices as alleged herein.

3    iv.  Class action treatment will allow those similarly situated persons to litigate their

4          claims in the manner that is most efficient and economical for the parties and the

5          judicial system.

6    v.  The prosecution of separate actions against Defendants by individual proposed Class

7          members would create a risk of inconsistent or varying adjudications that would

8          establish incompatible standards of conduct for Defendants.

9    vi.  An important public interest will be served by addressing the present wage and hour

10          suit as a class action. ("The prompt payment of wages due [to] an employee is a

11          fundamental policy of this state." *Belaire-West Landscaping Inc. v. Superior Court*

12          (2007) 149 Cal.App.4th 554, 562, *citing Phillips v. Gemini Moving Specialists* (1998)

13          63 Cal.App.4th 563, 571.)

14

15                  **VI. CAUSES OF ACTION**

16

17                  **FIRST CAUSE OF ACTION**
                  **Failure to Pay Minimum Wages**

18  **California Labor Code §§ 1182.11, 1182.12, 1194, 1197, and 1197.1;**
         **IWC Wage Order No. 9; and Minimum Wage Order**
           **(Against All Defendants and Does 1-50)**

19

20    72.   Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 71 above as

21  though fully set forth herein.

22    73.   During the applicable statutory period, California Labor Code §§ 1182.11, 1182.12 and 1197,

23  and the Minimum Wage Order were in full force and effect and required that Defendants' California

24  Drivers receive the minimum wage for all hours worked irrespective of whether nominally paid on a

25  piece rate, or any other bases, at the rate of eight dollars ($8.00) per hour commencing January 1,

26  2008.

27    74.   Defendants have maintained a consistent policy of failing to pay minimum wages to Plaintiff

28  and Class members, as required by law, including the work time being engaged to wait or be at

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

1  Defendants' facilities or at Defendants' direction and time spent attending required meetings or

2  training.

3  75.   By failing to maintain adequate time records as required by California Labor Code § 1174(d)

4  and IWC wage order No. 9, § 7(A), Defendants have made it difficult to calculate the minimum

5  wage compensation due to Plaintiff Villalpando and all other similarly situated Drivers.

6  76.   As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiff

7  and Class members have been deprived of minimum wages in an amount to be determined at trial,

8  and are entitled to recover of such amount, plus liquidated damages, plus interest thereon, and

9  attorneys' fees and costs pursuant to Labor Code §§ 1194, 1194.2 and 1197.1.

10

11  **SECOND CAUSE OF ACTION**
**Failure to Pay Overtime Compensation**

12  **California Labor Code §§ 510 and 1194 et seq., and IWC Wage Order No. 9.**
**(Against All Defendants and Does 1-50)**

13

14  77.   Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 76 above a

15  though fully set forth herein.

16  78.   By Defendants' failure to pay overtime compensation to Plaintiff and Class members,

17  Defendants violated California Labor Code § 510 and IWC wage order No. 9, § 3, which require

18  overtime compensation to non-exempt employees.

19  79.   By failing to maintain adequate time records as required by California Labor Code § 1174(d)

20  and IWC wage order No. 9, § 7(A), Defendants have made it difficult to calculate the compensation

21  of overtime owed to Plaintiff Villalpando and all other similarly Drivers.

22  80.   As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiff

23  and Class members have been deprived of overtime compensation in an amount to be determined at

24  trial, and are entitled to recover of such amount, plus interest thereon, and attorneys' fees and costs

25  pursuant to California Labor Code §§ 554, 1194, 1194.2 and 1197.1.

26

27

28

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

**THIRD CAUSE OF ACTION**
**Failure to Provide Proper Meal Breaks, or Compensation in Lieu Thereof**
**California Labor Code §§ 226.7 and 512; and Cal.Code Regs., Title 8 § 11090 sections 7 & 11**
**(Against All Defendants and Does 1-50)**

81.    Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 80 above as though fully set forth herein.

82.    California Labor Code §§ 226.7 and 512, and Title 8 of the California Code of Regulations § 11090, section 11 require Defendants to provide meal periods to Plaintiff and members of the proposed Class. California Labor Code §§ 226.7 and 512, and Title 8 of the California Code of Regulations § 11090, section 11 prohibit employers from employing an employee for more than five hours without a meal period no less than 30 minutes and for more than ten hours without a second meal period. Unless the employee is relieved of all duty during the thirty-minute meal period, the employee is considered "on duty" and the meal or rest period is counted as time worked.

83.    Under both California Labor Code § 226.7(b) and Title 8 of the California Code of Regulations § 11090, section 11, an employer who fails to provide a required meal period must, as compensation, pay the employee one hour of pay at the employee's regular rate of compensation for each workday that the meal period was not provided.

84.    Title 8 of the California Code of Regulations § 11090, section 7 requires the Defendants to keep time records of meal periods in order to satisfy the requirements of California's meal period laws and regulations.

