UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DANIEL VILLALPANDO,

    Plaintiff,

  v.

EXEL DIRECT INC., ET AL.,

    Defendants.

Case No. C-12-04137 JCS

**ORDER DENYING MOTION TO REMAND [DOCKET NO. 9]**

## I. INTRODUCTION

Plaintiff filed a purported class action in the Superior Court of Alameda County, California on June 14, 2012 asserting wage and hour claims under California state law based on the alleged misclassification of drivers as independent contractors rather than employees. Defendants removed to federal court under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), on August 6, 2012. Plaintiff now brings a Motion to Remand ("Motion"), asserting that the action should be remanded to state court because CAFA does not apply. The parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). A hearing on the Motion was held on Friday, November 2, 2012 at 9:30 a.m. For the reasons stated below, the Motion is DENIED.

## II. BACKGROUND

### A. The Complaint

Plaintiff Daniel Villalpando brings a class action on behalf of himself and all other similarly situated drivers currently and formerly employed by Defendants within the State of California. Complaint, ¶ 1. He describes the putative class as "current or former Drivers of Defendants who are or were employed as 'independent contractors' by Defendants in California

at some time during the period beginning four years prior to the filing of the original Complaint in this action to the present." *Id.*, ¶ 9. He names as defendants Excel Direct, Inc., Deutsche Post DHL, DHL Express (USA), Inc. and Does 1-50. Plaintiff alleges that Defendant Exel Direct, Inc. ("Exel Direct") "is and was engaged in the business of delivery services in the State of California." *Id.*, ¶ 12. Plaintiff further alleges that Exel Direct is a wholly owned entity of Deutsche Post DHL and is "part of the Supply Chain division" of Deutsche Post DHL. *Id.* According to Plaintiff, Deutsche Post DHL "owns and operates under a number of different names and/or entities, which are headquartered in Ohio, including, but not limited to, DHL Express (USA)." *Id.*

Plaintiff alleges that he is a resident of Oakley, California, in Contra Costa County, that he "worked as a Driver at Defendants' office located in the Sears' warehouse in California between approximately September 2008 and December 2011." Complaint, ¶ 10. He further alleges that he was "employed by Defendants as a Driver," that he "has held the same job position since he began working for Defendants in September 2008," and that his "agreement was terminated by Excel Direct in December of 2011." *Id.*, ¶ 11. Plaintiff alleges that "Defendants are or were the joint employers of Plaintiff," alleging on information and belief that all acts or omissions alleged were "performed by, and/or attributable to, all Defendants, each acting as agents and/or employees, and/or under the direction and control of each of the other Defendants, and that said acts and failures to act were within the course and scope of said agency, employment and/or direction and control." *Id.*, ¶ 15. However, all of the specific factual allegations regarding the alleged wrongful conduct are directed at Exel Direct. *See id.*, ¶¶ 18-68. In his factual allegations, Plaintiff directly references the "Independent Truckman's Agreement" setting the terms of employment for independent contractors providing driving services and the "Equipment Lease Agreement," both of which Exel Direct required independent contractors to sign. *Id.*, ¶¶ 21, 26.

In his complaint, Plaintiff asserts the following thirteen California state law claims against all Defendants: (1) failure to pay minimum wage; (2) failure to pay overtime; (3) failure to provide meal periods; (4) failure to provide rest periods; (5) unlawful wage deductions; (6)

unlawful requiring putative class members to incur the cost of physical exams; (7) coerced purchases; (8) violations of Cal. Lab. Code § 2802; (9) failure to keep accurate payroll records; (10) failure to provide accurate wage statements; (11) waiting time penalties; (12) unlawful misclassification pursuant to Section 226.8; and (13) recovery under California Business & Professions Code § 17200, *et seq. Id*., ¶¶ 72-130.

### B.   The Notice of Removal

On August 6, 2012, Defendants removed this action to the Federal District Court for the Northern District of California, asserting that there is federal jurisdiction under CAFA "because this is a class action in which the proposed class includes at least 100 members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one putative class member is a citizen of a state different from one of the defendants." Notice of Removal at 2 (citing 28 U.S.C. § 1441(a) (providing for removal of state court actions over which U.S. District Courts have original jurisdiction); 28 U.S.C. § 1332(d)(2)(A) (setting forth requirements for original jurisdiction under CAFA); 28 U.S.C. § 1453 (providing for the removal to federal court of class actions)). Defendants further asserted that removal was proper under 28 U.S.C. § 1332(d)(2)(C) because "this is a class action in which the proposed class includes at least 100 members, the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one putative class member is a United States citizen, while at least one defendant is a citizen of a foreign nation." *Id*. at 2-3.

