1

2

3

4                     UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    DANIEL VILLALPANDO, et al.,              Consolidated cases:

              Plaintiffs,                      Case No. 12-cv-04137 JCS
8
         v.                                    Case No. 13-cv-03091 JCS
9
10   EXEL DIRECT INC., et al.,
                                               **ORDER GRANTING IN PART AND**
              Defendants.                      **DENYING IN PART MOTION TO**
11                                             **DISMISS**

12                                             Re: Dkt. No. 84

13

14

15   **I.    INTRODUCTION**

16         In this wage and hour case, Defendants Exel Direct Inc., DPWN Holdings (USA), Inc. and

     Deutsche Post Beteiligungen Holding GmbH (collectively, "Exel") bring a Motion to Dismiss
17
     Plaintiffs' Consolidated  First Amended Complaint ("Motion") seeking dismissal of all of
18
     Plaintiffs' claims.  A hearing on the Motion was held on Friday, March 14, 2014 at 9:30 a.m.  For
19
     the reasons stated below, the Motion is GRANTED in part and DENIED in part.[1]
20

21   **II.   BACKGROUND**

22       **A.  Procedural Background**

23         Plaintiff Daniel Villalpando filed a purported class action in the Superior Court of

24   Alameda County, California on June 14, 2012 asserting California state law wage and hour claims

     against Exel based on the alleged misclassification of its drivers as independent contractors rather
25
     than employees.  Defendants removed to federal court under the Class Action Fairness Act
26

27   ─────────────────────

28   [1] The parties have consented to the jurisdiction of the undersigned United States magistrate judge
     pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  ("CAFA"), 28 U.S.C. § 1332(d), on August 6, 2012.  Plaintiff brought a motion to remand, which

2  the Court denied on November 8, 2012.

3       Plaintiffs Villalpando and Tafiti Shekur filed a First Amended Consolidated Complaint

4  ("FACC") on October 28, 2013.  In response to Exel's assertion that the "putative class were free

5  to perform their services in the manner they saw fit subject to . . . the demands of Exel's

6  customers, none of which involved control by Exel," *see* Dkt. No. 57 at 6,  Plaintiffs added Exel's

7  retail customers as Defendants on the FACC.[2]

### B.  First Amended Consolidated Complaint

9       In the introduction to the FACC, Plaintiffs describe the action as follows:

> Plaintiffs Daniel Villalpando and Tafiti Shekur bring this class action on behalf of themselves and other similarly situated individuals who have worked for Defendants as delivery drivers ("Drivers") in California at any time beginning June 14, 2008 (four years before the filing of the original complaint in this matter) until resolution of these actions, and who have been classified by Defendants as "independent contractors." Throughout the relevant time period of this action, Defendants have routinely been violating the  . . . California Labor Code and California Code of Regulations, by improperly categorizing Class Members, including Plaintiffs, as independent contractors when they are, in fact, employees.

16  FACC ¶ 1.  Plaintiffs allege that each of the Retail Defendants engages Exel Direct to provide

17  delivery services in accordance with a standardized set of policies and procedures implemented by

18  Exel Direct and/or jointly by Exel Direct and each of the Retail Defendants.  *Id*. ¶¶ 14-22.

19  Plaintiffs further allege that Defendants are and were "joint employers of Plaintiffs and the Class

20  of employees they seek to represent."  *Id*. ¶ 23.

21       Plaintiffs allege that Defendants have subjected them to a variety of illegal conduct in

22  connection with their classification of the Drivers as independent contractors rather than

23  employees.  *Id*. ¶¶ 25-75.  According to Plaintiffs, "Defendants' unlawful conduct has been, or

24  continues to be widespread, repeated, and willful throughout California."  *Id*.  ¶ 75.

---

[2] Plaintiffs named the following additional Defendants to the FACC: Euromarket Designs, Inc. (d/b/a Crate & Barrel); Office Depot, Inc.; Sears Holdings Corporation (d/b/a Sears); Williams-Sonoma, Inc.; JC Penney Company, Inc.; LA-Z-BOY, Inc.; Restoration Hardware Holdings Inc. (d/b/a Restoration Hardware); and IKEA, Inc.  Hereinafter, the Court refers to these defendants as "the Retail Defendants."  These additional defendants have consented to the jurisdiction of the undersigned magistrate judge.

Plaintiffs propose the following class definition: "All individuals who have provided delivery services for Defendants Exel Direct, while being classified by Defendants as an independent contractor, at any time beginning June 14, 2008 (four years before the filing of the original complaint in this matter) until resolution of these actions." *Id*. ¶ 76.

Plaintiffs assert the following fifteen claims in their FACC:

Claim One: Failure to pay minimum wage in violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1; and IWC Wage Order No. 9. *Id*. ¶¶ 86-101.  Plaintiffs seek to recover the wages to which they allege they were entitled under these provisions as well as liquidated damages, interest, attorneys' fees and costs.  *Id*. ¶ 101.

Claim Two:  Failure to pay overtime compensation in violation of California Labor Code §§ 510, 515.5, 1194, 1198; and IWC Wage Order No. 9.  *Id*. ¶¶ 102-107.  Plaintiffs seek to recover the overtime compensation to which they allege they were entitled under these provisions as well as interest, attorneys' fees and costs.  *Id*. ¶ 107.

Claim Three: Failure to pay for all hours worked in violation of California Labor Code §§ 201, 202, 204 and 221-223.  *Id*.  ¶¶ 108-117. Plaintiffs seek to recover nominal, actual, compensatory and exemplary damages and unpaid compensation, penalties, interest, attorneys' fees and costs.  *Id*. ¶ 117.

Claim Four:  Failure to provide meal periods or compensation in lieu thereof in violation of California Labor Code §§ 226.7 and 512; and Cal. Code Regs., Title 8, §11090 sections 7 & 11 ("meal break claim").  *Id*. ¶¶ 118-124. Plaintiffs seek to recover the compensation to which they allege they were entitled under these provisions as well as interest, attorneys' fees and costs.  *Id*. ¶ 124.

Claim Five:  Failure to provide rest periods or compensation in lieu thereof in violation of California Labor Code § 226.7 and Cal. Code Regs., Title 8 § 11090 section 12 ("rest break claim"). *Id*. ¶¶ 125-129.  Plaintiffs seek to recover the compensation to which they were entitled under these provisions as well as interest, attorneys' fees and costs.  *Id*. ¶ 129.

Claim Six: Unlawful deductions from wages to cover ordinary business expenses including claims for lost or damaged cargo, property damage claims, bodily injury claims, merchandise

claims granted to customers, costs of delivery service of a route if a Driver was unwilling to perform a requested route and fees charged associated with obtaining insurance through Defendants' insurance program, in violation of Cal. Labor Code §§ 204, 218, 218.6, 221, 223 and 400-410, Cal. Civ. Code § 3287(a); IWC Wage Order No. 9; and Cal. Code Regs., Title 8 § 11090 section 8. *Id*. ¶¶ 130-139.  Plaintiffs seek penalties, attorneys' fees and costs on this claim.  *Id*. ¶ 139.

Claim Seven: Withholding/deduction of cost of drug and alcohol tests and physical examinations in violation of Cal. Labor Code § 222.5.  *Id*. ¶¶ 140-143. Plaintiffs seek reimbursement, compensation for penalties, attorneys' fees and costs on this claim.  *Id*. ¶ 143.

Claim Eight: Coerced purchases of  moving equipment, delivery supplies, uniforms, cellular telephones and other items in violation of Cal. Labor Code § 450.  *Id*. ¶¶ 144-147. Plaintiffs seek reimbursement, compensation for penalties, attorneys' fees and costs on this claim. *Id*. ¶ 147.

Claim Nine:  Failure to reimburse for business expenses in violation of Cal. Labor Code §§ 2800, 2802 and 2804. *Id*. ¶¶ 148-154. Plaintiffs seek to recover their unreimbursed expenditures and losses, interest, attorneys' fees and costs on this claim.  *Id*. ¶ 154.

Claim Ten:  Failure to keep accurate payroll records in violation of Cal. Labor Code §§ 1174 and 1174.5.  *Id*. ¶¶ 155-157.  Plaintiffs seek damages and civil penalties, attorneys' fees and costs on this claim.  *Id*. ¶ 157.

Claim Eleven: Failure to furnish accurate wage statements in violation of Cal. Labor Code § 226. *Id*. ¶¶ 158-163. Plaintiffs seek an assessment of penalties on this claim.  *Id*. ¶ 163.

Claim Twelve:  Waiting time penalties under Cal. Labor Code §§ 201-203.  *Id*. ¶¶ 164-167. Plaintiffs seek an assessment of penalties on this claim.  *Id*. ¶ 163.

Claim Thirteen:  Willful misclassification of individual and independent contractor in violation of Cal. Labor Code § 226.8.  *Id*. ¶¶ 168-172.  Plaintiffs seek civil penalties on this claim. *Id*. ¶ 172.

Claim Fourteen:  Unfair competition and unlawful business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*. ("UCL claim").  *Id*. ¶¶ 173-180.  Plaintiffs seek restitution on

1  this claim  *Id.* ¶ 180.

2      Claim Fifteen:  Statutory penalties pursuant to Private Attorneys General Act ("PAGA"),

3  Cal. Labor Code §§ 2699 *et seq.* ("PAGA claim").  *Id.* ¶¶ 181-189.

4      **C.  The Motion**

5       Defendants make four main arguments in support of their request that the Court dismiss

6  Plaintiffs' claims.  First, Defendants contend all of Plaintiffs' claims fail under Rules 8(a)(2) and

7  10(b) of the Federal Rules of Civil Procedure because Plaintiffs have not alleged specific facts

8  identifying the basis for their claims as to each of the defendants.  Motion at 1-2, 4-6.  According

9  to Defendants, Plaintiffs' failure to plead specific facts creates confusion as to: 1) who Plaintiffs

10  provided services for; 2) who Plaintiffs purport to represent; and 3) what facts are attributable to

11  each defendant.  *Id.* at 4-6.