85.    Despite these requirements, Defendants knowingly and willfully refused to perform their obligations to provide Plaintiff and Class members the off-duty meal period. Defendants also failed to pay Plaintiff and Class members one hour of pay for each off-duty meal period that they have been denied. Defendants' conduct described herein violates California Labor Code §§ 226.7 and 512 and Title 8 of the California Code of Regulations § 11090. Therefore, Plaintiff and members of the putative Class are entitled to compensation for Defendants' failure to provide, authorize and permit and/or make available meal periods, plus interest, attorneys' fees, expenses, and costs of suit pursuant to California Labor Code §§ 226.7(b) and Title 8 of the California Code of Regulations § 11090.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

*Daniel Villalpando, et al. v. Exel Direct Inc., Deutsche Post.DHL, et al.*
COMPLAINT
18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### FOURTH CAUSE OF ACTION
**Failure to Provide Proper Rest Breaks, or Compensation in Lieu Thereof
California Labor Code §§ 226.7 and Cal.Code Regs., Title 8 § 11090 section 12
(Against All Defendants and Does 1-50)**

86. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 85 above as though fully set forth herein.

87. California Labor Code § 226.7 and Title 8 of the California Code of Regulations § 11090, section 12 requires Defendants to provide rest periods to Plaintiff and members of the proposed Class. Both California Labor Code § 226.7 and Title 8 of the California Code of Regulations § 1190, section 12 prohibit employers from employing an employee for more than four hours without ten minutes of net rest time and to pay employees their full wages during those rest periods. Unless the employee is relieved of all duty ten-minute rest periods, the employee is considered "on duty" and the rest period is counted as time worked.

88. Under both California Labor Code § 226.7 and Title 8 of the California Code of Regulations § 1190, section 12 an employer must pay an employee who was denied a required rest period one hour of pay at the employee's regular rate of compensation for each workday that the rest period was not provided.

89. Despite these requirements, Defendants knowingly and willfully refused to perform their obligations to authorize and permit to Plaintiff and Class members the off-duty rest periods who regularly worked in excess of four. Defendants also failed to pay Plaintiff and Class members one hour of pay for each rest period that they have been denied. Defendants' conduct described herein violates California Labor Code §§ 226.7 and Title 8 of the California Code of Regulations § 11090. Therefore, Plaintiff and members of the putative Class are entitled to compensation for Defendants' failure to provide, authorize and permit and/or make available rest periods, plus interest, attorneys' fees, expenses, and costs of suit pursuant to California Labor Code §§ 226.7(b) and 1194, and Title 8 of the California Code of Regulations § 11090.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

*Daniel Villalpando, et al. v. Exel Direct Inc., Deutsche Post DHL, et al.*
COMPLAINT
19

**FIFTH CAUSE OF ACTION**
**Unlawful Deductions from Wages**
California Labor Code §§ 221, 223, and 400-410; IWC Wage Order No. 9; and
Title 8 C.C.R. § 11090 section 8.
(Against All Defendants and Does 1-50)

90.    Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 89 above as though fully set forth herein.

91.    California Labor Code § 221 states "It shall be unlawful for any employer to collect or receive from an employee any part of wages thereto paid by said employer to said employee." Labor Code § 223 states, "[w]here any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

92.    California Labor Code §§ 400-410 ("Employee Bond Law") provide limited circumstances in which an employer can exact a cash bond from its employees. These provisions are designed to protect employees against the very real danger of an employer taking or misappropriating employee funds held by the employer in trust.

93.    IWC wage order No. 9, § 8 and Title 8 of the California Code of Regulations § 11090, section 8 provides that the only circumstances under which an employer can make a deduction from an employee's wage due to cash shortage, breakage, or loss of equipment if the employer can show the shortage, breakage, or loss was the result of the employee's gross negligence or dishonest or willful act.

94.    These statutes as well as California's fundamental public policy protecting wages and wage scales, prohibit employers from subjecting employees to unanticipated or unpredicted reductions in their wages; making employees the insurers of their employer's business losses; otherwise passing the ordinary business losses of the employee; taking deductions from wages for business losses unless the employer can establish that the loss was caused by a dishonest or willful act, or gross negligence of the employee; or taking other unpredictable deductions that may impose a special hardship on employees.

95.    Defendants violated California Labor Code §§ 221, 223, and 400-410, and IWC wage order No. 9, §8 by unlawfully taking deductions from Plaintiff and Class members' compensation to

1    cover certain ordinary business expenses of Defendants, including but not limited to claims for loss

2    or damaged cargo, property damage claims and bodily injury claims, "merchandise claims" granted

3    to customers, costs of delivery services of a route if the Driver was not willing to perform that

4    requested route and fees charged associated with obtaining insurance through the Exel Direct's

5    insurance program.  Said deductions were made by Defendants as part of a deliberate subterfuge

6    that has been designed, constructed, implemented and administered to circumvent the clear

7    prohibitions of California case law and Title 8 of the California Code of Regulations § 11090.

8    96.    Because Defendants took unlawful deductions from Drivers' compensation they are liable to

9    Plaintiff and Class members for the compensation that should have been paid for but for the

10   unlawful deductions under California Labor Code § 221, 223 and 400-410, IWC Wage Order No. 9,

11   and Title 8 of the California Code of Regulations § 11090.

12   97.    As a result of Defendants' unlawful deduction from wages and not paying the Plaintiff and

13   Class members, Defendants is liable for penalties, reasonable attorneys' fees, and costs.

14

15                              SIXTH CAUSE OF ACTION
                              Cost of Physical Examinations
16                              California Labor Code § 222.5
                           (Against All Defendants and Does 1-50)
17

18   98.    Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 97 above as

19   though fully set forth herein.