To establish that the minimal diversity requirements of CAFA are met, Defendants cite Plaintiff's allegation that he is a resident of Contra Costa County, California. Notice of Removal at 3. Defendants further state that Exel Direct is a California corporation with its principal place of business in Ohio and therefore is a citizen of both Ohio and California under *Herz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010). *Id*. According to Defendants, Deutsche Post DHL is a German corporation with its principal place of business in Germany and Defendant DHL Express (USA), Inc. ("DHL Express (USA)") is an Ohio corporation with its principal place of business in Florida. *Id*. Defendants state that Plaintiff in his complaint wrongly identifies Deutsche Post DHL as the entity that owns Exel Direct. *Id*. n. 1. According to Defendants, "Exel [Direct] is

3

owned by DPWN Holdings (USA), Inc., an Ohio corporation with its principal place of business in Ohio." *Id*. Defendants further state that "DPWN Holdings (USA), Inc. is wholly-owned by Deutsche Post Beteiligungen Holding GmbH, a German corporation with its principal place of business in Germany." *Id*.

Defendants cite to the Declaration of Renee Albarano in Support of Defendants' Notice of Removal ("Albarano Decl."), purportedly attached to the Notice of Removal as an exhibit, to establish that the proposed class contains more than 100 members and the amount in controversy exceeds $5,000,000. *Id*. at 4.[1] In the Albarano Declaration, Ms. Albarano, who is Vice President of Finance for Exel Direct, states that she has reviewed Exel Direct's databases storing information about Exel Direct's contracts with independent contractors who perform delivery services in California. Albarano Decl., ¶ 1. She states that between June 14, 2008 and August 2, 2012, Exel Direct has contracted with at least 347 independent contractors that received load offers from California offices. Id., ¶ 2. She also confirms that Exel Direct contracted with Plaintiff Daniel Villalpando's trucking company, Kalio Trokins, for 162 weeks. *Id*., ¶ 4. She goes on to provide information about the amounts paid to California independent contractors by Exel Direct. *Id*., ¶¶ 3-4.

### C.     The Motion

In the Motion, Plaintiff asserted that the action should be remanded to state court because: 1) removal was untimely; 2) Defendants did not provide admissible evidence, in the form of affidavits from company directors or officers, establishing the existence of minimal diversity; 3) Defendants failed to establish that the $5,000,000 amount in controversy requirement under CAFA was satisfied; and 4) the "Home State" and "Local Controversy" exceptions to CAFA apply in this case. Plaintiff also asserted that he should be permitted to conduct jurisdictional discovery regarding the CAFA exceptions and that he should be awarded fees and costs for the Motion.

---

[1] Defendants served a copy of the Albarano declaration on Plaintiff but due to a clerical error, the declaration was not attached to the Notice of Removal. *See* Motion at 4 n. 1. At the request of the Court, Defendants subsequently filed the Albarano declaration, which can be found at Docket No. 23.

In his Reply brief, Plaintiff withdrew his arguments that the removal was untimely and that Defendants failed to establish the $5,000,000 amount in controversy. Reply at 1 n.1 ("Plaintiff is no longer contesting the amount in controversy requirement").[2]

## III. ANALYSIS

### A.   Legal Standards under CAFA

As a general rule, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). The federal removal statute is strictly construed, and federal courts reject jurisdiction if there is any doubt as to whether removal was proper. *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

Under CAFA, "district courts shall have original jurisdiction in any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2). "Thus, under CAFA, complete diversity is not required; 'minimal diversity' suffices." *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007) (citations omitted).

CAFA contains two exceptions, the so-called "Home State" and "Local Controversy" exceptions, codified at 28 U.S.C. § 1332(d)(4). The "Home State" exception is set forth in subsection (d)(4)(B), which provides that a district court shall decline to exercise jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).

The "Local Controversy" exception is set forth in 28 U.S.C. § 1332(d)(4)(A). That subsection provides as follows:

A district court shall decline to exercise jurisdiction under [§ 1332(d)(2)]-

---

[2] Plaintiff does not expressly conceded in his Reply brief that his timeliness argument has no merit. However, he does not respond to Defendants' argument that the removal was timely.

5

(A)(i) over a class action in which-

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant-

(aa) from whom significant relief is sought by members of the plaintiff class;

(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and

(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons.

§ 1332(d)(4)(A).