12      Second, Defendants assert that Plaintiffs' meal and rest break claims (Claims Four and

13  Five), as well as the UCL and PAGA claims to the extent they are based on the meal and rest

14  break allegations, should be dismissed because they are preempted by the Federal Aviation

15  Administration Authorization Act of 1994 ("FAAAA").  *Id.* at 2, 9-17.  Defendants acknowledge

16  that among the federal courts that have addressed this issue there is a split of authority but contend

17  the decisions that have found preemption are the better reasoned line of authority.  *Id.* at 11-15.

18      Third, Defendants argue Plaintiffs have no private right of action on claims Six, Seven,

19  Eight and Thirteen because the statutes upon which these claims are based, namely, Cal. Labor

20  Code §§ 204, 218, 221, 223, 400-410, 450, 222.5 and 222.8 do not manifest an intent on the part

21  of the California legislature to create private causes of action.  *Id.* at 2, 17-21.

22      Fourth, Defendants contend Plaintiffs' PAGA claim (Claim Fifteen) is insufficiently pled

23  because it is brought in a representative capacity and therefore Plaintiffs must allege facts showing

24  that Rule 23 of the Federal Rules of Civil Procedure is satisfied.  *Id.* at 2-3, 21-23.  On this issue,

25  like the preemption question, there is a split of authority – or at least, there was at the time the

26  Motion was briefed.[3]  Defendants contend the better reasoned cases are those that require plaintiffs

27

28  ─────────────
[3] As discussed below, on the day before the Motion hearing the Ninth Circuit decided in *Baumann v. Chase Inv. Services Corp.* that there are "fundamental differences" between PAGA and Rule 23

United States District Court
Northern District of California

1    bringing PAGA claims to comply with the requirements of Rule 23.  *Id*.  Defendants also argue

2    that the PAGA claim fails to satisfy the requirements of Rule 8 because Paragraph 185 of the

3    FACC alleges that "Plaintiff and other employees are 'aggrieved employees'" under PAGA but

4    the FACC does not identify which "other employees" Plaintiffs contend are aggrieved.  *Id*. at 23-

5    24.  According to Defendants, this leaves Exel to "guess whether Plaintiffs intend[] to assert

6    claims on behalf of all employees regardless of position, location, or duties, which is insufficient

7    under Rule 8 for purposes of identifying the scope of the representative class Plaintiffs seek to

8    represent." *Id*. at 23-24.

9         In their Opposition, Plaintiffs reject all four of Defendants' arguments.  First, they contend

10   the FACC provides sufficiently detailed allegations as to the alleged wrongful conduct to give

11   each of the Defendants adequate notice under Rule 8 of the Federal Rules of Civil Procedure.

12   Opposition at 3, 4-6.   In particular, according to Plaintiffs the FACC includes adequate

13   allegations to give Defendants notice of who Plaintiffs allegedly work for, who the named

14   Plaintiffs seek to represent, and the conduct attributable to Exel Direct as opposed to the other

15   retail Defendants.  To the extent Paragraph 76 of the FACC, defining the class Plaintiffs

16   purportedly represent, does not expressly limit the class to drivers in California, Plaintiffs clarify

17   they are only seeking to represent drivers in California.  *Id*. at 5.

18        Second, Plaintiffs contend  there is a private right of action on Claims Six, Seven, Eight

19   and Thirteen under Cal. Labor Code § 218, which Plaintiffs assert provides for a private right of

20   action to enforce the wage provisions of the Labor Code, including the provisions at issue in these

21   claims.  *Id*. at 3, 7-11.

22        Third, Plaintiffs argue their PAGA claim is adequately alleged because it is a law

23   enforcement action in which the plaintiffs stand in the shoes of the State of California.  *Id*. at 3,

24   12-15.  As such, Plaintiffs argue, they are not required to meet the requirements of Rule 23.  *Id*.

25        Fourth, Plaintiffs reject Defendants' assertion that the meal and rest period claims are

26   preempted by the FAAAA.  *Id*. at 3, 15-24. Plaintiffs argue that the Court should follow the line of

27

28   and therefore that PAGA claims do not trigger federal jurisdiction under the Class Action Fairness
     Act.  --- F.3d ----, 2014 WL 983587 (9th Cir., Mar. 13, 2014).

United States District Court
Northern District of California

1    cases finding that there is no such preemption. *Id.*

2    **III.    ANALYSIS**

3        **A.  Legal Standard on Motion to Dismiss**

4        A complaint may be dismissed for failure to state a claim for which relief can be granted

5    under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The

6    purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

7    complaint."  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a

8    plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) of the Federal Rules of Civil

9    Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short

10   and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

11   8(a).

12        In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes

13   "all allegations of material fact as true and construe[s] them in the light most favorable to the non-

14   moving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  Dismissal

15   may be based on a lack of a cognizable legal theory or on the absence of facts that would support a

16   valid theory.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  A complaint

17   must "contain either direct or inferential allegations respecting all the material elements necessary

18   to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

19   562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

20   "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

21   cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550

22   U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further

23   factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

24

25        **B.  Whether All of Plaintiffs' Claims Fail Because Allegations Regarding Individual
            Defendants are Insufficient**

26   Defendants contend Plaintiffs' allegations are insufficient under Rule 8 and Rule 10(b)[4] of

27

28   _____

     [4] Rule 10(b) requires, in relevant part, that "[a] party must state its claims or defenses in numbered

United States District Court
Northern District of California

United States District Court
Northern District of California

1    the Federal Rules of Civil Procedure because they do not differentiate between the individual

2    Defendants.  The Court disagrees.

3          To satisfy Rule 8(a)(2), a plaintiff must allege the basis of his claim against each

4    Defendant.  *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).  Where numerous

5    defendants are "lumped together" without explanation, a plaintiff's allegations may be inadequate.

6    *See Vasquez v. Bank of America , N.A.*,  2013 WL 6001924, at *5 (N.D. Cal. Nov. 12, 2013)

7    (citing *Gauvin*, 672 F. Supp. at 1071).  For example, in *Arikat v. JP Morgan Chase & Co.*, cited

8    by Exel, the court held that claims for credit libel, slander and libel per se that were alleged

9    generally as to multiple defendants were subject to dismissal because the allegations "did not

10   identify the particular libelous statements made, who made the statements, or the falsity of any

11   statements made."  2006 WL 3086702, at *2 (N.D. Cal., October 30, 2006).  Similarly, in *Magluta*

12   *v. Samples*, also cited by Exel, the plaintiff brought a *Bivens* action against fourteen individual

13   federal defendants in a fifty-eight page "complaint [that was] replete with allegations that 'the

14   defendants' engaged in certain conduct, making no distinction among the fourteen defendants

15   charged, though geographic and temporal realities [made] plain that all of the defendants could not

16   have participated in every act complained of."  256 F.3d 1282, 1284 (11th Cir. 2001).

17         On the other hand, in *Vasquez*, the court found that claims involving allegedly wrongful

18   foreclosure proceedings asserted against both the loan servicer and the owner of the loan were

19   adequately alleged, even though all of the plaintiff's claims were alleged generally against both

20   defendants without differentiating between their conduct.  2013 WL 6001924, at *6.  Further, the

21   court rejected the defendant's assertion that the plaintiff should have alleged specific facts to

22   establish that both defendants were liable under a theory of agency.  *Id.*   The court found that in

23   light of the allegation that one defendant was the loan servicer and the other was the loan owner, it

24   was "plausible to infer from the facts of the FAC that Defendants could be liable for the

25   foreclosure, contractual and UCL claims that Plaintiff brings against both Defendants."  *Id.*  The

26   court concluded that the defendants were "reasonably on notice of the claims against them [and]

27

28   paragraphs, each limited as far as practicable to a single set of circumstances."  Fed.R.Civ. P.
     10(b).

1    [t]hat is all Rule 8 requires." *Id*.

2        Here, the allegations provide sufficient notice to all of the Defendants as to the nature of

3    the claims being asserted against them, including who Plaintiffs purportedly represent and what

4    conduct is at issue.  On the first question, Plaintiffs allege they and the other class members are

5    individuals who have provided delivery services for Exel Direct in California while being

6    classified as independent contractors during the applicable liability period.  FACC at ¶¶1, 76.

7    Plaintiffs also allege that each individual Retail defendant engages Defendant Exel Direct in the

8    delivery of its products purchased in California.  FACC ¶¶ 14-22.   Considered together, these

9    allegations make clear that Plaintiffs are representing drivers who work for Exel Direct in

10   California, including those drivers who provided delivery service for Exel's retail customers.  It is

11   also clear from the allegations in the FACC that Plaintiffs do not seek to represent drivers who

12   work for the retail Defendants but do not work for Exel Direct.

13       With respect to the conduct, Plaintiffs have alleged specific facts about the policies that are

14   the subject of their claims.  *See* FACC ¶¶ 25-75.  Plaintiffs have further alleged that they are

15   subject to "a standardized set of policies and procedures implemented by Defendants Exel Direct

16   and/or jointly by Defendants Exel Direct and [the respective retail defendant]," that these common

17   policies "control the manner and means by which the Drivers perform their work," and that this is

18   the basis of the employer and/or joint employer relationship.  FACC at ¶¶14-22.  Plaintiffs further

19   allege that each of the retail Defendants "engages Defendant Exel Direct in the delivery of

20   products purchased in the [retailer's] stores in California, in accordance with a standardized set of

21   policies and procedures implemented by Defendants Exel Direct, and/or jointly by Defendants

22   Exel Direct and [the retail Defendant]." *Id*.  These allegations are sufficient to put all of the

23   Defendants on notice of the conduct that is the basis of Plaintiffs' claims.

24       The Court notes that whether Exel Direct is, in fact, a joint employer with each of the retail

25   Defendants is a question that will be the subject of discovery and may be addressed on the merits

26   at a later stage of the case.  At this early stage of the case, however, Plaintiffs' allegations – like

27   the allegations in *Vasquez* – are sufficient to meet the pleading requirements of Rules 8 and 10(b)

28   of the Federal Rules of Civil Procedure.