20   99.    California Labor Code § 222.5 prohibits any person from withholding or deducting from the

21   compensation of any employee, or require any prospective employee or applicant for employment

22   to pay, any fee for, or cost of any pre-employment medical or physical examination taken as a

23   condition of employment.

24   100.   Defendants violated Labor Code § 222.5 by requiring Plaintiff and Class members to pay for

25   drug and alcohol tests and physical examinations as a condition of their employment.

26   101.   Therefore, in accordance with California Labor Code § 222.5, Plaintiff and members of the

27   putative Class are entitled to reimbursement, compensation for penalties, attorneys' fees, expenses,

28   and costs of suit.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

1

**SEVENTH CAUSE OF ACTION**
Coerced Purchases

2            California Labor Code § 450 *et seq.*
(Against All Defendants and Does 1-50)

3

4    102.  Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 101 above as

5    though fully set forth herein.

6    103.  Labor Code § 450 prohibits an employer or agent, or other person to compel or coerce any

7    applicant for employment or employee to purchase anything of value, including any fee of any type

8    to apply for employment; to receive or complete an application for employment; or for an employer

9    to provide, accept or process an application for employment.

10   104.  Defendants violated Labor Code § 450 by compelling and/or coercing Plaintiff and Class

11   members to patronize Defendants by requiring Plaintiff and Class members to lease or purchase

12   moving equipment, delivery supplies, uniforms, cellular phones and other items directly from

13   Defendants and/or other companies.

14   105.  Therefore, in accordance with California Labor Code § 450, Plaintiff and members of the

15   putative Class are entitled to reimbursement, compensation for penalties, attorneys' fees, expenses,

16   and costs of suit.

17

18                      **EIGHTH CAUSE OF ACTION**
Reimbursement of Business Expenses

19                   California Labor Code § 2802
(Against All Defendants and Does 1-50)

20

21   106.  Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 105 above as

22   though fully set forth herein.

23   107.  California Labor Code § 2802, section (a) provides that an employee shall indemnify his or

24   her employee for all necessary expenditures or losses incurred by the employee to direct the

25   consequence of the discharge of his or her duties, or of his or her obedience to the directions of the

26   employer.

27

28

*Daniel Villalpando, et al. v. Exel Direct Inc., Deutsche Post DHL, et al.*
COMPLAINT
22

108. During the applicable statutory period, Plaintiff and the Class members incurred necessary expenditures and losses in direct consequence of the discharge of their employment duties and their obedience to the directions of Defendants, including but not limited to:

(a) Plaintiff and Class members have necessarily incurred expenditures for truck rentals/leases, towing, gasoline, tires, maintenance, repairs, car washes, and insurance in connection with their operation of the Vehicles used to perform home delivery services for Defendants. Plaintiff is informed and believes that Defendants reimbursed none of these expenditures or losses to Plaintiff and Class members.

(b) Plaintiff and Class members have necessarily incurred expenditures in connection with physical examinations, drug and alcohol tests, background and criminal checks, and DMV and MVR records of Drivers, which were performed by Exel Direct as a condition of employment. Plaintiff is informed and believes that Defendants reimbursed none of these expenditures or losses to Plaintiff and Class members.

(c) Plaintiff and Class members have necessarily incurred expenditures in connection with delivery supplies required by Exel Direct in order for the Drivers to perform home delivery services. Plaintiff is informed and believes that Defendants reimbursed none of these expenditures or losses to Plaintiff and Class members.

(d) Plaintiff and Class members have necessarily incurred expenditures in connection with cell phones used to communicate with Defendants and Sears customers in order to perform home delivery services for Defendants. Plaintiff is informed and believes that Defendants reimbursed none of these expenditures or losses to Plaintiff and Class members.

(e) Plaintiff and the Class members have been required to purchase and contribute to automobile insurance and occupational accident insurance to cover accidental injury to them during the course and scope of their employment with Defendants, which constitutes workers' compensation insurance. Said deductions have violated California Labor Code § 3751(a). Plaintiff is informed and believes that Defendants reimbursed none of these expenditures or losses to Plaintiff and Class members.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

109. Plaintiff is informed and believes that pursuant to California Labor Code § 2802(a) Plaintiff and Class members are entitled to recover their unreimbursed expenditures and losses, interest thereon and attorney's fees and costs, in amount to be proven at trial under California Labor Code § 2802(b)-(c).

### NINTH CAUSE OF ACTION
**Failure to Keep Accurate Payroll Records**
**California Labor Code §§ 1174 & 1174.5**
**(Against All Defendants and Does 1-50)**

110. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 109 above as though fully set forth herein.

111. California Labor Code § 1174 requires Defendants to maintain payroll records showing the actual hours worked daily by Plaintiff and Class members.

112. Defendants knowingly, intentionally, and willfully failed to maintain payroll records showing the actual hours worked by Plaintiff and Class members as required by California Labor Code § 1174 and in violation of §1174.5. As a direct result of Defendants' failure to maintain payroll records, Plaintiff and Class members have suffered actual economic harm as they have been precluded from accurately monitoring the numbers of hours worked and thus seeking all accrued minimum wage and overtime pay. As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiff and Class members are entitled to recover damages in an amount to be determined at trial and civil penalties, plus interest thereon, and attorneys' fees and costs pursuant to Labor Code.