The Ninth Circuit has held that "although the removing party bears the initial burden of establishing federal jurisdiction under § 1332(d)(2), once federal jurisdiction has been established under that provision, the objecting party bears the burden of proof as to the applicability of any express statutory exception under §§ 1332(d)(4)(A) and (B). *Serrano*, 478 F.3d at 1024.

### B. Relevant Entities

As a preliminary matter, the Court must determine which entities should be considered for the purposes of determining whether removal under CAFA is proper. In their Opposition, Defendants refer to three entities as Defendants: 1) Exel Direct; 2) Deutsche Poste Beteiligungen Holding GmbH;and 3) DPWN Holdings (USA), Inc. While the first of these was named as a Defendant in Plaintiff's complaint, the latter two were not. Defendants appear to have assumed that in naming Deutche Poste DHL as a Defendant, Plaintiff meant to name Deutsche Poste Beteiligungen Holding GmbH as a Defendant and therefore Defendants have substituted Deutsche Poste Beteiligungen Holding GmbH for the Defendant Plaintiff actually named. Similarly, Defendants assume that Plaintiff meant to sue DPWN Holdings (USA), Inc. rather than DHL Express (USA).

As to Deutsche Poste Beteiligungen Holding GmbH, Plaintiff objects that this entity was not named as a Defendant and should not be considered. On the other hand, Plaintiff does not object to the fact that Defendants treat DPWN Holdings (USA), Inc. as a Defendant even though no such entity was named. Rather, at the Motion hearing, Plaintiff stipulated that he intended to sue DPWN Holdings (USA) rather than DHL Express (USA).

The parties did not brief the question of what to do, for the purposes of determining whether there is jurisdiction under CAFA, when a plaintiff has named what appears to be the wrong entity. Rule 15(c) of the Federal Rules of Civil Procedure allows for relation back in cases of "misnomer," that is, where claims were asserted against "the right party by the wrong name." *See Gipson v. Wells Fargo Corp.*, 382 F. Supp. 2d 116, 119-120 (holding that "[i]n order to determine whether a plaintiff has brought suit against the wrong party or the right party by the wrong name, a court must examine the factual circumstances of a lawsuit"). Therefore, to the extent that Plaintiff has conceded that he intended to name DPWN Holdings (USA), Inc. as a Defendant rather than Deutche Post DHL, the Court treats the former, rather than the latter, as the named defendant. The Court declines to treat Deutsche Poste Beteiligungen Holding GmbH as a Defendant, however, as Plaintiff has not stipulated that he intended to sue that entity and Defendants have offered no evidence or authority suggesting that the Court may consider it as a Defendant where it was not named in the complaint.

**C.     Whether Minimal Diversity Exists**

Plaintiff alleges that he is a resident of California, while Defendants have presented evidence that DHL Express (USA) and DPWN Holdings (USA), Inc. are incorporated in Ohio and based in Florida. *See* Notice of Removal at 3 ("Co-defendant [DHL Express (USA)] is an Ohio corporation with its principal place of business in Florida"); Supplemental Declaration of Renee Albarano [Docket No. 15-1] (stating that DPWN Holdings (USA), Inc. is an Ohio Corporation with its principal place of business in Florida). Therefore, CAFA's minimal diversity requirement is met.

**D.     Whether the "Home State" Exception Applies**

**1.     The arguments**

Plaintiff contends that the "Home State" exception applies because two-thirds or more of the members of "all proposed plaintiff classes in the aggregate," are citizens of California and the "primary defendant" is Exel Direct, which is also a citizen of California.   Motion at 5 (citing 28 U.S.C. § 1332(d)(4)(B)).  In support of his contention that Exel Direct is the primary defendant, Plaintiff points to the declaration of Renee Albarano, stating that Exel Direct has contracted with 347 independent contractors for delivery services in California and has contracted with Plaintiff Villalpando. *Id.* at 7-8 (citing Albarano Decl., ¶¶ 1, 4).  He also submits a copy of the Independent Truckman's Agreement and the Equipment Lease Agreement between Exel Direct and Villalpando's trucking company, Kalio Trokins. *See* Declaration of Clint J. Brayton in Support of Plaintiff's Motion to Remand ("Brayton Motion Decl."), Exs. C & D.  Plaintiff points out that all of the factual allegations in the Complaint are directed at Exel Direct and that there is no allegation (or evidence) that Plaintiff entered into a contract with any of the other Defendants. *Id*. at 8.  Further, he states that "Ms. Albarano's declaration . . . implies that Defendant Exel [Direct] would be the entity that would [incur] the loss if liability [is] found." *Id*.   Plaintiff concedes that Exel Direct is wholly owned by DPWN Holdings (USA), Inc. but notes that "corporations and their subsidiaries are generally treated as separate legal entities with separate liabilities and assets." *Id*. at 8 n. 5 (citing *Harrington v. Mattel, Inc.*, 2007 WL 4556920 (N.D. Cal. Dec. 20, 2007)).  Finally, Plaintiff asserts that he intends to dismiss the other Defendants and therefore, that the only remaining question is whether Exel Direct is a primary defendant. *Id*. at 6.