United States District Court
Northern District of California

### C.   Whether Meal and Rest Break Claims are Preempted by the FAAAA

Defendants assert that the FAAAA expressly preempts Plaintiffs' meal and rest break claims under Cal. Labor Code §§ 226.7 and 512 and Cal. Code Regs., Title 8, § 11090.[5]  For the reasons stated below, the Court finds that Defendants have not established, at least at the pleading stage of the case, that Plaintiffs' state law meal and rest break claims are preempted by the FAAAA.[6]

### 1.   History of the FAAAA

The FAAAA was enacted by Congress in 1994 as part of an ongoing effort to deregulate the interstate trucking industry.  Pub.L. No. 103–305, 108 Stat. 1569 (codified as amended in scattered sections of 49 U.S.C.); see also Motor Carrier Act of 1980, Pub.L. No. 96–296, 94 Stat. 793 (codified as amended in scattered sections of Title 49 of the U.S. Code).  One of Congress's goals in enacting the FAAAA was to bring greater uniformity to state regulation of motor carriers. *Californians for Safe and Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir. 1998) (quoting H.R. Conf. Rep. No. 103–677 (1994), at 86-88, *reprinted in* U.S.C.C.A.N. 1715, 1758-60).  Congress also sought to "even the playing field" between air carriers and motor carriers.  *Id.* (quoting H.R. Conf. Rep. No. 103–677 (1994), *reprinted in* 1994 U.S.C.C.A.N. at 1757, 1759). In *Mendonca*, the Ninth Circuit explained:

> This imbalance arose out of this court's decision in *Federal Express Corp. v. California Pub. Utils. Comm'n*, 936 F.2d 1075 (9th Cir.1991). By holding that Federal Express fit within the [Airline Deregulation Act's] definition of "air carrier," this court concluded that California's intrastate economic regulations of the carrier's shipping activities were preempted. As a result, air-based shippers gained a sizeable advantage over their more regulated, ground-based shipping competitors. By preempting the states' authority to regulate motor carriers, Congress sought to balance the regulatory "inequity"

---

[5] Under Cal. Labor Code § 226.7, employers may not require employees to work through any meal or rest break mandated by an order of the Industrial Welfare Commission ("IWC").  The transportation industry is covered by an IWC order codified at 8 C.C.R. § 11090.  Section 11090(11) addresses meal periods and tracks the requirements of California Labor Code § 512(a).  Section 11090(12) addresses rest periods.  Section 11090(2) establishes civil penalties for violations of these provisions.  In addition, Cal. Labor Code § 226.7 provides that employees are entitled to an additional hour of compensation if a required meal or rest period is not provided.

[6] As discussed below, to the extent that Defendants may be able to establish that the FAAAA preempts Plaintiffs' meal and rest break claims based on evidence obtained in discovery, the Court's ruling is without prejudice to Defendants' raising the preemption question at a later stage of the case.

1    produced by the ADA's preemption of the states' authority to
     regulate air carriers. See H.R. Conf. Rep. No. 103–677, at 87 (1994),
2    reprinted in 1994 U.S.C.C.A.N. at 1759.

3    *Id*. at 1187.

4         Thus, in the FAAAA, Congress included a preemption clause that was identical to the

5    preemption provision in the Airline Deregulation Act ("ADA").   H.R. Conf. Rep. No. 103–677

6    (1994),  *reprinted in*  1994 U.S.C.C.A.N. at 1757 ("The preemption provision . . . is identical to

7    the preemption provision deregulating air carriers . . . and is intended to function in the exact same

8    manner with respect to its preemptive effect").   The FAAAA preemption clause provides, in

9    relevant part, as follows:

10        [A] State, political subdivision of a State, or political authority of 2
          or more States may not enact or enforce a law, regulation, or other
11        provision having the force and effect of law related to a price, route,
          or service of any motor carrier (other than a carrier affiliated with a
12        direct air carrier . . . ) or any motor private carrier, broker, or freight
          forwarder with respect to the transportation of property.
13

14   49 U.S.C. § 14501(c)(1).   The House Conference Report for the FAAAA described the

15   background and purpose of the bill as follows:

16        Currently, 41 jurisdictions regulate, in varying degrees, intrastate
          prices, routes and services of motor carriers.   The jurisdictions
17        which do not regulate are:  Alaska, Arizona, Delaware, District of
          Columbia, Florida, Maine, Maryland, New Jersey, Vermont and
18        Wisconsin. Typical forms of regulation include entry controls, tariff
          filing and price regulation, and types of commodities carried.  Not
19        all 41 States regulate each of these aspects nor do they all regulate
          them in the same manner or to the same degree.  . . . The need for
20        [the FAAAA] has arisen from this patchwork of regulation . . . .

21   H.R. Conf. Rep. No. 103–677 (1994), *reprinted in* 1994 U.S.C.C.A.N. at 1758.  The report went

22   on to explain that the Ninth Circuit's decision in *Federal Express Corp. v. California Pub. Utils.*

23   *Comm'n*, 936 F.2d 1075 (9th Cir.1991), had led to further inequity, as discussed in the *Mendonco*

24   passage quoted above.  *Id*.

25        **2.  Legal Background Relating to FAAAA Preemption**

26        In *American Trucking Ass'n v. City of Los Angeles* ("*ATA V*"), the Ninth Circuit articulated

27   a three-step approach for determining whether § 14501(c)(1) preempts state laws and regulations:

28        In determining whether § 14501(c)(1) of the FAAA Act preempts

     11

1      State action, we ask three questions. First, we must consider whether
2  the provision "relate[s] to a price, route, or service of a motor
   carrier." . . . If the answer is no, the provision does not fall within
   the preemptive scope of § 14501(c)(1). If the answer is yes, we must
3  consider whether the provision "has the force and effect of law" –
   that is, whether the provision was enacted pursuant to the State's
4  regulation of the market, rather than the State's participation in the
   market in a proprietary capacity. 49 U.S.C. § 14501(c)(1) . . . If the
5  provision does not fall within the market participant doctrine and
   relates to rates, routes, or services, we turn to the third inquiry and
6  consider whether any of the FAAA Act's express exemptions save
   the regulation from preemption.  As relevant here, the FAAA Act
7  does not "restrict the safety regulatory authority of a State with
   respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A) . . . .

8  660 F.3d 384, 395-96 (9th Cir. 2011) (citing, *inter alia*, *Rowe v. N.H. Motor Transp. Ass'n*, 552

9  U.S. 364 (2008)), *rev'd on other grounds*, 133 S.Ct. 2096 (2013).

10      To determine whether the state action "relates to a price, route, or service of a motor

11  carrier," the court in *ATA V* explained, courts must "examine the actual or likely effect of a State's

12  action."  *Id.*  (citing *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr. NA, Inc*.,

13  519 U.S. 316, 325 (1997); *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,

14  152 F.3d 1184, 1189 (9th Cir.1998)).  In some situations, the effect  of a law or regulation on

15  prices, routes or services is clear, such as, for example, "[i]f the State . . . mandates that motor

16  carriers provide a particular service to customers, or forbids them to serve certain potential

17  customers."  *Id.*  However, the court in *ATA V* recognized that the FAAAA may preempt state law

18  "'even if a [S]tate law's effect on rates, routes, and services "is only indirect."'"  *Id.* (quoting

19  *Rowe*, 552 U.S. at 370 (quoting *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 386 (1992)

20  (holding that the preemption clause of the Airline Deregulation Act has a "broad scope")).  In

21  these "borderline" cases, "the proper inquiry is whether the provision, directly or indirectly, 'binds

22  the . . . carrier to a particular price, route or service and thereby interferes with competitive market

23  forces within the . . . industry.'"  *Id.* at 397 (quoting *Air Transport Ass'n of Am. v. City & Cnty. of*

24  *San Francisco*, 266 F.3d 1064, 1072 (9th Cir. 2001)).

25      The Ninth Circuit's approach was based, in part, on the Supreme Court's decision in *Rowe*

26  *v. New Hampshire Motor Transport Ass'n* , 552 U.S. 364 (2008).  In *Rowe*, the Supreme Court

27  addressed whether the FAAAA preempted a Maine law prohibiting "licensed tobacco retailers

28  [from] employ[ing] a 'delivery service' unless that service follows particular delivery procedures."

United States District Court
Northern District of California

552 U.S. at 371.  The state scheme also imposed civil penalties on carriers that did not comply with the law and presumed that carriers were aware that they were transporting tobacco products if the shipping boxes carried certain labels.  *Id*.   The Supreme Court found that the state regulations were preempted by the FAAAA because they focused on "trucking and other motor carrier services" and because the law would require carriers to offer services that the market did not already provide and would "freeze into place services that carriers might prefer to discontinue in the future." *Id*. at 372.   In short, the Court in *Rowe* concluded, the Maine law was preempted because "the state law is not general, it does not affect truckers solely in their capacity as members of the general public, the impact is significant, and the connection with trucking is not tenuous, remote, or peripheral." *Id*. at 375.

In *ATA V*, the court also cited its earlier decision in *Californians for Safe and Competitive Dump Truck Transportation v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir.  1998).  In that case, the court addressed whether California's Prevailing Wage Law ("CPWL"), which requires contractors and subcontractors working on public works projects  pay their workers the prevailing wage, was preempted by the FAAAA. 152 F.3d at 1185.  The court started its analysis "with the assumption that state laws dealing with matters traditionally within a state's police powers are not to be preempted unless Congress's intent to do so is clear and manifest."  *Id*. at 1186 (citing *Rice v. Santa Fe Elevator Corp*., 331 U.S. 218, 230 (1947)). The court found that this presumption applied because "the CPWL [was] an example of state action in a field long regulated by the states."  *Id*. at 1187 (citing *California Div. of Labor Standards Enforcement v. Dillingham Constr., Inc*., 519 U.S. 316 (1997)).