### TENTH CAUSE OF ACTION
**Failure to Furnish Accurate Wage Statements**
**California Labor Code § 226**
**(Against All Defendants and Does 1-50)**

113. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 112 above as though fully set forth herein.

1   114.  California Labor Code § 226(a) requires employers to furnish each employee with a statement

2   itemizing, *inter alia*, the total hours worked and wages earned by the employee semi-monthly or at

3   the time of each payment of wages.  California Labor Code § 226(e) provides that if an employer

4   knowingly and intentionally fails to provide a statement itemizing, *inter alia*, the total hours worked

5   by the employee, then the employee is entitled to recover the greater of all actual damages or fifty

6   dollars ($50) for the initial violation and one hundred dollars ($100) for each subsequent violation,

7   up to a maximum of four thousand dollars ($4,000).

8   115.  Defendants knowingly, intentionally, and willfully failed to furnish Plaintiff and Class

9   members with timely, accurate, itemized statements showing the actual total hours worked and the

10  wages earned, as required by California Labor Code § 226(a).  As a result, Defendants is liable to

11  Plaintiff and proposed Class members for the amounts, penalties, court costs and attorneys' fees

12  provided by California Labor Code § 226(e).

13  116.  Plaintiff, on behalf of himself and the proposed Class, requests an assessment of penalties as

14  stated herein and other relief as described below.

15

16                      ELEVENTH CAUSE OF ACTION
                              Waiting Time Penalties
17                      California Labor Code §§ 201-203
                        (Against All Defendants and Does 1-50)
18

19  117.  Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 116 above as

20  though fully set forth herein.

21  118.  California Labor Code § 201 requires an employer who discharges an employee to pay all

22  compensation due and owing to said employee immediately upon discharge.  California Labor

23  Code § 202 requires an employer to promptly pay compensation due and owing to said employee

24  within seventy-two (72) hours of that employee's termination of employment by resignation.

25  California Labor Code § 203 provides that if an employer willfully fails to pay compensation

26  promptly upon discharge or resignation, as required under California Labor Code §§ 201 and 202,

27  then the employer is liable for waiting time penalties in the form of continued compensation for up

28  to thirty (30) work days.

1   119. Plaintiff and members of the putative Class have left their employment with Defendants

2   during the statutory period. Defendants willfully have failed and refused, and continue to willfully

3   fail and refuse, to timely pay minimum wages, overtime compensation and sums wrongfully

4   deducted from compensation to Plaintiff and to all other proposed Class members whose

5   employment with Defendants have ended or been terminated at any point during the statutory

6   period, as required by California Labor Code §§ 201-202. As a result, Defendants is liable to

7   Plaintiff and other formerly employed members of the proposed Class for waiting time penalties,

8   together with interest thereon and attorneys' fees and costs, under California Labor Code § 203.

9   Plaintiff, on behalf of himself and the proposed Class, requests waiting time penalties pursuant to

10   California Labor Code § 203 and as described below.

11

12                    **TWELFTH CAUSE OF ACTION**
13          **Willful Misclassification of Individual as Independent Contractor**
                      **California Labor Code § 226.8**
14                 **(Against All Defendants and Does 1-50)**

15   120. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 119 above as

16   though fully set forth herein.

17   121. Defendants intentionally and willfully characterized Plaintiff and Class members as

18   independent contractors rather than employees in violation of Labor Code § 226.8.

19   122. Defendants engaged in a pattern and practice of misclassifying employees as independent

20   contractors for their own financial benefit.

21   123. As a direct and proximate result of the unlawful acts and/or omissions of Defendants, Plaintiff

22   and Class members are entitled to recover damages in an amount to be determined at trial and civil

23   penalties, plus interest thereon, and attorneys' fees and costs pursuant to Labor Code § 226.8.

24   124. Plaintiff is informed and believes that Exel has engaged in or is engaging in a pattern or

25   practice of misclassifying its Drivers, and Plaintiff seeks recovery of civil penalties of not less than

26   ten thousand dollars ($10,000) and not more than twenty-five thousand dollars ($25,000) for each

27   violation, in addition to any other penalties or fines permitted by law.

28

*Daniel Villalpando, et al. v. Exel Direct Inc., Deutsche Post DHL, et al.*
COMPLAINT
26

1    THIRTEENTH CAUSE OF ACTION
     **Unfair Competition and Unlawful Business Practices**
2    **California Business and Professions Code §§ 17200, *et seq.***
     (Against All Defendants and Does 1-50)
3

4    125. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 123 above as

5    though fully set forth herein.

6    126. California Business and Professions Code § 17200 defines unfair competition to include

7    "unlawful, unfair or fraudulent business practices."

8    127. Moreover, Business and Professions Code § 17203 provides that the Court may restore to an

9    aggrieved party any money or property acquired by means of unlawful and unfair business

10   practices. Plaintiff seeks a court order requiring an audit and accounting of the payroll records to

11   determine the amount of restitution of all unpaid wages owed to himself and members of the

12   proposed Class, according to proof, as well as a determination of the amount of funds to be paid to

13   current and former employees that can be identified and located pursuant to a court order and

14   supervision.