In their Opposition, Defendants do not dispute that two-thirds or more of the members of all proposed plaintiff classes in the aggregate are citizens of California.  Nor do they dispute that Exel Direct is a primary defendant.  Rather, they assert that in order for the exception to apply, *all* of the "primary defendants" must be citizens of California and here, that requirement is not met because Deutsche Poste Beteiligungen Holding GmbH and DPWN Holdings (USA), Inc. – which are not citizens of California – are also primary defendants. Opposition at 7-9.

1        Defendants cite district court cases that have grappled with the meaning of the term "primary defendant," which is not defined in CAFA. *Id*. at 7 (citing *Corsino v. Perkins*, 2010 WL 317418, at * 6-8 (C.D. Cal. Jan. 19, 2010); *Phillips v. Kaiser Found. Health Plan, Inc.*, 2011 WL 3047475 (N.D. Cal. July 25, 2011); *Kearns v. Ford Motor Co.*, 2005 WL 3967998 (C.D. Cal. Nov. 21, 2005)). According to Defendants, these courts have defined "primary defendant" as a party having "a dominant relation to the subject matter of the controversy or . . . allegedly liable to the whole class." *Id*. (citations omitted). Defendants state that in *Kearns*, the district court expressly rejected a test looking to the party with the "deepest pockets or . . .with the greatest culpability as too fact-based to be evaluated at the procedural point at which they were to be applied." *Id*. (citing 2005 WL 3967998 at *8) (quotations omitted).

       In this case, Defendants contend, Plaintiff has asserted all of his claims against all three Defendants and seeks relief from Defendants collectively, undermining Plaintiff's position that only Exel Direct is a primary defendant. *Id*. at 7-8. According to Defendants, "courts have routinely held that when a complaint fails to distinguish among defendants as to theories of liability, all are considered primary defendants." *Id*. at 8 (citing *Nicholson v. Prime Tanning Corp.*, 2009 WL 2900042, at *2 (W.D. Mo. Sept. 3, 2009); *Brook v. UnitedHealth Group, Inc.*, 2007 WL 2827808, at * 4 (S.D.N.Y. Sept. 28, 2007)). Defendants also reject Plaintiff's assertion that the Albarano Declaration implies that Exel Direct would be the entity that incurs the loss if Plaintiff prevails in this case. *Id*. Finally, Defendants reject the contention that because Plaintiff intends to dismiss all Defendants but Exel Direct, the Court need not address whether those Defendants are primary defendants, citing the rule that jurisdiction in removed cases is analyzed on the basis of the pleadings filed at the time of removal without reference to subsequent amendments. *Id*. (citing *Sparta Surgical Corp. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 159 F.3d 1209, 1213 (9th Cir. 1998)).

       In his Reply brief, Plaintiff does not challenge Defendants' assertion that all "primary" defendants must be citizens of California in order for the "Home State" exception to apply. He contends, however, that: 1) Deutsche Poste Beteiligungen Holding GmbH is not a named defendant and therefore is not a primary defendant; and 2) neither Deutsche Poste Beteiligungen

9

Holding GmbH (assuming it is considered a defendant) nor DPWN Holdings (USA), Inc. is a primary defendant. Plaintiff, like Defendants, cites *Kearns* and *Phillips* on the meaning of "primary defendant" under CAFA but contends that the tests articulated in these cases support remand because Exel Direct is the only defendant with direct liability. Reply at 2. Plaintiff points out that it is undisputed that Exel Direct is the only entity that entered into the Independent Truckman's Agreement and Lease Agreement, arguing that as a result, only Exel Direct can be held directly liable to Plaintiff. *Id*. Similarly, Plaintiff contends, the Albarano Declaration makes clear that Exel Direct is the only entity that entered into contract agreements with the alleged independent contractors. *Id*. at 3. Plaintiff reiterates his position that DPWN Holdings (USA) should not be considered a primary defendant on the basis that it owns Exel Direct because parents and subsidiaries are separate legal entities.