The court in *Mendonca* then turned to the question of Congress's intent in enacting the FAAAA.  *Id*.  Because the text of the statute provided little guidance, the court looked to the legislative history.  *Id*. at 1187-1188.  As discussed above, the Court found that the FAAAA was enacted to ensure greater uniformity in the motor carrier industry and level the playing field with air carriers.  *Id* at 1187.  The court found it "revealing" that Congress identified 41 jurisdictions that regulated intrastate prices, routes and services and 10 which did not regulate in these areas –– but seven out of the ten states in the latter category had prevailing wage laws "substantially

similar" to the CPWL.  *Id.*  The court found that this portion of the legislative history was "indirect evidence that Congress did not intend to preempt the CPWL."  *Id.* at 1188.  The court also found that "[t]his perception [was] reinforced by the absence of any *positive* indication in the legislative history that Congress intended preemption in this area of traditional state power."  *Id.*

Finally, the *Mendonca* court reviewed several recently decided Supreme Court cases addressing  preemption  by the Airlines Deregulation Act and ERISA, finding that "these cases instruct that state regulation in an area of traditional state power having no more than an indirect, remote, or tenuous effect on a motor carrier's prices, routes, and services are not preempted."  *Id.* (discussing *Morales v. Trans World Airlines, Inc*., 504 U.S. 374 (1992), *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995), *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645 (1995) and *California Div. of Labor Standards Enforcement v. Dillingham Construction, N.A., Inc.*, 519 U.S. 316 (1997)).  In discussing the *Dillingham* case, in which the Court addressed the question of whether the CPWL was preempted by ERISA, the *Mendonca* court noted that the Supreme Court expressly rejected the argument that the CPWL was preempted because it increased the costs of providing certain benefits, thereby affecting the choices made by ERISA plans, finding that the connection was too tenuous.  *Id.* at 1188.  The court in *Mendonca* stated that this conclusion was based on the Supreme Court's consideration of both the objectives of the ERISA statute and the nature of the effect of the state law on ERISA plans.  *Id.* at 1189.  The court also pointed to Judge Scalia's opinion in the concurrence to *Dillingham* that the "related to" requirement was not meant to set forth a test for preemption – as "everything is related to everything else," – but rather, to "identify the field in which ordinary field preemption applies."  *Id.*  (citing *Dilllingham*, 519 U.S. at 843 (Scalia, J. concurring))

The court in *Mendonca* went on to reject the plaintiff's argument that the FAAAA preempted the CPWL because it "increase[d] its prices by 25%, cause[d] it to utilize independent owner-operators, and compel[led] it to re-direct and re-route equipment to compensate for lost revenue."  *Id.* at 1189.   Against the "backdrop" of the cases discussed above, the court found that the CPWL did not "frustrate the purpose of deregulation by *acutely* interfering with the forces of competition."  *Id.*  (citation omitted) (emphasis in original).  Rather, the court found that the effect

1    of the law on prices, routes and services was "no more than indirect, remote, and tenuous." *Id.*

2    The court further noted that there was no indication that Congress intended to occupy the field of

3    general prevailing wage laws and therefore, under the field preemption doctrine cited by Justice

4    Scalia in *Dillingham*, the FAAAA did not preempt the CPWL. *Id.*

### 3.  Split of Authority in Federal District Courts

6           There is a split of authority among district courts that have addressed the question of

7    FAAAA preemption as it relates to California's meal and rest break requirements.   In this district,

8    two judges have found on a Rule 12(b)(6) motion that the FAAAA does not preempt California's

9    meal and rest break laws in purported class actions brought by truck drivers against their

10   employers.  *See Mendez v. R + L Carriers, Inc.*, 2012 WL 5868973 (N.D.Cal., Nov.19, 2012)

11   (Wilken, J.); *Brown v. Wal-Mart Stores, Inc.*, 2013 WL 1701581 (N.D.Cal., April 18, 2013)

12   (Illston, J.); *see also Dunbar Armored, Inc. v. Rea*, Case No. 3:04-cv-00602-WQH-WMC (S.D.

13   Cal. July 8, 2004) (ruling on a motion to dismiss that meal and rest break claims asserted under

14   Wage Order 9 were not preempted under FAAAA).

15           Some district courts have treated the question of FAAAA preemption of meal and rest

16   break claims as one involving fact questions that may not be resolved on a Rule 12(b)(6) motion.

17   *See Cardenas v. McLane FoodServices, Inc.*, 796 F.Supp.2d 1246 (C.D.Cal., 2011) (denying

18   motion for summary judgment as to meal and rest break claims based on FAAAA preemption on

19   ground that there was a genuine issue of material fact as to whether compliance with California

20   meal and rest break laws had an impact on motor carrier's prices, services and routes); *Reinhardt*

21   *v. Gemini Motor Transport*, 869 F.Supp.2d 1158 (E.D.Cal., 2012) (declining to decide FAAAA

22   preemption question on a motion to dismiss and noting that "[t]he differing results of [*Dunbar*

23   *Armored*, *Dilts*, and *Cardenas*] illustrate the potential importance of evidence beyond the

24   allegations of a complaint in determining FAAAA preemption "); *see also Chowdhury v.*

25   *Northwest Airlines Corp.*, 238 F.Supp.2d 1153, 1157 (N.D.Cal., 2002) (declining to decide

26   whether state law claim was preempted by the Airline Deregulation Act before discovery had been

27   conducted and quoting the following language from *The Colorado Anti–Discrimination*

28   *Commission v. Continental Air Lines, Inc.*, 372 U.S. 714, 719  (1963):"The line separating the

United States District Court
Northern District of California

15

1   powers of a State from the exclusive power of Congress is not always distinctly marked; courts

2   must examine closely the facts of each case to determine whether the dangers and hardships of

3   diverse regulation justify foreclosing a State from the exercise of its traditional powers.") .

4           Finally, a number of other district courts have concluded – either on motions to dismiss

5   based solely on the pleadings or on summary judgment but without reliance on specific evidence

6   about the actual impact of meal and rest break requirements on the transportation industry – that

7   California's meal and rest break requirements, as stated in Wage Order 9, are preempted by the

8   FAAAA.  *See Dilts v. Penske Logistics LLC,* 819 F.Supp.2d 1109 (S.D.Cal. 2011); *Esquivel v.*

9   *Vistar Corp*., 2012 WL 516094 (C.D. Cal. Feb. 8, 2012); *Aguiar v. California Sierra Exp., Inc*.,

10  2012 WL 1593202 (E.D.Cal., May 4, 2012);  *Campbell v. Vitran Express, Inc.*, 2012 WL 2317233

11  (C.D.Cal. Jun. 8, 2012);  *Jasper v. C.R. England, Inc*., 2012 WL 7051321 (C.D.Cal., Aug. 30,

12  2012);  *Cole v. CRST, Inc.*, 2012 WL 4479237 (C.D.Cal., Sept. 27, 2012);  *Aguirre v. Genesis*

13  *Logistics*, 2012 U.S. Dist. LEXIS 186132 (C.D.Cal. Nov. 5, 2012);  *Ortega v. J.B. Hunt*

14  *Transport, Inc*., 2013 WL 5933889 (C.D.Cal., Oct. 2, 2013); *Burnham v. Ruan Trans*, 2013 WL

15  4564496 (C.D.Cal., Aug. 16, 2013); *Burnell v. Swift Transp. Co., Inc.*, Case No. 5:10-cv-00809-

16  VAP-OP (C.D. Cal. May 29, 2013).[7]

17          In *Dilts*, the district court for the Southern District of California found that meal and rest

18  break claims asserted under California law were preempted by the FAAAA. 819 F. Supp. 2d  at

19  1124-1125.  That case involved a class of appliance delivery drivers and installers who provided

20  services to appliance manufacturer Whirlpool under a contract between Whirlpool and the

21  plaintiffs' employer, Penske Logistics LLC ("Penske").  *Id*. at 1111.  The plaintiffs asserted

22  Penske failed to provide meal and rest breaks required by California law.  *Id*.  On a motion for

23  summary judgment, the court found those claims were preempted under the FAAAA because

24  California's meal and rest break requirements would affect routes, services *and* prices of motor

25  carriers.  *Id*. at 1118-1120.

26          With respect to routes, the court in *Dilts* reasoned that California's "fairly rigid meal and

27

28  _____

    [7] *Dilts* and *Campbell* are on appeal and the Ninth Circuit heard oral arguments on March 3, 2014.
    *See* Ninth Circuit Case Nos. 12-55705 and 12-56250.

*United States District Court*
*Northern District of California*

break requirements" are "directly and significantly related to such things as the frequency and scheduling of transportation" and that by binding the defendant "to a schedule and frequency of routes that ensures many off-duty breaks at specific times throughout the workday[,]" enforcement of these laws would "interfere with competitive market forces within . . .the industry." *Id.* at 1118-1119. The court acknowledged that the rest and meal requirements "do not strictly bind Penske's drivers *to* one particular route" but found that these requirements "have the same effect by depriving them of the ability to take any route that does not offer adequate locations for stopping or by forcing them to take shorter or fewer routes." *Id.* at 1118.

With respect to services, the court pointed to the undisputed fact that individual drivers would not be able to complete as many deliveries if meal and rest breaks were part of their schedules. *Id.* at 1119. Therefore, the court reasoned, the imposition of meal and rest break requirements would "reduce the amount and level of service Penske can offer its customers without increasing its workforce and investment in equipment." *Id.* The court went on to find that the impact of California's meal and rest break requirements on routes and services "all contribute to a significant impact upon prices." *Id.*

The court in *Dilts* found that *Mendonca* and *Dillingham* were distinguishable. As to *Dillingham*, in which the Supreme Court found that the CPWL was not preempted by ERISA, the court noted that the objectives of ERISA are distinct from those of the FAAAA. *Id.* at 1121. The court distinguished *Mendonca* on the basis that meal and rest break laws "do not require the payment of a higher wage" but "[i]nstead, they establish requirements which substantively impact a motor carrier's routes and services." *Id.*; *see also Esquivel*, 2012 WL 516094, at *5 (C.D. Cal. Feb. 8, 2012) (relying on reasoning of *Dilts* to conclude that "*Mendonca* and other prevailing wage cases are fundamentally distinguishable from those involving meal and rest break laws for purposes of FAAAA preemption").