15   128. Plaintiff and all proposed Class members are "persons" within the meaning of Business and

16   Professions Code § 17204 who have suffered injury in fact as a result of Defendants' unfair

17   competition, and who comply with the requirements of California Code of Civil Procedure Section

18   382, as set forth above and, therefore, have standing to bring this claim for injunctive relief,

19   restitution, and other appropriate equitable relief.

20   129. Defendants' have committed acts of unfair competition as defined by the Unfair Competition

21   Law, by engaging in the unlawful, unfair and fraudulent business practices and acts described in

22   this Complaint, but not limited to:

23       (a) violations of California Labor Code §§ 1182.11 and 1182.12

24       (b) violations of California Labor Code § 1194

25       (c) violations of California Labor Code §§ 1197 and 1197.1

26       (d) violations of California Labor Code § 510

27       (e) violations of California Labor Code §§ 226.7 and 512

28       (f) violations of California Code Regulations, Title 8 § 11090 sections 7 & 11

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY ᴸᴸᴾ

*Daniel Villalpando, et al. v. Exel Direct Inc., Deutsche Post DHL, et al.*
COMPLAINT
27

1     (g) violations of California Code Regulations, Title 8 § 11090 section 12

2     (h) violations of California Labor Code §§ 221, 223 and 400-410

3     (i) violations of IWC Wage Order No. 9

4     (j) violations of California Labor Code § 222.5

5     (k) violations of California Labor Code § 450, el. seq.

6     (l) violation of California Labor Code § 2802

7     (m) violations of California Labor Code §§ 1174 and 1174.5

8     (n) violations of California Labor Code §226

9     (o) violations of California Labor Code §§ 201-203

10     (p) violations of California Labor Code §226.8

11  130. Plaintiff reserves the right to identify additional unfair and unlawful practices by Defendants

12  as further investigation and discovery warrants.

13  131. As a result of its unlawful and/or unfair acts, Defendants have reaped and continue

14  to reap unfair benefits and illegal profits at the expense of Plaintiff and proposed Class members.

15  Defendants' unlawful and/or unfair conduct has also enabled Defendants to gain an unfair

16  competitive advantage over law-abiding employers and competitors. Defendants should be

17  enjoined from this activity and made to restore to Plaintiff and proposed Class members their

18  wrongfully withheld wages, interest thereon, and related statutory penalties, pursuant to Business

19  and Professions Code §§ 17202 and 17203.

20  132. Plaintiff, on behalf of himself and the proposed Class, requests restitution of unpaid wages,

21  wage premiums, injunctive relief and other relief as described below.

22

23              **VII.  PRAYER FOR RELIEF**

24  WHEREFORE, Plaintiff, on behalf of himself and the proposed Class he seeks to represent in this

25  action, requests the following relief:

26     That the Court determine that this action may be maintained as a class action under Code of

27     Civil Procedure § 382;

28     a) That the Court find that Defendants have violated applicable provisions of the California

1    Labor Code by failing to pay each member of the proposed Classes for all hours worked,

2    including minimum wage;

3    b) That the Court find that Defendants have violated applicable provisions of the California

4    Labor Code §§ 510, 1194 *et seq.*, and IWC Wage Order No. 9 by failing to  pay overtime

5    wages to Plaintiff and members of the Class;

6    c) That the Court find that Defendants have violated California Labor Code §§ 226.7 and 512

7    by failing to provide Plaintiff and members of the Class with meal and therefore owe penalties

8    under California Labor Code § 226.7(b) with respect to violations of California Code of

9    Regulations, Title 8 § 11090, sections 7 and 11;

10   d) That the Court find that Defendants have violated California Labor Code §§ 226.7 by failing

11   to provide Plaintiff and members of the Class with rest breaks, and therefore  owe penalties

12   under California Labor Code § 226.7(b) with respect to violations of California Code of

13   Regulations, Title 8 § 11090, section 12;

14   e) That the Court find that Defendants have violated California Labor Code  §§ 221, 223 and

15   400-410, and IWC Wage Order No. 9 by making unlawful deductions from Plaintiff's and the

16   Class' wages;

17   f) That the Court find that Defendants have violated California Labor Code § 222.5 by

18   requiring Drivers to pay for physical examinations, and drug and alcohol tests as to Plaintiff

19   and the Class;

20   g) That the Court find that Defendants have violated California Labor Code § 450, *et seq.* by

21   compelling and/or coercing Drivers to purchase things of value as to Plaintiff and the Class;

22   That the Court find that Defendants have violated California Labor Code § 2802, by failing to

23   reimburse the Plaintiff and the Class reasonable business expenses and losses;

24   h) That the Court find that Defendants have violated the recordkeeping provisions of California

25   Labor Code §§ 1174 and 1174.5 as to Plaintiff and the Class;

26   i)  That the Court find that Defendants have violated California Labor Code § 226 by failing to

27   timely furnish Plaintiff and members of the Class with itemized statements accurately showing

28   the total hours worked, vacation benefits, bonus benefits, and wages earned by each of them

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

1    during each pay period;

2    j)  That the Court find that Defendants have violated California Labor Code §§ 201 and 202