Plaintiff also rejects Defendants' assertion that all three Defendants are primary Defendants because all were named as Defendants as to each claim in the complaint, arguing that the cases cited by Defendants on this point - *Phillips*, *Kearns*, *Nicholson* and *Brook* - are distinguishable because in those cases, there was no evidence relating to jurisdiction other than the complaints, and the complaints supported the conclusion that the defendants at issue were all equally (and directly) liable. Id*. at 4-9*. Here, in contrast, Plaintiff argues, there is no evidence that any Defendant other than Exel Direct is directly liable to Plaintiff. *Id*. at 6-7.

### 2. Application of legal standards

As stated above, the Court declines to consider Deutsche Poste Beteiligungen Holding GmbH as a Defendant in this action. Therefore, the question before the Court is whether DPWN Holdings (USA) is a primary defendant. The term " primary defendant" is not defined in CAFA and the Ninth Circuit has not yet addressed the meaning of this term. *See Serrano*, 478 F.3d at 1024 (declining to address meaning of "primary defendant" under CAFA). Numerous district courts have addressed this issue, however. The Court looks to these district court decisions, and particularly those cited by the parties, for guidance.

In *Kearns v. Ford Motor Co*., 2005 WL 3967998 (C.D.Cal., Nov. 21, 2005), the court addressed whether the "Home State" exception applied where the Plaintiff in a removed action

had named a local Ford dealer and the Ford Motor Company as defendants in a purported class action based on alleged misrepresentations in connection with a Certified Pre-Owned ("CPO") program. The local dealer and more than two thirds of the plaintiffs were California citizens, but the Ford Motor Company was not, and therefore, the court had to determine whether Ford Motor Company was a "primary defendant" to decide whether the action should be remanded under the "Home State" exception. 2005 WL 3967998, at *7-8. The court offered the following reasoning as to the meaning of "primary defendant":

> CAFA provides that the Court may decline to exercise jurisdiction over some cases, depending on its evaluation of a number of factors. 28 U.S.C. § 1332(d)(3). Before those factors can be considered, however, the statute requires that these cases be ones in which "greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens of the State in which the action was originally filed." *Id*. . . .
>
> The term "primary defendants" has no clear, unambiguous meaning and is not an established term of art. Congress has used the term in only one other statute: the Multiparty, Multiforum, Trial Jurisdiction Act of 2002 ("MMTJA"), where it was also undefined. 28 U.S.C. § 1369. Like CAFA, MMTJA was enacted to expand federal jurisdiction. It gave federal courts jurisdiction over litigation arising from disasters that cause the death of more than 75 persons. *Id.; see also Passa v. Derderian*, 308 F.Supp.2d 43 (D.R.I.2004) (concerning the consolidation of claims related to a devastating night club fire in Rhode Island in which pyrotechnics set off by a rock band ignited textured foam and cloth covering the walls, killing 100 people and injuring 200 more). In *Passa*, which is the only decision to consider the interpretation of the term, the court was concerned with an exception to MMTJA jurisdiction for cases in which "the substantial majority of all plaintiffs are citizens of a single State of which the primary defendants are also citizens." See *id.* at 58; 28 U.S.C. § 1369(b)(1) (emphasis added). The court ruled that the exception did not apply because an insufficient number of plaintiffs were Rhode Island citizens. The court nevertheless went on to discuss the term "primary defendants." *Passa*, 308 F.Supp.2d at 61. Finding the term was facially ambiguous, and noting little guidance in the legislative history, the court went on to examine the use of "primary defendants" in the case law and determined that the term was widely and freely used with different denotations in different contexts. . . .
>
> The *Passa* court rejected suggestions of the parties that "primary defendants" be defined either as those with the deepest pockets or those with the greatest culpability. *Id*. at 61-62. Those definitions were seen as being inappropriate and unworkable because they were too fact-based to be evaluated at the procedural point at which they were to be applied. *Id*. The court concluded that, based on the context, the usage of the term as in tort law was the most appropriate and workable: *a "primary defendant" is any with direct liability to the*

   *plaintiffs. Id*. at 62. This Court is inclined to accept that definition, not least because of the similarity in goals of MMTJA and CAFA.

*Id*. (emphasis added).

  The court in *Kearns* went on to apply this definition to determine whether Ford Motor Company was a primary defendant. The court looked to the allegations in the complaint and concluded that both defendants were "primary defendants" because there was "nothing in the pleadings to distinguish among the defendants." *Id*. at 8. In particular, the Court noted that both the local dealer and Ford Motor Company were alleged to be involved in various aspects of the CPO program and therefore, both were potentially directly liable to the plaintiff class. *Id*.