In *Campbell v. Vitran Express*, the district court for the Central District of California reached a similar conclusion on a Rule 12(b)(6) motion, finding that the FAAAA preempted California meal and rest break requirements in a case involving city truck drivers employed by Vitran Express, a delivery truck company.   2012 WL 2317233, at *1 (C.D.Cal., June 8, 2012).  In

*Campbell*, the court noted that even though the California Supreme Court had recently  (and subsequent to the *Dilts* decision) clarified that there is some flexibility as to the application of California meal  and rest break requirements, those requirements nevertheless related to the prices, services and routes offered by the Defendant.  *Id*. at *4.  The court reasoned, "[w]hen employees must stop and take breaks, it takes longer to drive the same distance and companies may only use routes that are amenable to the logistical requirements of scheduled breaks."  *Id*. (citing *Dilts*, 819 F. Supp. 2d at 1119;  *Esquivel v. Vistar Corp*.,  2012 WL 516094, at *5).

In this district, two courts have reached the opposite conclusion.  In *Mendez v. R + L Carriers, Inc*., Judge Wilken found that *Dilts* and its progeny "offer only limited guidance . . . because none of them recognizes the full flexibility that California meal and rest break laws offer employers."  2012 WL 5868973, at *6 (N.D.Cal., Nov.19, 2012).  As an example of this flexibility, the court pointed to Cal. Labor Code § 226.7, finding that it allowed an employer to comply with rest break requirements "by simply paying its employees an additional hour of wages."  *Id*.  The court also  pointed to flexibility in California law as to meal breaks, noting that Cal. Labor Code § 512(a) allows for partial waiver of that requirement at an employee's discretion and pointing to regulations allowing for on-duty meals when off-duty meal periods are infeasible and the employee consents.  *Id*. (citing Cal. Code Regs., Title 8, § 11090(11)(C)).   The court concluded, on a Rule 12(b)(6) motion, that "[i]n light of this flexibility, it is unlikely that California's meal and rest break provisions would rigidly 'bind' motor carriers to particular rates, routes and services."  *Id*. at *7.  Consequently, the court found that these provisions were not preempted by the FAAAA. The court in *Brown v. Wal-Mart Stores, Inc*., 2013 WL 1701581 (N.D.Cal., April 18, 2013) reached the same conclusion, finding the reasoning of *Mendez* to be persuasive.

### 4.  Whether the FAAAA Preempts California Meal and Rest Break Requirements

Defendants assert that the pleadings alone are sufficient to establish FAAAA preemption of Plaintiffs' meal and rest break claims, pointing to Plaintiffs' allegations that the long hours they are required to work and the delivery windows mandated in their routes do not permit them to take

United States District Court
Northern District of California

meal and rest breaks as required under California law.  See Motion at 13 (citing FACC ¶¶ 120, 127).  According to Defendants, these allegations constitute judicial admissions that Plaintiffs are asking the Court to order that Exel alter its routes and services in order to comply with California's meal and rest break laws.  *Id*. at 13-14.  Defendants further contend that the effects of these requirements on services and routes would, as in *Dilt*, have ramifications for prices.  *Id*. at 15.  Therefore, Defendants assert, the meal and rest break requirements that are at issue in this case "relate to a price, route, or service of a motor carrier" within the meaning of the FAAAA preemption clause as a matter of law.[8]  Defendants further assert that to the extent the FAAAA preempts state laws related to the prices, routes and services of *any* motor carrier, this Court should find preemption as to Exel because other district courts have already found that these requirements are preempted as to motor carriers "like Penske Logistics, Vistar, JB Hunt, C.R. England, CRST, Vitran Express, Genesis Logistics, Ruan Transport, and California Sierra Express."  *Id*. at 12.  Were this Court to reach a different conclusion on the preemption question, Defendants contend, "absurd results would follow."  *Id*.  For the reasons stated below, the Court finds Defendants' position unpersuasive.

The FAAAA preemption clause was intended to have a broad scope.  *See Morales v. TWA*, 505 U.S. 374, 383-384 (1992)(addressing identical preemption provision in Airline Deregulation Act).  It reaches beyond state requirements that expressly regulate prices, routes or services to preempt even laws that are "related" to them.  *Id*.  Nonetheless, it does not preempt state requirements that have only a "tenuous, remote, or peripheral" relationship to prices, routes, or services.  *Id*. at 390.  Further, the Ninth Circuit in *Mendonca*, following the Supreme Court's decision in *Rice v. Santa Fe Elevator Corp*., instructed that the preemption inquiry must be conducted in a manner that is consistent with the assumption "that state laws dealing with matters

---

[8] Although *ATA V* sets forth a three-step inquiry to determine whether a state requirement is preempted by the FAAAA, Plaintiffs do not assert that the meal and rest break requirements are governed by the market participant doctrine or that any express exemption from the preemption clause applies.  As a result, the question of FAAAA preemption, as framed by the parties for the purposes of the instant motion, turns only on the first step of the inquiry, that is, the determination of whether the state requirements "relate to a price, route, or service of a motor carrier" within the meaning of the FAAAA preemption clause.

traditionally within a state's police powers are not to preempted unless Congress's intent to do so is clear and manifest."  152 F.3d at 1186.

The meal and rest break claims at issue in this case, like the wage claims in *Mendonca*, fall squarely within the traditional area of the state's police powers.  In *Murphy v. Kenneth Cole Productions, Inc.*, the court noted that "[m]eal and rest periods have long been viewed as part of the remedial worker protection framework."  40 Cal.4th 1094, 1105 (2007).  According to the *Murphy* court, "[c]oncerned with the health and welfare of employees, the IWC issued wage orders mandating the provision of meal and rest periods in 1916 and 1932, respectively."  *Id.* Thus, although the meal and rest break requirements at issue in this case are not wage laws, the "backdrop" of the Court's preemption inquiry, as in *Mendonca*, is the assumption that California's meal and rest break laws are not preempted by the FAAAA unless Congress's intent to preempt them is clear and manifest.

To determine whether the meal and rest break requirements are preempted based on the allegations of this case, the Court next looks to the language and legislative history of the FAAAA to determine whether Congress displayed a clear and manifest intent to preempt such laws.  The language of the FAAAA's preemption clause does not provide any specific guidance as to Congress's intent on this issue.   Nor does the Court finds any express reference to meal and rest break laws in the legislative history that reveals Congress's intent.  The Court notes, however, that two of the jurisdictions described in the legislative history as jurisdictions that did not regulate prices, routes and services of motor carriers – Delaware and Maine – had meal and rest break laws in 1994, when the FAAAA was enacted.  *See* H.R. Conf. Rep. No. 103–677 (1994), *reprinted in* 1994 U.S.C.C.A.N. at 1758 (listing unregulated jurisdictions);  Del. Code Ann. tit. 19 § 707;  Me. Rev. Stat. tit. 26, § 601.  As the court found in *Mendonca* with respect to wage laws, this is "indirect evidence" that Congress did *not* intend to preempt meal and rest break laws.  On the other hand, one of the primary purposes of the FAAAA was to reduce the "patchwork of regulation" to allow motor carriers to "compete more efficiently."  H.R. Conf. Rep. No. 103–677 (1994), reprinted in 1994 U.S.C.C.A.N. at 1758, 1760.  Thus, as the Ninth Circuit instructed in *ATA V*, the Court must look to the "actual or likely effect" of the meal and rest break requirements

on the motor carrier industry.[9]

As discussed above, Exel contends Plaintiffs' claims are related to services (and by implication, prices as well) based on the theory that if the available hours of each individual employee are diminished, the amount of service the carrier can provide also diminishes.   The Court is not persuaded, however, that such an impact is the sort that is likely to "binds the . . . carrier to a particular  . . . service."   *See ATA V,* 660 F.3d at 397. As the court in *Dilts* implicitly recognized, the reduction in the number of hours an individual driver is available to make deliveries each day will only result in a reduction in services if the carrier chooses not to increase its workforce and equipment to compensate for that lost work time.  *See* 819 F. Supp. 2d at 1119. Consequently, the meal and rest break requirements, like the CPWL at issue in *Mendonca*, simply increase the *cost* to employers of providing services; they do not bind motor carriers to providing certain types of services.  In the context of laws of general applicability that are in an area traditionally  within the state's police powers, both the Supreme Court and the Ninth Circuit have found such impacts on costs to be "tenuous."  *See Dillingham*, 519 U.S. at 842 ("We could not hold pre-empted a state law in an area of traditional state regulation based on so tenuous a relation without doing grave violence to our presumption that Congress intended nothing of the sort"); *Mendonca*, 152 F.3d at 1189 (holding that CPWL had only indirect, remote or tenuous effect on prices, routes and services even though it would result in 25% increase in prices).

Courts in other jurisdictions have reached similar conclusions.  For example, in a case involving state bribery and racketeering laws, the Seventh Circuit reasoned as follows:

> [L]abor inputs are affected by a network of labor laws, including minimum wage laws, worker-safety laws, anti-discrimination laws, and pension regulations. Capital is regulated by banking laws, securities rules, and tax laws, among others. Technology is heavily influenced by intellectual property laws. Changes to these

---

[9] At oral argument, Plaintiffs' counsel suggested that this inquiry focuses on the impact of the requirements on the company as a whole rather than on individual employees.  Defendants' brief indicates that the inquiry should be aimed at the entire transportation industry in order to avoid the "absurd result" that some trucking companies operating in California are required to provide meal and rest breaks under Wage Order 9 while others are not.   The Court finds that the allegations in this case are insufficient to establish preemption  regardless of which approach is taken and therefore need not resolve this question at this stage of the case.  If Defendants raise the issue of FAAAA preemption at summary judgment, however, the Court may need to decide this question.

United States District Court
Northern District of California

1

2

3

4

> background laws will ultimately affect the costs of these inputs, and thus, in turn, the "price ... or service" of the outputs. Yet no one thinks that the ADA or the FAAAA preempts these and the many comparable state laws, see, e.g., *Californians For Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1189 (9th Cir.1998) (minimum wage laws not preempted), because their effect on price is too "remote."

5   *S.C. Johnson & Son, Inc. v. Transport Corp. of America, Inc*., 697 F.3d 544, 558 (7th Cir. 2012).

6   Similarly, in *Massachusetts Delivery Association v. Coakley*, 2013 WL 5441726, at *8 (D. Mass.

7   Sept. 26, 2013), the court noted that judges in the district had "expressed skepticism" about

8   FAAAA preemption claims seeking to invalidate state wage and hour laws.  The court continued,

9   "[p]ut simply, in drafting the FAAAA, Congress did not draft a blank check to the trucking

10   industry protecting it from any state regulation that increases the cost of doing business." *Id*.