3    and therefore owe waiting time penalties under California Labor Code § 203 for willful failure

4    to pay all compensation owed at the time of termination of employment to Plaintiff and other

5    formerly employed members of the Class;

6    k)  That the Court find that Defendants have violated California Labor Code § 226.8 and

7    therefore owe civil penalties under California Labor Code § 226.8 and all damages proximately

8    caused by Defendants' wrongful conduct of engaging in a pattern or practice of willfully

9    misclassifying delivery drivers as independent contractors;

10   l) That the Court find that Defendants have committed unfair and unlawful business practices, in

11   violation of California Business and Professions Code § 17200, *et seq.*, by their violations of

12   the Labor Code and Wage Orders as described above;

13   m)  That the Court order an accounting of the payroll records or delivery logs to determine

14   what restitution is owed and to whom pursuant to California Business and Professions Code §

15   17203;

16   n) That the Court find that Defendants' violations of the California Labor Code described

17   herein have been willful;

18   o) That the Court award to Plaintiff and the Class restitution for the coerced purchases and

19   costs of the physical and medical examinations incurred by Drivers, including interest thereon,

20   liquidated damages and/or statutory penalties and other statutory penalties in amounts subject to

21   proof at trial;

22   p) That the Court award to Plaintiff and the Class restitution for the reasonable business

23   expenses and deductions incurred by Drivers, including interest thereon, liquidated damages

24   and/or statutory penalties and other statutory penalties in amounts subject to proof at trial;

25   q) That the Court award to Plaintiff and the Class restitution for the amounts of unpaid wages,

26   including interest thereon, liquidated damages and/or statutory penalties for failure to timely

27   furnish accurate itemized wage statements, and waiting time and other statutory penalties in

28   amounts subject to proof at trial;

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

*Daniel Villalpando, et al. v. Exel Direct Inc., Deutsche Post DHL, et al.*
COMPLAINT
30

r)  That Defendants be ordered and enjoined to pay restitution and penalties to Plaintiff and the Class due to Defendants' unlawful and/or unfair activities, pursuant to Business and Professions Code §§ 17200-17205;

s)  That Defendants further be enjoined to cease and desist from unlawful and/or unfair activities in violation of Business and Professions Code § 17200, pursuant to § 17203;

t)  That Plaintiff and the Class be awarded reasonable attorneys' fees and costs pursuant to Labor Code §§ 203, 225.5, 226, 1194, 1197, and 2804, Code of Civil Procedure § 1021.5, and/or other applicable law;

u)  That the Court award such other and further relief as this Court may deem just, equitable, and proper; and

v)  These Defendants be ordered to refrain from retaliating against any Class members who are current employees.

Dated: June 13, 2012

Respectfully submitted,

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

By: _____

CLINT J. BRAYTON
Attorney for Plaintiff and the Proposed Class

1

## DEMAND FOR JURY TRIAL

2   Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff and the Class are

3   entitled to a jury.

4

5   Dated: June 13, 2012                    Respectfully submitted,

6

7                                           SCHNEIDER WALLACE
                                            COTTRELL BRAYTON
8                                           KONECKY LLP

9

10   By:

11                                          CLINT J. BRAYTON
                                            Attorneys for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

*Daniel Villalpando, et al. v. Exel Direct Inc., Deutsche Post DHL, et al.*
COMPLAINT
32

10371883

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

Todd M. Schneider (SBN 158253) Clint J. Brayton (SBN 192214)
Schneider Wallace Cottrell Brayton Konecky LLP
180 Montgomery Street, Suite 2000
San Francisco, CA 94104
TELEPHONE NO.: (415) 421-7100     FAX NO.: (415) 421-7105
ATTORNEY FOR (Name): Plaintiff

FILED
ALAMEDA COUNTY

JUN 1 4 2012

CLERK OF THE SUPERIOR COURT

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Alameda
STREET ADDRESS: 1225 Fallon Street
MAILING ADDRESS: 1225 Fallon Street
CITY AND ZIP CODE: Oakland  94612
BRANCH NAME: Rene C. Davidson

CASE NAME:
Villalpando, et al. v. Exel Direct Inc., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited (Amount demanded exceeds $25,000) | [ ] Limited (Amount demanded is $25,000 or less) | [ ] Counter  [ ] Joinder | | RG12634666 |
| | | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: | |
| | | | DEPT: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [✓] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [✓] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [✓] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. [✓] monetary   b. [ ] nonmonetary; declaratory or injunctive relief   c. [ ] punitive

4. Number of causes of action (specify):

5. This case [✓] is [ ] is not   a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: June 13, 2012

Clint J. Brayton
_____
(TYPE OR PRINT NAME)                           (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

Schneider & Wallace
Attn: Brayton, Clint J.
180 Montgomery Street
Suite 2000
San Francisco, CA   94104-4207

Excel Direct Inc

## Superior Court of California, County of Alameda
## Rene C. Davidson Alameda County Courthouse

Villalpando

            Plaintiff/Petitioner(s)

      VS.