  In a footnote, the *Kearns* court noted that the legislative history of CAFA offers an alternative definition of "primary defendant," citing a Committee Report "direct[ing] that the term include only a defendant 'who has substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed classes.'" *Id*. (quoting S.Rep. No. 109-14 at 43). The *Kearns* court concluded that this definition led to the same result in that case. *Id*.

  In *Phillips v. Kaiser Foundation Health Plan, Inc*., 2011 WL 3047475 (N.D.Cal., July 25, 2011), the court addressed whether all of the "primary defendants" were citizens of the same state as more than two thirds of the class members. In that case, the court applied the alternative definition referenced in *Kearns*, that is, the one based on the Committee Report looking to whether a defendant has "substantial exposure to significant portions of the proposed class in the action, particularly any defendant that is allegedly liable to the vast majority of the members of the proposed class . . . ." 2011 WL 3047475, at * 5 (citation omitted). The court concluded that an out-of-state defendant was a primary defendant because both of the plaintiffs' claims were asserted against that defendant and "there is no indication that Plaintiff would not seek recovery against [the out-of-state defendant] if Defendants are found liable." *Id*. The court noted that although the out-of-state defendant's actions were alleged to have been done pursuant to its relationship with one of the in-state defendants, the out-of-state defendant was "a separate legal entity and thus a 'primary defendant.'" *Id*.

In *Nicholson v. Prime Tanning Corp.*, 2009 WL 2900042 (W.D. Mo. Sept. 3, 2009), the court looked to several factors to determine if one of the defendants was a "primary defendant" under CAFA, stating as follows:

> [A] 'primary defendant' has been understood to mean a defendant who (1) has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the asserted claims; or (5) is the only defendant named in one particular cause of action.

2009 WL 2900042, at *2 (quoting *Moua v. Jani-King of Minnesota, Inc.*, 613 F.Supp.2d 1103, 1108 (D. Minn. 2009)). The court went on to note that "[t]he Court need only look at the complaint to make a pre-trial determination of which Defendants are sued directly." *Id*. (citation omitted). Applying that approach, the court concluded that both defendants were primary defendants because the "[p]laintiffs plainly and repeatedly asserted alleged facts and legal conclusions based on theories of direct liability against all Defendants." *Id*.

In *Brook v. UnitedHealth Group, Inc.*, 2007 WL 2827808 (S.D.N.Y., Sept. 27, 2007), the court addressed the definition of "primary defendant" under CAFA and concluded that the language in the Senate Committee Report cited in *Phillips* was "of minimal value in discerning legislative intent" because that report was released ten days *after* CAFA was enacted. 2007 WL 2827808, at *5. Instead, it looked to approaches taken by other courts, stating:

> Thus, it has been held that a primary defendant is one: (1) who has the greater liability exposure; (2) is most able to satisfy a potential judgment; (3) is sued directly, as opposed to vicariously, or for indemnification or contribution; (4) is the subject of a significant portion of the claims asserted by plaintiffs; or (5) is the only defendant named in one particular cause of action.

*Id*. (citations omitted). It found, however, that it was not necessary to decide which definition applied because the "plaintiffs themselves maintain[ed] that defendants [were] each equally culpable and liable for the injuries purportedly suffered by the putative class members." *Id*.

This Court finds the reasoning in *Kearns* to be persuasive with regard to the factors that should be considered in deciding whether a defendant is a "primary defendant." In particular, the Court finds that a defendant who, based on the allegations in the complaint, has some direct

13

liability to the plaintiffs, is a primary defendant. In addition, although mindful that the Committee Report relied upon by *Phillips* and other courts to define "primary defendant" may not be entitled to great weight in discerning legislative intent because of the timing of that report, the Court nonetheless gives some weight to the guidance offered there. Therefore, the Court concludes that a defendant may be considered a "primary defendant" if, based on the allegations in the complaint, it has substantial exposure to significant portions of the proposed class in the action, or is allegedly liable to the vast majority of the members of the proposed classes, even if that defendant faces only derivative liability.

The Court also agrees with the *Kearns* courts that the focus of the inquiry in determining which defendants are "primary defendants" should be on the allegations in the complaint in order to facilitate an early determination of whether there is federal jurisdiction under CAFA. For this reason, the Court concludes that a test that requires courts to make highly factual determinations, such as the degree of actual exposure or culpability, should be rejected.