11   　　　The Court also is not persuaded by Defendants' assertion that meal and rest break

12   requirements are related to routes because of the need to find appropriate places for drivers to stop

13   their trucks to take breaks.  There is simply nothing in Plaintiffs' allegations that allows the Court

14   to conclude, as a matter of law, that the meal and rest breaks that are mandated under California

15   law would be likely to require Exel (or motor carriers generally) to change their routes.  The

16   Complaint contains no allegations regarding the size of the trucks driven by Plaintiffs, the

17   frequency of deliveries or the types of locations that would be required in order to safely park a

18   delivery truck.  Further, California's meal and rest break requirements offer employers significant

19   flexibility.   Under the IWC's Wage Order 9, employers are required only to provide a meal period

20   of 30 minutes by the fifth and tenth hours of work, and a rest period of 10 minutes for every four

21   hour work period or fraction thereof.  Wage Order 9-2001, ¶ 11-12.   Thus, the requirements

22   specify only broad windows during which breaks must be provided; they do not set specific, rigid

23   guidelines as to when the breaks must be taken.  This point was recently emphasized by the

24   California Supreme Court in *Brinker  Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1031,

25   1036 (2012) (find that the wage order at issue in that case was "sufficiently flexible" as to meal

26   breaks to allow for situations in which off-duty meal periods are not  possible and that as to rest

27   periods, while employers are "subject to a duty to make a good faith effort to authorize and permit

28   rest breaks in the middle of each work period," they may "deviate from that preferred course

United States District Court
Northern District of California

United States District Court
Northern District of California

where practical considerations render it infeasible."). With this flexibility in mind, the Court concludes that nothing in the pleadings establishes that the meal and rest break requirements at issue in this case are likely to bind Defendant to particular routes such that Congress's intent in enacting the FAAAA is implicated.

The Court respectfully disagrees with the reasoning and conclusion of *Dilts* and many of the cases that have followed *Dilts*. First, the *Dilts* line of cases pays little heed to the reasoning and approach of *Mendonca*, much of which this Court finds to be applicable to the question of whether Plaintiffs' California meal and rest break claims are preempted by the FAAAA. Instead, these decisions rely on *Rowe* while dismissing *Mendonca* on the basis that the latter decision addressed a wage law rather than meal and rest break requirements (which are not wage laws). *See*, *e.g.*, *Dilts*, 819 F. Supp. 2d at 1120-1121 (finding *Rowe* and *Morales* supported a finding of preemption while rejecting *Mendonca* on the basis that it addressed a wage law rather than a meal and rest break law). *Rowe*, however, addressed state regulations that were expressly aimed at the trucking industry. *Mendonca*, on the other hand, applied the principals of *Rowe* to a law of general applicability. Because the meal and rest break requirements at issue in this case are also generally applicable to California employers, *Mendonca* is more closely on point than *Rowe* to the specific preemption issues here. Further, to the extent that both wage laws and meal and rest break requirements fall within the state's traditional police powers, the assumption that preemption may be found only upon a showing of clear and manifest intent by Congress is equally applicable in this case as in *Mendonca* and was, arguably, overlooked by *Dilts* and its progeny.

Second, the *Dilts* line of cases overstates the rigidity of state meal and rest break requirements, as discussed above. [10]

---

[10] On this point, the undersigned agrees with Judge Wilken that the *Dilts* line of cases does not "recognize the full flexibility that California's meal and rest break laws offer employers." *Mendez*, 2012 WL 5868973, at *6. The Court recognizes, however, that in light of the California Supreme Court's decision in *Kirby v. Imoos Fire Prot., Inc.*, 53 Cal. 4th 1244 (2012), simply paying an employee for missed rest breaks does not constitute compliance with Cal. Labor Code § 226.7. Therefore, this Court does not rely on the so-called "wage alternative" cited in *Mendez* and *Brown* as an example of the flexibility of California law.

United States District Court
Northern District of California

1    Finally, the Court rejects the *Dilts* court's finding that while meal and rest break laws do

2    not bind drivers to a particular route, "they have the same effect by depriving them of the ability to

3    take any route that does not offer adequate locations for stopping." *See* 819 F. Supp. at 1118.  As

4    a matter of logic, the possibility that some routes may need to be adjusted to permit breaks may

5    *limit* the available routes but that is not the same as binding a driver to a *particular* route.  Nor

6    does the *Dilts* court (or the many courts that have found the reasoning in that case persuasive)

7    point to any specific facts (or factual allegations) that would establish that the need to take breaks

8    would, in fact, necessitate changes in drivers' routes.  Rather, the conclusion appears to be entirely

9    speculative.  Accordingly, the Court declines to follow the reasoning in *Dilts* and similar cases that

10   have found the California meal and rest break claims are preempted by the FAAAA.

### D.  Whether there is a Private Right of Action on Claims Six, Seven, Eight and Thirteen

13   Exel asserts that there is no private right of action as to Claims Six, Seven, Eight and

14   Thirteen and therefore, that these claims should be dismissed with prejudice.  The Court concludes

15   that Exel is correct as to Claims Seven, Eight and Thirteen but rejects its arguments as to Claim

16   Six.

17   The existence of a private right of action depends on whether the Legislature has

18   manifested an intent to create such a right, which is revealed through the language of the relevant

19   statute and its legislative history.  *Lu v. Hawaiian Gardens Casino, Inc.*, 50 Cal. 4th 592, 596-597

20   (2010) (citing *Moradi-Shalal v. Fireman's Fund Ins. Companies*, 46 Cal. 3d 287, 305 (1988)).

21   Courts first look to the language of the statute to see if it contains "clear, understandable,

22   unmistakable terms" that "strongly and directly indicate . . . the Legislature intended to create a

23   private cause of action."  *Id.* (citations and quotations omitted).   If the statute does not contain

24   such "obvious language, resort to its legislative history is next in order."  *Id.* at 597.

25   Cal. Labor Code § 218 indicates that the California Legislature intended to create a private

26   right of action as to at least some of the provisions in Article 1, Sections 200-244 of the Labor

27   Code.  Section 218 provides as follows:

28   Nothing in this article shall limit the authority of the district attorney

24

> of any county or prosecuting attorney of any city to prosecute actions, either civil or criminal, for violations of this article or to enforce the provisions thereof independently and without specific direction of the division. Nothing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due him under this article.

Cal. Labor Code § 218.  "This provision clearly contemplates that wage claimants have a private right of action of some kind, but it is ambiguous as to what wages that private right of action encompasses."  *Kamar v. Radioshack Corp.*, 2008 WL 2229166, at * 7 (C.D. Cal. May 15, 2008).  This ambiguity arises from the fact that *no* provision in Article 1 affirmatively authorizes a civil action.  *Id*.  Nonetheless, other provisions in Article 1 "recognize a *preexisting right* to bring independent civil actions for unpaid wages."  *Id*. (emphasis in original) (citing Cal. Labor Code §§ 218.5 and 218.6, providing for attorneys' fees and costs, and interest, respectively, "[i]n any action brought for the non-payment of wages").

        In recent years, California and district courts have struggled to determine which provisions of Article 1 give rise to a claim for unpaid wages under § 218 such that there can be found a clear legislative intent to allow a private right of action.  They have also addressed whether other sections of the Labor Code that are not contained in Article 1 reflect such an intent.  The Court reviews some of these cases below to gain a better understanding of the factors courts have taken into consideration in evaluating whether the Legislature intended to create a private right of action.

        In *Guess v. U.S. Bancorp*, Judge Fogel, of this Court, held that there is a private right of action on claims under § 226.7[11] for meal and rest break violations.   2007 WL 1345194, at *3 (N.D.Cal., May 8, 2007).  In reaching this conclusion, he relied on the California Supreme Court's

---

[11] Section 226.7(c) provides:

> If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law, including, but not limited to, an applicable statute or applicable regulation, standard, or order of the Industrial Welfare Commission, the Occupational Safety and Health Standards Board, or the Division of Occupational Safety and Health, the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided.

Cal. Labor Code § 226.7(c).

United States District Court
Northern District of California

decision in *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1111 (2007).  In that case, the court recognized that:

> An employee pursuing a wage-related claim has two principal options.  The employee may seek judicial relief by filing an ordinary civil action against the employer for breach of contract and/or for the wages prescribed by statute.  . . .  Or the employee may seek administrative relief by filing a wage claim with the [Labor Commissioner] pursuant to a special statutory scheme codified in sections 98 to 98.8 . . . .

40 Cal.4th at 1115.  The court went on to address whether the payments imposed on employers under Cal. Labor Code § 226.7 for missed meal and rest breaks should be characterized as a penalty or a claim for unpaid wages for the purposes of determining the applicable statute of limitations.  This question is closely related to the question of whether there is a private right of action under § 226.7 as both inquiries focus on legislative intent.  Based on its review of the legislative history, the *Murphy* court concluded that even though one of the purposes of the provision was to provide an incentive for employers to comply with the labor law, its primary purpose was to compensate employees.  *Id.* at 1110-1111.  As such, it held, the remedy on a claim brought under § 226.7 is considered a wage rather than a penalty and therefore, such a claim is subject to a longer statute of limitations.  *Id.*  The court noted that "[t]his conclusion [was] consistent with [its] prior holdings that statutes regulating conditions of employment are to be liberally construed with an eye to protecting employees."  *Id.* at 1111.