Excel Direct Inc

            Defendant/Respondent(s)·
(Abbreviated Title)

No. RG12634666

NOTICE OF HEARING

To each party or to the attorney(s) of record for each party herein:

Notice is hereby given that the above-entitled action has been set for:

          Complex Determination Hearing
          Case Management Conference

You are hereby notified to appear at the following Court location on the date and time noted below:

Complex Determination Hearing:
DATE: 07/30/2012   TIME: 03:00 PM   DEPARTMENT: 17
LOCATION: Administration Building, Third Floor
          1221 Oak Street, Oakland

Case Management Conference:
DATE: 09/04/2012   TIME: 03:00 PM   DEPARTMENT: 17
LOCATION: Administration Building, Third Floor
          1221 Oak Street, Oakland

Pursuant to California Rules of Court, Rule 3.400 et seq. and Local Rule 3.250 (Unified Rules of the Superior Court, County of Alameda), the above-entitled matter is set for a Complex Litigation Determination Hearing and Initial Complex Case Management Conference.

Department 17 issues tentative rulings on DomainWeb (www.alameda.courts.ca.gov/domainweb). For parties lacking access to DomainWeb, the tentative ruling must be obtained from the clerk at (510) 267-6933. Please consult Rule 3.30(c) of the Unified Rules of the Superior Court, County of Alameda, concerning the tentative ruling procedures for Department 17.

Counsel or party requesting complex litigation designation is ordered to serve a copy of this notice on all parties omitted from this notice or brought into the action after this notice was mailed.

All counsel of record and any unrepresented parties are ordered to attend this Initial Complex Case Management Conference unless otherwise notified by the Court.

Failure to appear, comply with local rules or provide a Case Management Conference statement may result in sanctions. Case Management Statements may be filed by E-Delivery, by emailing them to the following address:
EDelivery@alameda.courts.ca.gov. No fee is charged for this service. For further information,

go to Direct Calendar Departments at http://apps.alameda.courts.ca.gov/domainweb.

All motions in this matter to be heard prior to Complex Litigation Determination Hearing must be scheduled for hearing in Department 17.

If the information contained in this notice requires change or clarification, please contact the courtroom clerk for Department 17 by e-mail at Dept.17@alameda.courts.ca.gov or by phone at (510) 267-6933.

TELEPHONIC COURT APPEARANCES at Case Management Conferences may be available by contacting CourtCall, an independent vendor, at least 3 business days prior to the scheduled conference. Parties can make arrangements by calling (888) 882-6878, or faxing a service request form to (888) 883-2946. This service is subject to charges by the vendor.

Dated: 06/19/2012                          Executive Officer / Clerk of the Superior Court

By _____

                                                                    Digital
                                           Deputy Clerk

## CLERK'S CERTIFICATE OF MAILING

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to this cause. I served this Notice by placing copies in envelopes addressed as shown hereon and then by sealing and placing them for collection, stamping or metering with prepaid postage, and mailing on the date stated below, in the United States mail at Alameda County, California, following standard court practices.

Executed on 06/19/2012.

By _____

                                                                    Digital
                                           Deputy Clerk



| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Clint J. Brayton, 192214<br>SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP<br>180 Montgomry Suite 2000<br>San Francisco, CA 94104<br>TELEPHONE NO.: (415) 421-7100<br>ATTORNEY FOR (Name): Plaintiff | **FILED**<br>**ALAMEDA COUNTY**<br><br>JUL 0 9 2012<br><br>CLERK OF THE SUPERIOR COURT<br>By _____ |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF<br>Superior Court of California, Alameda County<br>1225 Fallon Street, #209<br>Oakland, CA 94612-4293 | Deputy |
| PLAINTIFF/PETITIONER: Villalpando<br>DEFENDANT/RESPONDENT: Exel Direct Inc., et al. | CASE NUMBER:<br>RG12634666 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>100849 |

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.
2. I served copies of:   Complaint, Civil Case Cover Sheet, Notice of Hearing, Summons

# BY FAX

3. a. Party served:  Exel Direct Inc.

   b. Person Served: CT Corporation System, Margaret Wilson - Person authorized to accept service of process
4. Address where the party was served:  818 West Seventh Street 2nd Floor
   Los Angeles, CA  90017
5. I served the party
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party (1) on (date): 7/5/2012        (2) at  (time): 3:00 PM
6. The "Notice to the Person Served" (on the summons) was completed as follows:

   c. on behalf of:


   Exel Direct Inc.


   under:   CCP 416.10 (corporation)
7. Person who served papers
   a. Name:         Jimmy Lizama
   b. Address:      One Legal - 194-Marin
                    504 Redwood Blvd #223
                    Novato, CA 94947

   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 35.95   818 West Seventh Street 2nd Floor
   e I am:
       (3) registered California process server.
          (i)  Employee or Independent contractor.
          (ii) Registration No.: 4553
          (iii) County: LOS ANGELES
8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.
Date: 7/6/2012

   _____
   Jimmy Lizama
   (NAME OF PERSON WHO SERVED PAPERS)                        (SIGNATURE)

Form Adopted for Mandatory Use
Judicial Council of California POS-010
(Rev. Jan 1, 2007)                     **PROOF OF SERVICE OF SUMMONS**     Code of Civil Procedure, § 417.10