Here, the Court finds that the complaint alleges no facts that suggest that any Defendant other than Exel Direct is directly liable to Plaintiffs. Although it is true that the claims are asserted generally against all Defendants, all of the specific conduct alleged is by Exel Direct. Further, the employment contract, which is cited in the complaint and therefore incorporated into it by reference, makes clear that the employer of the class plaintiffs is Exel Direct only. Indeed, Defendants do not dispute this fact, and even stated as much in the Albarano Declaration. On the other hand, Plaintiffs have named all three Defendants on every claim asserted, indicating that even if the alleged liability may be indirect, those Defendants face exposure to "the vast majority of the members of the proposed classes." Applying the principals discussed above, the Court concludes that DPWN Holdings (USA) is a "primary defendant" for the purposes of CAFA. Accordingly, the "Home State" exception does not apply.

### E. Whether the "Local Controversy" Exception Applies

#### 1. The arguments

Plaintiff contends that even if the "Home State" exception does not apply, the "Local Controversy" exception applies because: (a) more than two-thirds of the members of the class

14

1  members are California citizens; (b) the principal injuries resulting from Defendants' alleged
2  misconduct occurred in this State; (c) Defendant Exel Direct is a Defendant from whom
3  significant relief is sought and whose alleged conduct forms a significant basis for the claims
4  asserted; and (d) during the three-year period preceding the filing of this case, no other class
5  action has been filed asserting the same or similar factual allegations against any of the
6  Defendants.  Motion at 8-9 (citing 28 U.S.C. § 1332(d)(4)(A)).

7  Defendants do not dispute that more than two-thirds of the class members are California
8  citizens, or that significant relief is sought from Exel Direct, which is also a California citizen.
9  Opposition at 10.  They assert, however, that this exception does not apply because: 1) the
10 principal injuries arising from the alleged conduct of Defendants did not occur in California; and
11 2) another class action asserting similar factual allegations was filed against one of the
12 Defendants within the three-year period preceding the filing of this action.  *Id*.

13 In support of the first contention, Defendants cite to cases in which courts have held that
14 the "Local Controversy" exception should be applied narrowly, only to controversies that are
15 "truly local," and that a controversy is not local merely because all putative class members are
16 members of a particular state and the claims in the action are asserted under the laws of that state.
17 *Id*. at 10-11 (citing *Kearns*, 2005 WL, at *12; *Evans v. Walter Industries*, 449 U.S. 1159, 1163-64
18 (11th Cir. 2006); *Waller v. Hewlett-Packard Co.*, 2011 WL 8601207, at *4 (S.D. Cal. May 10,
19 2011); *Brook*, 2007 WL 2827808, at *4).  Defendants also point to recently filed cases in other
20 states asserting claims against DHL entities based on similar factual allegations to illustrate that
21 the harm alleged in this action is not uniquely local.  *Id*. at 11 (citing *Ruffin v. Exel*, Case No. 09-
22 CV-1735 (N.D. Ill.; Complaint filed Mar. 20, 2009; Am. Complaint filed Jan. 11, 2011) (ECF
23 Nos. 1, 45) (alleging Exel "erroneously classified" delivery drivers as "independent contractors"
24 and seeking monies allegedly owed under the Independent Truckman's Agreement signed by the
25 purportedly misclassified delivery drivers); *Mansingh v. Exel Direct, Inc. a/k/a Deutsche Post
26 DH*L, 1:12-CV-11661-DPW (D. Mass.; removed Sept. 7, 2012) (ECF No. 1) (challenging Exel
27 and DHL's "unlawful misclassification of drivers as independent contractors instead of as

employees")); *see also* Declaration of James H. Hanson ("Hanson Decl."), Exs. A (*Ruffin* complaints) & B (*Mansingh* complaint).

Defendants also contend that *Ruffin* renders the "Local Controversy" exception inapplicable because the amended complaint in that action was filed on January 11, 2010, within three years prior to the filing of the complaint in this action. *Id*. at 11-13. Defendants note that the amended complaint does not assert a misclassification claim but that the original complaint in that action did, and argue that the relevant inquiry is whether the *factual* allegations are similar. *See id*., n. 9 (citing *Giannini v. Northwestern Mut. Life Ins. Co.*, 2012 WL 1535196, at *5 (N.D. Cal. April 20, 2012)).