In *Guess v. Bancorp*, the court held that *Murphy* implicitly recognized a private right of action under § 226.7 to the extent that there would have been no point in addressing the statute of limitations question if there were no private right of action.  2007 WL 1345194, at *3.  The court went on to find that even apart from the implicit holding, the reasoning of *Murphy* also supported this conclusion, explaining as follows:

> [T]his Court concludes that *Murphy*'s explicit determination that the additional hour of pay under § 226.7 is a wage necessarily suggests strongly that claimants have a private right of action to recover that wage pursuant to California case law interpreting California Labor Code § 218. Section 218 reads in relevant part as follows: "Nothing in this article shall limit the right of any wage claimant to sue directly or through an assignee for any wages or penalty due him under this article." Cal. Lab.Code § 218. Defendants argue that § 218 does not confer any affirmative right to sue for unpaid wages,

but simply states that it does not limit an employee's otherwise existing right to sue for unpaid wages. Defendants' argument has some appeal, as it does track the literal language of the statute. However, a number of California appellate decisions have cited § 218 for the proposition that wage claimants have a direct right of action to seek unpaid wages. *See, e.g., Reynolds v. Bement*, 36 Cal.4th 1075, 1084, 32 Cal.Rptr.3d 483, 116 P.3d 1162 (2005); *Smith v. Rae-Venter Law Group*, 29 Cal.4th 345, 350, 127 Cal.Rptr.2d 516, 58 P.3d 367 (2002); *Sampson v. Parking Serv.2000 Com, Inc.*, 117 Cal.App.4th 212, 220, 11 Cal.Rptr.3d 595 (2004). Based upon these authorities, this Court concludes that a private right of action exists to recover wages owing under § 226.7.

*Id.*

Similarly, in *Kamar*, the court found that under Cal. Labor Code §§ 218 and 1194,[12] there is an implied private right of action to recover split-shift premiums provided for under IWC Wage Order 4-2001.  2008 WL 2229166, at *4.  In reaching this conclusion, the court in *Kamar* cited *Murphy*, which noted that the split-shift pay premiums serve a similar dual function as meal and rest break premiums but are nonetheless treated as wages.  *Id.* at *8 (citing *Murphy*, 40 Cal. 4th at 1111-1112).  The court also relied on the principal that statutes regulating wages and hours are to be liberally construed with an eye to protecting employees."  *Id.  at *9* (citing *Murphy,* 40 Cal. 4th at 1111).  The court in *Kamar* expressly held that California courts permit a private right of action to seek wages due under a wage order.  *Id.* at * 8-11.

In addition, California courts have permitted individuals to seek unpaid wages under Cal. Labor Code § 221 without expressly addressing whether there is a private right of action to recover lost wages under this section.  *See Quillian v. Lion Oil Co.*, 96 Cal. App. 3d 156 (1979); *Hudgins v. Neiman Marcus Group*, 34 Cal. App. 4th (1995).  Section 221 provides that "[i]t shall be unlawful for any employer to collect or receive from an employee any part of wages theretofore paid by said employer to said employee."  In *Quillian*, the plaintiff's claim was also based on Cal.

---

[12] Section 1194 provides:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit.

Cal. Labor Code § 1194.

United States District Court
Northern District of California

Labor Code §§ 400-410, governing "the manner in which a cash 'bond' may be exacted from an employee to cover merchandise entrusted to him."  96 Cal. App. 3d at 162.

In contrast, at least two district courts have held that Cal. Labor Code § 204[13] does not create a private right of action.  *See Johnson v. Hewlett-Packard Co.*, 809 F. Supp. 2d 1114 (N.D. Cal. 2011); *Jeske v. Maxim Healthcare Services, Inc.*, 2012 WL 78242 (E.D. Cal. Jan. 10, 2012). The *Jeske* decision sets forth the arguments made by the defendants in that case against a private right of action under § 204 but ultimately dismisses the claim because the plaintiff offered "no meaningful argument" on the question.  2010 WL 78242, at *5.  Although the court apparently agreed with the defendants, it did not explain its reasons for accepting the defendant's position and therefore the *Jeske* opinion offers little guidance as to whether § 204 creates a private right of action.   In *Johnson*, the court offered two reasons for its conclusion.  First, it reasoned that § 204 "requires the payment of wages in a timely manner; it does not provide a right to wages."  809 F. Supp. 2d at 1136.   Second, it points to the fact that Cal. Labor Code § 210 provides for payment of a civil penalty for violations of § 204.  *Id*.  The court reasoned that because § 210 allowed the Labor Commissioner to seek civil penalties for violations of § 204 there was no clear legislative intent to allow a private right of action.  *Id*.  The court in *Johnson* also held that there is no private right of action under Cal. Labor Code § 223,[14] reasoning that the "text of the section 223 does not support the existence of a private right of action" and further noting that the statute does not "create an entitlement to wages or specific penalties."  *Id*.

Courts have also held that there is no private right of action under Cal. Labor Code § 450.[15] *See Sanchez v. Aerogoup Retail Holdings, Inc.*, 2013 WL 1942166 (N.D. Cal. May 8, 2013); *Harris v. Vector Marketing Corp.*, 2010 WL 2077015 (N.D. Cal. May 20, 2010).  In *Sanchez*, the

---

[13] Section 204 provides, in relevant part, that "[a]ll wages . . . earned by any person in any employment are due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays."  Cal. Labor Code § 204.

[14] Section 223 provides that "[w]here any statute or contract requires an employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage while purporting to pay the wage designated by statute or by contract."

[15] Section 450 provides that "[n]o employer, or agent or officer thereof, or other person, may compel or coerce any employee, or applicant for employment, to patronize his or her employer, or any other person, in the purchase of any thing of value."  Cal. Labor Code § 450.

plaintiff asserted a claim under Cal. Labor Code § 450 based on the allegation that her employer required her to purchase Aerosole footware and did not reimburse her for the cost.  2013 WL 1942166, at *1.   The court found that there was nothing in the language of the section that authorized a private right of action.  2013 WL 1942166, at *5.  The court further noted that Cal. Labor Code § 451 provides that any person who violates § 450 is guilty of a misdemeanor.  *Id.*  The court found that "[t]his section suggests that Section 450 was meant to create criminal liability and not authorize a civil suit by private citizens."  *Id.*  In addition, the court stated, the plaintiff had not "directed the Court to any legislative history indicating that the Legislature intended for Section 450 to create a private right of action.  *Id.*  Therefore, the court concluded, neither the language nor the legislative history revealed an intent to create a private right of action under § 450.  *Id.*

The court in *Sanchez* also rejected the plaintiff's reliance on Cal. Labor Code § 218.  *Id.* Citing California case law holding that payments by employees who are compelled to purchase their uniforms  are considered wages, the plaintiff's theory was that her expenditures were "wages" for the purposes of § 218 and therefore, there was a clear legislative intent supporting a private right of action under § 450.  *Id.*  The court rejected the plaintiff's theory, pointing out that while the particular item that Plaintiff had been required to purchase might be considered wages, "not every Section 450 claim involves the purchase of a uniform."  *Id.* at *6.  The court further noted that § 450 applies not only to employees but also to applicants for employment who have been compelled to make purchases.  *Id.*  As applicants are not entitled to wages, the Court could not discern any clear intent on the part of the legislature to create a private right of action on § 450 simply on the basis that § 218 allows employees to sue for unpaid wages.  *Id.*   Accordingly, the Court dismissed the plaintiff's § 450 claim with prejudice.  *Id.*

Below, the Court addresses the intent of the California Legislature as to each of the challenged claims.

### 5.  Claim Six

In Claim Six, Plaintiffs seek penalties for alleged unlawful deductions from their wages for ordinary business expenses.   Plaintiffs rely primarily on Cal. Labor Code §§ 204, 221 and 223 to

establish a private right of action on Claim Six.  As discussed above, § 204 provides that "[a]ll

wages . . . earned by any person in any employment are due and payable twice during each

calendar month, on days designated in advance by the employer as the regular paydays."  The

undersigned agrees with the court in *Johnson* that a provision addressing the *timing* of wage

payments does not appear to give rise to a claim for unpaid wages such that § 218 would indicate a

clear legislative intent to create a private right of action under § 204.  *See* 809 F. Supp. 2d at 1136.

On the other hand, the text of Cal. Labor Code § 221 *does* suggest that a private right of

action exists to the extent that an employer violates § 221 when it "collect[s] or receive[s] from an

employee *any part of wages* theretofore paid by said employer to said employee."  In contrast to

*Sanchez*, where a violation of § 450 might or might not involve a wrongful deprivation of wages, a

violation of § 221, by definition, involves wrongful conduct that deprives an employee of wages to

which he or she is entitled.  As such, it is reasonable to conclude that a claim under § 221 is a

claim for unpaid wages.  Further, § 218 reflects a clear legislative intent to allow private causes of

action on claims for unpaid wages.  Therefore, the Court finds that there is a clear legislative intent

to permit a private right of action as to § 221.  This conclusion finds further support in the fact that

California courts have permitted claims under § 221 without discussion of whether there is a

private right of action to recover lost wages under this section.  *See Quillian v. Lion Oil Co.*, 96

Cal. App. 3d 156 (1979); *Hudgins v. Neiman Marcus Group*, 34 Cal. App. 4th (1995).

Accordingly, the Court rejects Defendants' assertion that there is no private right of action

as to Claim 6.

### 6.  Claim Seven

In Claim Seven, Plaintiffs seek reimbursement for medical exams and drug and alcohol

testing deducted from their wages in violation of  Cal. Labor Code § 222.5.  Section 222.5

provides:

> No person shall withhold or deduct from the compensation of any
> employee, or require any prospective employee or applicant for
> employment to pay, any fee for, or cost of, any pre-employment
> medical or physical examination taken as a condition of
> employment, nor shall any person withhold or deduct from the
> compensation of any employee, or require any employee to pay any
> fee for, or costs of, medical or physical examinations required by
> any law or regulation of federal, state or local governments or

agencies thereof.

Cal. Labor Code § 222.5.  The parties have cited no case law addressing whether this provision gives rise to a private right of action and the Court finds none.  However, the Court finds that there is no private right of action under this provision.  Under the express terms of the provision, it covers both the withholding of employee compensation and payments made by *prospective* employees to cover certain expenses.  Thus, even if the expenses sought by Plaintiffs in this actions are deducted from their wages, claims brought under § 222.5 may or may not be asserted to recover unpaid wages.  Therefore, this Court, like the court in *Sanchez*, does not find any clear legislative intent to create a private right of action for claims under § 222.5 based on Cal. Labor Code § 218.

### 7.  Claim Eight

Plaintiff's claim for coerced purchases is asserted under § 450.  The Court finds that the reasoning in *Sanchez* is persuasive and therefore dismisses Claim Eight with prejudice.