                                                                      OL# 6783636



*10552552*

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Clint J. Brayton, 192214<br>SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP<br>180 Montgomry Suite 2000<br>San Francisco, CA 94104<br>TELEPHONE NO.: (415) 421-7100<br>ATTORNEY FOR (Name): Plaintiff | FILED<br>ALAMEDA COUNTY<br>JUL 0 9 2012<br>CLERK OF THE SUPERIOR COURT<br>By ______ Deputy |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF<br>Superior Court of California, Alameda County<br>1225 Fallon Street, #209<br>Oakland, CA 94612-4293 | |
| PLAINTIFF/PETITIONER: Villalpando<br>DEFENDANT/RESPONDENT: Exel Direct Inc., et al. | CASE NUMBER:<br>RG12634666 |
| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.:<br>100849 |

1. At the time of service I was a citizen of the United States, at least 18 years of age and not a party to this action.
2. I served copies of: Complaint, Civil Case Cover Sheet, Notice of Hearing, Summons

**BY FAX**

3. a. Party served: DHL Express (USA), INC.

   b. Person Served: CT Corporation System, Margaret Wilson - Person authorized to accept service of process
4. Address where the party was served: 818 West Seventh Street 2nd Floor
   Los Angeles, CA 90017
5. I served the party
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on (date): 7/6/2012 (2) at (time): 3:00 PM
6. The "Notice to the Person Served" (on the summons) was completed as follows:
   c. on behalf of:

   DHL Express (USA), INC.

   under: CCP 416.10 (corporation)
7. Person who served papers
   a. Name: Jimmy Lizama
   b. Address: One Legal - 194-Marin
      504 Redwood Blvd #223
      Novato, CA 94947
   c. Telephone number: 415-491-0606
   d. The fee for service was: $ 35.95
   e. I am:
      (3) registered California process server.
         (i) Employee or independent contractor.
         (ii) Registration No.: 4553
         (iii) County: LOS ANGELES
8. I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Date: 7/6/2012

Jimmy Lizama
(NAME OF PERSON WHO SERVED PAPERS) (SIGNATURE)

1  TODD M. SCHNEIDER, SBN 158253
   CLINT J. BRAYTON, SBN 192214
2  SCHNEIDER WALLACE
   COTTRELL BRAYTON KONECKY LLP
3  180 Montgomery Street, Suite 2000
   San Francisco, CA 94104
4  Telephone: (415) 421-7100
   Facsimile: (415) 421-7105
5

**FILED**
ALAMEDA COUNTY

JUL 1 9 2012

By _Guoa Bahee_ exec. Off/Clerk

6

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

11  DANIEL VILLALPANDO, individually
    and on behalf of all others similarly situated,
12
    Plaintiff,
13
    vs,
14
15  EXEL DIRECT INC.; DEUTSCHE POST
    DHL, DHL EXPRESS (USA), INC., and
16  DOES 1 to 50,
17
    Defendants.
18
19

Case No.: RG 12634666

DECLARATION OF CLINT J.
BRAYTON IN SUPPORT OF
DETERMINATION THAT CASE IS
COMPLEX UNDER CRC 3.400

28

*Daniel Villalpando, et al, v. Exel Direct Inc., Deutsche Post DHL, et al., RG 12634666*
DECLARATION OF CLINT J. BRAYTON IN SUPPORT OF DETERMINATION THAT CASE IS COMPLEX
UNDER CRC 3.400

I, Clint J. Brayton, hereby declare as follows:

1.    I am a partner of Schneider Wallace Cottrell Brayton Konecky LLP in San Francisco, California, and counsel of record for Plaintiff in the above-referenced action. Each of the facts set forth herein is true and correct within my personal knowledge, and if called and sworn as a witness, I would competently testify thereto.

2.    I have litigated numerous wage and hour class and collective actions in state and federal court, including the Superior Court of California for the County of Alameda. Based on my experience, I regard this case to be complex within the meaning of California Rule of Court ("CRC") 3.400. I believe that it will benefit from a complex case determination and single assignment, in terms of overall judicial efficiency and other case management issues.

3.    Plaintiff's complaint alleges that Defendants EXEL DIRECT INC., DEUTSCHE POST DHL, DHL EXPRESS (USA), INC. ("Defendants") misclassify delivery drivers as "independent contractors" and as a result violates numerous sections of the California Labor Code. This includes failing to pay its drivers overtime compensation for all of the overtime hours they work, and failing to provide its drivers with the off-duty meal and rest periods to which they are entitled. The complexity of this case arises from (1) the numerous Labor Code violations which Plaintiff alleges as a result of Defendants' policy, and (2) the underlying legal questions which these claims raise.

4.    This case is a "complex case" as that term is defined by CRC 3.400(a), in that it will require exceptional judicial management to avoid placing unnecessary burdens on the court and the litigants to expedite the case, keep costs reasonable, and promote effective decision making.

5.    This case will require several pre-trial motions, including, for example, motions for class certification and summary judgment by Plaintiff. All of the anticipated motions in this action, including discovery motions, motion for class certification, and motions for summary judgment, will likely involve many of the same underlying set of facts and law.

*Daniel Villalpando, et al. v. Exel Direct Inc., Deutsche Post DHL, et al., RG 12634666*
DECLARATION OF CLINT J. BRAYTON IN SUPPORT OF DETERMINATION THAT CASE IS COMPLEX
UNDER CRC 3.400