In his Reply brief, Plaintiff argues that the principal harm was suffered in California not only because all of the class members reside in California but also because the claims are asserted under California's "unique set of laws" enacted with respect to the employment relationship in this state. *Id*. at 10-11. Plaintiff contends that *Waller* is distinguishable from the facts here because in that case, the defendants allegedly sold nationwide hard drives that did not operate as advertised and as a result, the defendants were vulnerable to the same types of suit beyond California. *Id*. Plaintiff also rejects Defendants' assertion that *Ruffin* renders the "Local Controversy" exception inapplicable. *Id*. at 11-12. According to Plaintiff, the original complaint in *Ruffin* asserted a claim that DHL drivers were misclassified as independent contractors, but that complaint was filed on March 20, 2009, that is, more than three years before the filing of the complaint in this action. *Id*. at 12; *see also* Declaration of Clint J. Brayton in Support of Plaintiff's Reply Brief in Support of Plaintiff's Motion to Remand ("Brayton Reply Decl."), Ex. F (*Ruffin* Complaint) & G (*Ruffin* amended complaint). Plaintiff further points out that the amended complaint in *Ruffin*, which was filed on January 11, 2010, had dropped the misclassification claim and asserted only a breach of contract claim based on the Independent Truckman's Agreement. *Id*. Therefore, Plaintiff asserts, no complaint asserting similar claims has been filed in three years prior to the filing of this action, on June 14, 2012. *Id*.

### 2. Application of legal standards

#### a. Whether A Similar Action Has Been Filed Within Three Years

Defendants argue that the "Local Controversy" exception does not apply because the amended complaint in Ruffin was filed within three years of of the instant action. A review of the original and amended complaints in *Ruffin* reveals that only the original complaint, and not the amended complaint, asserts a misclassification claim. Further, the Court does not find the factual allegations in the amended complaint in *Ruffin* to be sufficiently similar to those in the instant action to show that a similar action has been filed in the three years preceding the filing of the instant action. The mere fact that the plaintiffs in *Ruffin* allege in support of a claim for breach of contract that they are drivers who entered into contracts with a DHL entity to provide delivery services does not make that case factually similar to this one for the purposes of determining whether this action involves a "local controversy." Nor does *Giannini* stand for a contrary result. In that case, the actions that were found factually similar to the one that had been removed involved misclassification claims, as did the removed action. *See* 2012 WL 1535196, at *5. Therefore, *Ruffin* cannot be used to exclude this case from the "Local Controversy" exception.

#### b. Whether the Controversy is Truly Local

In *Kearns*, the court explained that the "Local Controversy" exception was intended to be applied narrowly, only for "truly local controversies." 2005 WL 3967998, at * 12. It cited the following excerpt of the Senate Committee Report in support of this approach:

> [I]f the defendants engaged in conduct that could be alleged to have injured consumers throughout the country or broadly throughout several states, the case would not qualify for this exception, even if it were brought only as a single-state class action . . . . In other words, this provision looks at where the principal injuries were suffered by everyone who was affected by the alleged conduct – not just where the proposed class members were injured.

*Id*. (quoting S.Rep. No. 109-14 at 40-41). Applying this approach, the court in *Kearns* found that because the CPO program that was the subject of the claims in that case was nationwide, the controversy was not local, even though the class was limited to individuals who purchased vehicles under the CPO program in California and the claims were asserted under California law. *See* 2005 WL 3967998, at * 2, 12. Similarly, in *Waller*, the court held that the "Local

17

Controversy" exception did not apply to false advertising claims relating to the sale of a product that was sold by the defendant nationwide, even though the class was limited to individuals who purchased the product in California and the case asserted claims under California law.  *See* 2011 WL 8601207, at *5.  The court in that case explained that the controversy was not local because the plaintiff alleged "nothing wrongful about [Defendants'] marketing and sale that is peculiar to California, and there is no reason to believe that the Defendants aren't vulnerable to suit on very similar grounds beyond California."  *Id*.

 The Court finds that the reasoning of *Kearns* and *Waller* apply equally here.  There is nothing unique to California about the claims asserted in this action, even if the class is limited to Plaintiffs who provide delivery services in California and the claims in the action are based on California law.  Rather, Defendants are vulnerable to similar claims in other states, as the original complaint in *Ruffin* and the *Mansingh* complaint attest.  Plaintiff has not identified any meaningful distinction between those cases and this one on this issue.  Therefore, the Court concludes that the "Local Controversy" exception does not apply.

### F.  Whether Plaintiff Should be Permitted to Conduct Jurisdictional Discovery

Plaintiff contends that he should be permitted to conduct jurisdictional discovery directed at facts relevant to whether the "Home State" or "Local Controversy" exceptions apply.  Plaintiff has not, however, identified any discovery that is required to resolve these questions. Rather, as discussed above, it is apparent from the face of the complaint that neither exception applies. Therefore, the Court denies Plaintiff's request.

## IV. CONCLUSION

For the reasons stated above, the Motion is DENIED.

IT IS SO ORDERED.

Dated:  November 8, 2012

_____
Joseph C. Spero
United States Magistrate Judge