### 8.  Claim Thirteen

Claim Thirteen, for willful misclassification of employees as independent contractors is asserted under Cal. Labor Code § 226.8.  That section provides that "[i]t is unlawful for any person or employer to  . . . willful[ly] [misclassify] . . .an individual as an independent contractor."  The Court finds that this provision does not give rise to a wage claim per se as the text of this provision does not give rise to any unpaid wages.  Consequently, § 218 does not reveal a clear legislative intent to create a private right of action under § 226.8.  Nor have Plaintiffs cited any other legislative history revealing such an intent as to this provision.  Accordingly, the Court dismisses Claim Thirteen with prejudice.

### E.  Whether the PAGA Claim is Sufficiently Alleged

Defendants contend Plaintiffs are required to satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure as to their PAGA claim because that claim is brought in a representative capacity.  While there is a split of authority on this question, the majority view is that PAGA actions are fundamentally different from class actions and therefore, that PAGA claims do not require class action certification under Rule 23.  This Court agrees and therefore rejects

United States District Court
Northern District of California

31

Defendants' assertion that the PAGA claim should be dismissed because Plaintiffs have not alleged that the requirements of Rule 23 are met.

Under PAGA, an "aggrieved employee" may bring a civil action against an employer "on behalf of himself or herself and other current or former employees." Cal. Lab. Code § 2699(a). If the employee's claim is successful, 75 percent of the penalties recovered go to the Labor and Workforce Development Agency ("LWDA"), and the remaining 25 percent go to the aggrieved employees.  Cal. Lab. Code § 2699(i).   In *Arias v. Superior Court*, the California Supreme Court held that PAGA does not require plaintiffs to meet state class-certification requirements under California Code of Civil Procedure section 382. 46 Cal.4th 969, 975 (2009).  The court relied, in part, on the intent of the California legislature in enacting PAGA, which it described as follows:

> In September 2003, the Legislature enacted the Labor Code Private Attorneys General Act of 2004 (Lab. Code, § 2698 et seq., Stats.2003, ch. 906, § 2, eff. Jan. 1, 2004). The Legislature declared that adequate financing of labor law enforcement was necessary to achieve maximum compliance with state labor laws, that staffing levels for labor law enforcement agencies had declined and were unlikely to keep pace with the future growth of the labor market, and that it was therefore in the public interest to allow aggrieved employees, acting as private attorneys general, to recover civil penalties for Labor Code violations, with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts. (Stats.2003, ch. 906, § 1.)

*Id*. at 980.

Following *Arias*, some federal district courts have held that while PAGA claims in *state* court need not meet the state law procedural requirements for maintaining a class action, Rule 23 nonetheless applies in *federal* court because PAGA is merely a procedural statute.  *See, e.g., Fields v. QSP, Inc.*, 2012 WL 2049528, at *5 (C.D. Cal. June 4, 2012) (citing, *inter alia*, *Thompson v. APM Terminals Pac. Ltd.*, 2010 WL 6309364, at *2 (N.D. Cal. Aug. 26, 2010) (White, J.)); *Ivey v. Apogen Tecchnologies, Inc.*, 2011 WL 3515936 (S.D. Cal. Aug. 10, 2011) ("[t]his Court . . . finds the reasoning of the district court in *Thompson* [*v. APM Terminals*] persuasive")).  In *Fields*, the court relied on *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), in which the Supreme Court held that a claim brought under a state statute that purported to limit class action relief could be brought in a federal court sitting in

32

United States District Court
Northern District of California

1    diversity as a class action under Rule 23.  2012 WL 2049528, at *4.  The *Shady Grove* Court

2    reasoned that under the *Erie* doctrine, Rule 23 is merely a procedural device that allows for joinder

3    of parties, and as such, applies to claims asserted in federal court even if the state law does not

4    provide for such a procedure in state court.  559 U.S. at  407-408.  The *Fields* court found that

5    PAGA is "a procedural mechanism by which litigants may recover for absent plaintiffs, akin to a

6    class action" and concluded that under such circumstances, Rule 23 *automatically* applies under

7    *Shady Grove.*  2012 WL 2049528, at *5.

8           However, "the majority of federal courts facing these claims have relied heavily on

9    PAGA's purpose as a law-enforcement mechanism (as compared to an action designed to confer a

10   private benefit on the named plaintiff and the represented employees) and held that PAGA actions,

11   though representative, need not be brought as class actions in which Rule 23's requirements are

12   necessarily applicable."  *Plaisted v. Dress Barn, Inc.*,  2012 WL 4356158, at *1 (C.D.Cal., Sept.

13   20, 2012) (citing *Thomas v. Aetna Health of Cal., Inc.*, 2011 WL 2173715, at *12–13 (E.D.Cal.

14   June 2, 2011) (surveying relevant case law)).  These courts have found that PAGA is "distinct in

15   purpose and function from a purely procedural rule."  *Mendez v. Tween Brands, Inc.*, 2010 WL

16   2650571, at * 3 (E.D.Cal. July 1, 2010) (holding that requiring class certification of PAGA claim

17   "would . . .  ignore the intent of the legislature in passing the statute");  *see also Moua v. Int'l Bus.*

18   *Machines Corp.*, 2012 WL 370570, at *3 (N.D. Cal. Jan 31, 2012) ("PAGA transcends the

19   definition of what is simply procedural. The statute's plain purpose is to protect the public interest

20   through a unique private enforcement process, not to allow a collection of individual plaintiffs to

21   sue the same defendant in one consolidated action for the sake of convenience and efficiency.");

22   *McKenzie v. Fed. Ex. Corp.*, 765 F.Supp.2d 1222, 1234 (C.D. Cal. 2011) ("[T]he majority view –

23   consistent with the California Supreme Court in *Arias* –is that PAGA claims are not class actions,

24   and because these claims are law enforcement actions there is no standing issue precluding

25   McKenzie from pursuing this claim."); *Cardenas v. McLane Foodservice, Inc.*, 2011 WL 379413,

26   at *2 (C.D. Cal. Jan 31, 2011) (holding that "PAGA plaintiffs do not hold the rights and

27   obligations of a class in their hands" because  PAGA allows aggrieved employees to act as private

28   attorneys general); *Sample v. Big Lot Stores, Inc.*, 2010 WL 4939992, at *3 (N.D. Cal. Nov.30,

United States District Court
Northern District of California

1    2010) (holding that plaintiff was not required to comply with Rule 23 because the purpose of

2    PAGA is "to vindicate the public through the imposition of civil penalties, as opposed to

3    conferring a private benefit upon the plaintiff and the represented employees"); *Ochoa–Hernandez*

4    *v. CJADER Foods, I*nc., 2010 WL 1340777 (N.D.Cal. Apr. 2, 2010) (addressing differences

5    between class actions and PAGA claims).[16]   In *Mendez v. Tween Brands*, the court expressly

6    rejected the argument that Rule 23 applies to PAGA claims under *Shady Grove*, finding that *Shady*

7    *Grove* does not apply to PAGA claims because "PAGA claims, by definition, are not class

8    actions." *Mendez v. Tween Brands, Inc*., 2010 WL 2650571, at * 4.

9        This Court finds persuasive the reasoning of the majority of courts that have addressed the

10   question of whether Rule 23 applies to PAGA claims.  The California Legislature enacted PAGA

11   as a law enforcement mechanism.  In contrast to class actions, which allow a collection of

12   individuals to sue in a single action "for the sake of convenience and efficiency," the "unique

13   private enforcement process" created under PAGA is intended to protect the public interest.

14   *Moua*, 2012 WL 370570, at *3.

15        Finally, to the extent there has been disagreement among the district courts on the question

16   of whether Rule 23 applies to PAGA claims, this issue has been largely resolved by the Ninth

17   Circuit's decision in *Baumann v. Chase Inv. Services Corp.*, --- F.3d ----, 2014 WL 983587 (9th

18   Cir. Mar. 13, 2014).  In that case, the court addressed whether a PAGA claim filed in state court

19   could be removed to federal court under the Class Action Fairness Act ("CAFA"), which permits

20   removal to federal court of certain types of class actions. *Id*. at *2 (citing 28 U.S.C. § 1332(d)(2)-

21   (A)).  The term "class action" is defined in CAFA as "any civil action filed under rule 23 of the

22   Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing

23   an action to be brought by 1 or more representative persons as a class action."  28 U.S.C. §

24

---

25   [16] Indeed, Judge White, whose opinion in *Thompson v. APM Terminals* was cited in the *Fields* and
*Ivey* decisions (upon which Exel relies in support of its position), later reconsidered his position

26   that PAGA claims brought in federal court must satisfy the requirements of Rule 23, concluding
that such claims need not be brought as class actions.  *See Willner v. Manpower Inc.*,

27   2012 WL 1570789, at *7-8 (N.D.Cal., May 03, 2012) ("This Court had previously sided with the
minority of courts which found that PAGA claims had to satisfy the class action requirements of

28   Rule 23. However, upon further consideration and review of the authority subsequent to the
Court's opinion, the Court reconsiders its prior position.").

1332(d)(1)(B).  Thus, the court in *Baumann* addressed whether PAGA was "similar" to Rule 23.
2014 WL 983587, at *2.  The court identified numerous differences between PAGA and Rule 23,
ultimately concluding that "Rule 23 and PAGA are more dissimilar than alike. A PAGA action is
at heart a civil enforcement action filed on behalf of and for the benefit of the state, not a claim for
class relief." *Id*. at *5.  On that basis, the court found that claims asserted under PAGA do not
support CAFA jurisdiction.  *Id*.

Consequently, the Court concludes that PAGA actions, though representative, need not be
brought as class actions under Rule 23.

## IV.     CONCLUSION

For the reasons stated above, the Motion is GRANTED in part and DENIED in part as
follows:   The Motion is GRANTED as to Claims Seven, Eight and Thirteen, which are dismissed
with prejudice because there is no private right of action as to those claims.  The Motion is
DENIED in all other respects.

**IT IS SO ORDERED.**


Dated: March 28, 2014



_____
JOSEPH C. SPERO
United States Magistrate Judge