Todd M. Schneider (SBN 158253)
Joshua G. Konecky (SBN 182897)
Nathan B. Piller (SBN 300569)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
jkonecky@schneiderwallace.com
npiller@schneiderwallace.com

Ira Spiro, SBN 67641
SPIRO LAW CORP.
11377 W. Olympic Blvd., Fifth Floor
Los Angeles, CA 90064
Telephone: (310) 235-2350
Facsimile: (310) 235-2351
ira@spiromoore.com

Jeff Holmes, SBN 100891
BLANCHARD LAW GROUP, APC
3311 East Pico Blvd.
Los Angeles, CA 90032
Telephone: (310) 396-9045
Facsimile: (970) 497-4922
JeffHolmesJH@gmail.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL VILLALPANDO, individually and on behalf of all others similarly situated, | Consolidated Cases: Case No. 3:12-cv-04137-JCS Case No. 4:13-cv-03091-JCS |
| Plaintiff(s), | **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE, UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER** |
| vs. | |
| EXEL DIRECT INC., et al., | |
| Defendant(s). | Date:  April 20, 2016 Time:  9:30 a.m. Judge: The Honorable Joseph C. Spero |

1

2     TAFITI SHEKUR, individually and on     )
      behalf  of all others similarly situated,   )

3                           Plaintiff,         )

4               vs.               )

5     EXEL DIRECT INC., et al.,      )

6                     Defendants.    )

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

REPLY MEMORANDUM ISO PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE,
UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## **TABLE OF CONTENTS**

I.  INTRODUCTION ........................................................................................................1

II.  ARGUMENT ...............................................................................................................2

   A.  Dr. Walker's speculative damages analysis is not insulated from scrutiny merely because he is a rebuttal expert .............................................................................2

   B.  Dr. Walker relies on impermissible extrapolation from an unrepresentative sampling of Class Member testimony....................................................................4

   C.  Dr. Walker's testimony is indistinguishable from Exel's flawed legal argument that Plaintiffs must prove damages individually and with absolute precision ........6

   D.  Dr. Walker's speculation is not helpful to the trier of fact because it does not attempt to rebut Plaintiffs' just and reasonable inferences ....................................8

   E.  Dr. Walker's admitted lack of specialized knowledge renders his testimony regarding mileage reimbursement rates unhelpful and inadmissible...................11

   F.  Dr. Walker does not rely on sound legal assumptions, but rather draws inadmissible legal conclusions ..........................................................................13

   G.  Prejudicial methodological flaws render as moot any marginal relevance of Dr. Walker's rebuttal to Mr. Breshears' "savings to Exel" analysis ..........................14

III.  CONCLUSION ..........................................................................................................15

REPLY MEMORANDUM ISO PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE,
UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER

1

**TABLE OF AUTHORITIES**

**Federal Cases**

*Anderson v. Mt Clemens Pottery Co.,*
  328 U.S. 680 (1946) ..................................................................................... 1, 8, 9

*Boles v. United States,*
  2015 WL 1508857 (M.D.N.C. Apr. 1, 2015) ....................................................11

*Botnick v. Zimmer, Inc.,*
  484 F. Supp. 2d 715 (N.D. Ohio 2007) ........................................................ 12, 15

*Butler v. Home Depot, Inc.,*
  1997 WL 605754 (N.D. Cal. Aug. 29, 1997) ...................................................15

*Campbell v. Garcia,*
  2015 WL 995244 (D. Nev. Mar. 6, 2015) ........................................................11

*Daubert v. Merrell Dow Pharm., Inc.,*
  509 U.S. 579 (1993) ........................................................................................12

*Faulkner v. Arista Records LLC,*
  46 F. Supp. 3d 365  (S.D.N.Y. 2014) ................................................................2

*Floyd v. City of New York,*
  910 F. Supp. 2d 506 (S.D.N.Y. 2012) ...............................................................3

*Hart v. Rick's Cabaret Int'l, Inc.,*
  73 F. Supp. 3d 382 (S.D.N.Y. 2014) .................................................................8

*Kamar v. Radio Shack Corp.,*
  254 F.R.D. 387 (C.D. Cal. 2008) ....................................................................11

*McLaughlin v. Ho Fat Seto,*
  850 F.2d 586 (9th Cir. 1988) .........................................................................7, 8

*Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago,*
  877 F.2d 1333 (7th Cir. 1989) .........................................................................12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

*Moisenko v. Volkswagenwerk Aktiengesellschaft,*
    198 F.3d 246 (6th Cir.1999) ............................................................. 15

*Ollier v. Sweetwater Union High Sch. Dist.,*
    768 F.3d 843 (9th Cir. 2014) ............................................................... 3

*Samuels v. Holland Am. Line-USA Inc.,*
    656 F.3d 948 (9th Cir. 2011) ............................................................... 3

*Slicex, Inc. v. Aeroflex Colorado Springs, Inc.,*
    2006 WL 1932344 (D. Utah July 11, 2006) ................................... 6, 8

*Vaccarino v. Midland Nat. Life Ins. Co.,*
    2013 WL 3200500 (C.D. Cal. June 17, 2013) ..................................... 8

**State Cases**

*Bell v. Farmers Ins. Exchange,*
    115 Cal.App.4th 715 (2004) ............................................................. 11

*Bono Enterprises, Inc. v. Bradshaw,*
    32 Cal. App. 4th 968 (1995) ............................................................. 13

*Duran v. U.S. Bank Nat. Assn.,*
    59 Cal. 4th 1 (2014) ............................................................................ 4

*Gattuso v. Harte-Hanks Shoppers, Inc.,*
    42 Cal. 4th 554 (2007) ........................................................................ 7

*Hernandez v. Mendoza,*
    199 Cal.App.3d 721 (1988) ................................................................ 8

**Statutes**

Cal. Bus. & Prof. Code § 17200 ...................................................... 14

**Rules**

Fed. R. Civ. P. 26 (a)(2)(C) .............................................................. 11

Fed. R. Evid. 702 .............................................................................. 11

REPLY MEMORANDUM ISO PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE,
UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER

**Other Authorities**

2009.06.09 DLSE Op. Ltr. ......................................................................................13

Fed. R. Evid. 702 Advisory Committee's Note, 2000 .................................................3

REPLY MEMORANDUM ISO PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE,
UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER

## I.     INTRODUCTION

Exel's Opposition to Plaintiffs' *Daubert* Motion to Exclude Testimony of Jonathan Walker [ECF 241] ("Ds' Opp.") only confirms that Dr. Walker's testimony relies on the same incorrect factual assumptions and faulty legal arguments that permeate Exel's defense.

First, Dr. Walker mistakenly assumes that the foundation of Mr. Breshears' damages analysis is testimony from a small sample of Class Members.  This is simply false, as the crux of Mr. Breshears' analysis relies on the compensation and mileage data which Exel selected, the PMK and manager deposition testimony that Exel provided, and the operational documents that Exel admits are uniform across the company.  In rebuttal, Dr. Walker relies on a strawman version of Mr. Breshears, constructed by Exel, which in reality does not exist.

Second, Dr. Walker attempts to rebut Plaintiffs' expert Wesley Curtis' cost-per-mile figures.  Yet, this rebuttal has no foundation or value for the trier of fact because Mr. Curtis is indisputably the only one of the two who has any expertise or experience in this area.

Third, Dr. Walker's underlying methodology for rebutting Plaintiffs' damages analysis conflicts with the methodology that decades of authority has established in wage and hour cases such as this one.  Under applicable law, an employer cannot rebut just and reasonable inferences from the Plaintiffs simply by speculating about facts that possibly could change the damages calculus if they were true.  Rather, the employer has the burden "to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Anderson v. Mt Clemens Pottery Co.,* 328 U.S. 680, 687-688 (1946).  This basic principle has been reiterated in case after case over the years, not just in the context of minimum wage and overtime, but also in expense reimbursement and meal and rest periods claims as well.

Yet, while Exel presents Dr. Walker as a "rebuttal" expert, his methodology for rebutting Plaintiffs' damages analysis does not include either evidence of the precise amount of work performed, or evidence to negative the reasonable inferences Plaintiffs proffer.  Instead, Dr. Walker simply criticizes Plaintiffs for making estimates as a general matter, and then offers

REPLY MEMORANDUM ISO PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE,
UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER

conjecture about how the results might be more precise if Plaintiffs undertook an individualized analysis. This is not an acceptable methodology for rebutting Plaintiffs' showing of damages under the law, and thus would be utterly confusing and unhelpful to the trier of fact.

Nor does Dr. Walker's rebuttal testimony provide any reason to disregard the established burden shifting approach. He presents no analysis to suggest that Exel has maintained complete or adequate records that would require a more precise analysis from the Plaintiffs. He does not rebut Mr. Breshears' testimony that it would be cost prohibitive and likely inconclusive in any event to analyze Exel's warehouse of disorganized, incomplete and sometimes illegible scheduling manifests, time sheets and logs. Indeed, Exel itself admits that these records are not adequate to perform a damages analysis.

At bottom, Dr. Walker's approach is premised on an incorrect legal assumption regarding the burden of proof. This applies not just to the wage claims, but also the expense reimbursement claims as well as the meal and rest period claims. Dr. Walker's testimony is thus unhelpful and inadmissible because it asks the jury to speculate about how damages might be different than Plaintiffs' calculations, even though it will be Exel's burden at trial to provide more precise figures to rebut Plaintiffs' reasonable estimates. By merely criticizing Plaintiffs' experts for a methodology that allows for reasonable inferences, while refraining from presenting more precise figures to rebut them, Dr. Walker has merely reiterated Exel's own flawed legal argument on damages. This does not meet the requirements of a rebuttal expert under the Federal Rules.

## II.   ARGUMENT

### A.   Dr. Walker's speculative damages analysis is not insulated from scrutiny merely because he is a rebuttal expert

Exel appears to argue that Dr. Walker's speculation should be excused because he "is a *rebuttal* expert" who has been tasked with identifying "deficiencies" in the reports of Plaintiffs' experts, rather than with providing his own damages analysis. *See* Ds' Opp. at 1:1-5 (emphasis in original). Yet, the standard for a rebuttal expert witness is the same as for any expert witness, regardless of their charge. *Faulkner v. Arista Records LLC*, 46 F. Supp. 3d 365, 386 (S.D.N.Y. 2014). Speculation is not helpful to the trier of fact even if the proponent describes it as a mere

2

critique of an affirmative expert's methodology. *Cf.* Ds' Opp. at 9:13; *see Floyd v. City of New York*, 910 F. Supp. 2d 506, 516 (S.D.N.Y. 2012) (excluding rebuttal expert testimony that was not supported by objective facts or data in the record, even though it was offered as a rebuttal of the affirmative expert witness' contrary hypothesis); *see also Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (reasoning that "speculative testimony is inherently unreliable.").

Dr. Walker's testimony cannot be admitted because it is based on speculation. *See Samuels v. Holland Am. Line-USA Inc.*, 656 F.3d 948, 952 (9th Cir. 2011); *see also* Fed. R. Evid. 702 Advisory Committee's Note, 2000 ("The trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted."). As discussed in Plaintiffs' opening brief, Dr. Walker's report is permeated by speculation about how the Class Members' damages "could" be different than the figures presented in Mr. Breshears' Report if Mr. Breshears made different assumptions about how long Class Members work for Exel, how many miles they drive for Exel, how they maintain their trucks, and how they conduct themselves during the course of the day. *See* Walker Report, at ¶¶ 32, 33, 48-50, 93, 98, 99, 107. Dr. Walker does not merely comment on how damages could be different, but in fact presents his own damages analysis based on this conjecture that literally awards all Class Members zero recovery for the following expenses: fuel; truck liability insurance, license, registration and permit fees; cargo insurance, cell phones, tires, repairs and maintenance; workers' compensation insurance; medical insurance; tolls; damage claims; and other miscellaneous costs. *Id.* at ¶¶ 86-105; Walker Report at Figure 8; Walker Depo. at 48:2-22.

At the same time, Dr. Walker has not provided a detailed workup or realistic calculations to actually rebut Mr. Breshears' figures, as the burden-shifting law requires. Similarly, Dr. Walker makes no attempt to quantify the extent to which Mr. Breshears' figures should be modified based on supposed methodological errors. *See, e.g.,* Walker Depo. at 149:22-150:24 (admitting that he did not do an analysis of the extent to which Mr. Breshears counted drive time by second drivers, despite reducing damages based on his critique that Mr. Breshears did not consider the impact of

their drive time on calculating class member damages); *id*. at 154:1-24 (admitting he did not conduct any analysis of fuel costs, even though he knows they must be above zero).

Exel's defense of Dr. Walker's speculative testimony is based on a semantic distinction of minimal significance.  Exel claims that "Dr. Walker, by design, did not conduct his own damages analysis and did not present an independent assessment of the claims." Ds' Opp. at 2:1-9. However, Dr. Walker admits that his report contains an analysis that "shows a partially corrected version of Mr. Breshears' analysis[.]" Exhibit 1,[1] Deposition of Jonathan Walker ("Walker Depo.") at 47:19-48:22; *see also* Exhibit 2, Expert Report of Jonathan Walker ("Walker Report") at Figure 8.  Exel itself describes Dr. Walker's damages analysis as a "partial correction" to Mr. Breshears' damages analysis. Ds' Opp. at 2:7-8.  A "correction" of another expert's damages analysis is not a mere critique of methodology—it is a conclusion that requires concrete factual support.  Dr. Walker cannot have it both ways:  he cannot present a damages analysis that literally awards Class Members nothing for entire categories of damages (without any factual basis for doing so), while at the same time insisting that these "corrections" are mere critiques of methodology.

**B.      Dr. Walker relies on impermissible extrapolation from an unrepresentative sampling of Class Member testimony**

Exel focuses its opposition on reiterating the central argument of its own *Daubert* motion— that Mr. Breshears improperly extrapolated from non-representative data. *See* Ds' Opp. at 2:12-4:4; 6:9-15.  To buttress the argument, Exel cites *Duran v. U.S. Bank Nat. Assn.*, 59 Cal. 4th 1 (2014), a California outside salesperson exemption case in which the Plaintiffs depended on a non-representative, self-selected sampling of class members to determine liability (*i.e.* whether the class as a whole actually spent more than 50% of their time making sales outside the office). *Id*. at 12, 33-34, 38-39.  *Duran* is inapposite, however, for the simple reason that Mr. Breshears did not simply rely on a sample of class member testimony to make his conclusions.  Rather, he based his conclusions on data for approximately one third of the Class, Exel's own estimates of Class

---

[1] All exhibits referenced herein are attached to the Reply Declaration of Nathan Piller in Support of Plaintiffs' *Daubert* Motion.

Member expenses, and admissions by Exel's own managers and executives regarding time worked and miles driven by the class as a whole.

The only places in Mr. Breshears' report that even cite class member testimony are in the sections concerning meal and rest periods, and minimum wage violations during the morning meetings. With respect to meal and rest periods, Mr. Breshears only cited class member testimony to provide Exel a discount from a 100% violation rate, even though it would be Exel's burden of proof to demonstrate through records and otherwise that the Class Members received any *fully compliant* meal and rest periods despite a patently non-compliant policy. *See* Breshears Report at ¶¶ 39-42. In doing so, he notes that most class members testified to nearly a 100% violation rate in any event. *Id.* at ¶¶ 40, 42; *see* Plaintiffs' Opposition to Defendants' Combined Daubert and Decertification Motion [ECF 242] ("Ps' Opp. to Ds' Combined Mtn.") at 11:19-14:22. Mr. Breshears went through a similar exercise when making observations about paper timesheets and logs. *See* Exh. 16 to Ps' Opp. to Ds' Combined Mtn. [ECF 242-4] Supplemental Expert Report of David Breshears, at ¶¶ 9-17. Given the burden shifting that will occur if Plaintiffs demonstrate that the policy is noncompliant and prevail on their other theories of recovery that all breaks are noncompliant because they are not off-duty and/or separately paid, Mr. Breshears did not need the class member testimony to reach his conclusions. Dr. Walker's premise that Mr. Breshears simply relies on unrepresentative sample is misinformed.[2]

---

[2] With respect to the minimum wage violations, Exel argues that Mr. Breshears relied on the deposition testimony of six class members to extrapolate the average amount of time class members spent at morning meetings. *See* Ds' Opp. at 5:7-9. This argument ignores testimony of Exel's own management that the morning meetings occur on a daily basis, that Class Members are required to attend, that the company has documented each morning meeting with a written morning meeting "agenda," and that each day's agenda is the same for all locations. *See* Plaintiffs' Opposition to Defendants' Combined Daubert and Decertification Motion [ECF 242] ("Ps' Opp. to Ds' Combined Mtn."), at 15:1-7. Given Exel's own evidence that each location has the same agenda for each morning meeting, it was not unreasonable for Mr. Breshears to estimate the length of the morning meetings based on the available class member testimony. Indeed, neither Mr. Walker nor Exel provide any specific rebuttal to the 23.75 minute average that Mr. Breshears used.

REPLY MEMORANDUM ISO PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE, UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

Ironically, what Exel fails to ever address is it is Dr. Walker, not Mr. Breshears, who relies on a sampling of class member testimony to make his conclusions.  For example, Exel readily admits that Dr. Walker's rebuttal of Mr. Breshears' meal period analysis was based on reviewing class member testimony regarding how they "actually spent their time" in this case. *See* Ds' Opp. at 11:7-9. In turn, Dr. Walker's report indicates he only considered testimony from 3 of 386 Class Members, and one other employee, when formulating his rebuttal. Walker Report at ¶¶ 50-51. This is the very "extrapolation" that Exel argues Mr. Breshears should not have used in his analysis. Ds' Opp. at 2:13-18 (arguing that Mr. Breshears relied on a "tiny sample[]" of "11 deponents" for the meal period claim).  As another example, Dr. Walker hones in on the nine outlier Class Members he could identify who had enlisted second drivers—approximately 2% of the Class—to reach the conclusion that Mr. Breshears' entire damages analysis is unreliable. Dr. Walker's correspondence with his own staff members makes this approach plain. *See* Exhibit 4, e-mail correspondence, at JW000040 (directing staff to "identify one or two extreme examples" of Class Members who personally drove and made deliveries only on an infrequent basis).

C.     **Dr. Walker's testimony is indistinguishable from Exel's flawed legal argument that Plaintiffs must prove damages individually and with absolute precision**

While rebuttal experts may critique the methodology of an affirmative expert without offering their own damages analysis, expert opinion as to whether a party can prove its damages is inadmissible. *See Slicex, Inc. v. Aeroflex Colorado Springs, Inc.*, 2006 WL 1932344, at *3 (D. Utah July 11, 2006) ("The determination of whether Plaintiff has proven damages is something that is within the sole province of the fact finder… testimony on the issue of whether Plaintiff has proven damages would not be helpful to the fact finder. Such testimony would essentially tell the fact finder the conclusion it should reach.").

Here, Dr. Walker states that the "purpose" of his corrections to Mr. Breshears' analysis was "to show what happens to Mr. Breshears' estimates when you carve away things that he included for which he had no basis." *See* Walker Depo. at 153:1-12.  Exel itself admits that Dr.

REPLY MEMORANDUM ISO PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE, UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER

Walker's central conclusion was that Plaintiffs' expert reports "did not meet acceptable standards for presenting reliable proof"—a legal conclusion on the burdens of proof that is indistinguishable from the legal position Exel advanced in its motion for decertification. *See* Ds' Opp. at 2:5-9.  In other words, by zeroing out entire categories of damages based on a legally erroneous and unrealistically high standard of precision, Dr. Walker mimes Exel's legal argument as to "what happens" when Plaintiffs seek to prove damages by "just and reasonable inference." *See* Defendants Combined *Daubert* and Decertification Motion [ECF 238-1] ("Ds' Combined Br."), at 26:8-22 (arguing that "just and reasonable inferences" are not available to Plaintiffs).

For instance, Dr. Walker's opinion is that Plaintiffs cannot claim any damages for unreimbursed fuel costs—despite acknowledging that Class Members incurred such costs, *see* Walker Depo. at 154:1-18—because Mr. Breshears' analysis did not meet Dr. Walker's "criteria" for establishing damages with precision. *See id.* at 153:20-22.  In essence, Dr. Walker draws the legal conclusion that reimbursements for fuel cannot be shown using mileage data and a reasonable mileage reimbursement rate, but rather that they must be shown by other undefined means, such as, perhaps, gas receipts or individual interviews. *See* Walker Depo. at 38:7-39:7; 57:13-60:2.  This disregards legal precedent explicitly endorsing a cost-per-mile method. *See Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 569 (2007).  Moreover, Dr. Walker testified in deposition that even reviewing Class Member tax returns would not be enough to calculate damages because there is always the possibility that a class member might not be credible and that the tax returns may overstate expenses. *Id.* at 35:19-36:1; 38:7-40:13; 57:13-60:2.  In other words, Dr. Walker's opinion is indistinguishable in substance from Exel's own legal position that Plaintiffs must prove all damages individually, and with absolute precision.  This sort of legal position is not helpful to the trier of fact, particularly when the law permits Plaintiffs to prove damages by just and reasonable inference as to non-testifying employees. *See, e.g., McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988).

Dr. Walker also excludes several other categories of expense reimbursements from his damages analysis merely because Plaintiffs have not provided receipts or other exact computations of expenses incurred for each Class Member.  For example, Dr. Walker excludes tire replacement

REPLY MEMORANDUM ISO PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE,
UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER

costs and preventative maintenance because Plaintiffs factored the incremental costs of such items into a reasonable mileage reimbursement rate, rather than providing individual receipts showing each and every time any class member had maintenance or repairs performed. *See* Walker Depo. at 69:23-70:23; 71:16-72:5. Dr. Walker concludes that such categories should be excluded because they do not meet his standards of precision, even though he declines to offer any more precise evidence to rebut Plaintiffs' showing. This is the same as Exel's faulty legal position that Plaintiffs cannot prove the same damages without individualized evidence for each Class Member. *See* Ds' Combined Br., at 26:9-15. Thus, Dr. Walker's damages analysis is inadmissible because it does no more than tell the trier of fact to reach the same erroneous legal conclusion advanced by Exel. *See Slicex*, 2006 WL 1932344, at *3.

> **D.** **Dr. Walker's speculation is not helpful to the trier of fact because it does not attempt to rebut Plaintiffs' just and reasonable inferences**

As discussed in Plaintiffs' opening brief, it is well established in the area of wage and hour law that plaintiffs can demonstrate classwide damages through representative testimony and reasonable estimates where a defendant employer's records are incomplete or inadequate. *See Mt. Clemens,* 328 U.S. at 687-688; *McLaughlin*, 850 F.2d at 589; *Hart v. Rick's Cabaret Int'l, Inc.*, 73 F. Supp. 3d 382, 391 (S.D.N.Y. 2014); *Hernandez v. Mendoza*, 199 Cal.App.3d 721, 727 (1988) (applying *Mt. Clemens* burden shifting to wage and hour claims under California law).

Moreover, the representative testimony and estimates here are even more probative and reliable than in the typical wage and hour case because they come from research and assessments that Exel's own senior management has admitted to be useful, reliable and important in making business decisions for the company. *See* Ps' Opp. to Ds' Combined Mtn. at 23:15-24:20; *see Vaccarino v. Midland Nat. Life Ins. Co.*, 2013 WL 3200500, at *14 (C.D. Cal. June 17, 2013) (observing that "defendant's own admissions" may demonstrate that damages can "feasibly and efficiently be calculated once the common liability questions are adjudicated.") (internal citations omitted). In addition, Defendants' own witnesses have testified to miles driven per day and days

REPLY MEMORANDUM ISO PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE, UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER

worked per week, which can be used along with Exel's own documented cost projections and studies, to prove damages at trial. *See* Ps' Opp. to Ds' Combined Mtn. at 24:21-25:3.

Contrary to Exel's assertions, *see* Ds' Opp. at 8:5; 9:4-12, "just and reasonable inferences" *are* available to Plaintiffs because Exel has failed to maintain complete and adequate records. Indeed, Exel admitted in its combined *Daubert* and decertification motion that its paper "records" would not be adequate as a method of proving damages at trial. *See* Ds' Combined Br. at 24:20-25:6 (acknowledging that it was "reasonable" for Plaintiffs not to analyze Exel's paper manifests and incomplete timesheets, because assembling the over "4 million documents" for trial would "be incredibly difficult and time consuming (if even possible at all)."); *id.* (acknowledging that using the voluminous documents Exel made available at the Los Angeles warehouse to prove damages would be "entirely inappropriate in the class action context.").

Mr. Breshears explained in his deposition why the disorganized, incomplete, and sometimes illegible manifests and timesheets are not adequate or reliable for measuring damages. Breshears Depo. at 28:15-29:7; 74:4-75:25; 150:20-151:24.  In response, Exel did not present the paper manifests, timesheets and logs that it made available at the Los Angeles warehouse to the Court in any form or make any attempt to demonstrate that they are complete or usable. In fact, Exel admits that it has not shown that these "records" are complete. *See* Ds' Opp. at 9:6, n. 14.

It will be Exel's burden at trial to rebut Plaintiffs' reasonable estimates. *See Mt. Clemens*, 328 U.S. at 687-688.  Nevertheless, Dr. Walker does not provide any concrete, alternative quantification to rebut Mr. Breshears' analysis.  Instead, Dr. Walker criticizes Mr. Breshears for drawing the very sorts of reasonable inferences Plaintiffs are entitled to draw in light of Exel's failure to maintain complete and adequate records.  For instance, Dr. Walker refrained from making any effort to determine the fuel costs that were incurred (despite acknowledging that Exel's own data show that Class Members drove numerous miles while working for Exel, *see id.* at ¶ 94), instead stating in a conclusory manner that Mr. Breshears would have reached a more accurate

REPLY MEMORANDUM ISO PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE, UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER

figure if he had "gone through a different analysis" that did *not* involve drawing inferences from the available data. *See* Walker Depo. at 154:16-24; *id*. at 154:1-24.[3]

Dr. Walker also fails to calculate a margin of error or to quantify the likelihood of any difference between Mr. Breshears' figures and what Dr. Walker would presumably consider to be more precise figures.  Indeed, Dr. Walker concedes that it would be "very complicated to quantify" Mr. Breshears' errors, so he dispensed with calculating an actual margin of error and instead opted to "show the extremes[.]" *Id*. at 148:20-149:3.  For instance, Dr. Walker hones in on outlier class members (who, unlike most Class Members, managed multiple second drivers for Exel's benefit) to speculate that Mr. Breshears' figures are inflated because he failed to account for the impact of drive time and mileage of Exel's second drivers.  Yet, Dr. Walker admits that he made no attempt to quantify a reduction in damages based on this supposed error. *See id*. at 149:22-150:24.

Exel contends that Dr. Walker's speculative testimony is grounded in the data because he referred to a percentage of routes contained in Exel's data that he claims were covered by second drivers. *See* Ds' Opp. at 5:22-24.  However, Dr. Walker does not identify the number of Class Members who enlisted second drivers, Walker Depo. at 78:24-79:6, nor does he attempt to quantify a reduction in Mr. Breshears' analysis commensurate with this percentage.  Dr. Walker's reference to the percentage of routes driven by second drivers also is misleading because the percentage is inflated by outlier Class Members who may have managed several second drivers at the same time. It may also be inflated because of gaps in the data. Regardless, until Exel actually identifies those Class Members who have enlisted second drivers beyond what Mr. Breshears already has accounted for, claims of inflation are conjectural.

It is ironic at best that Exel accuses Plaintiffs' experts of inappropriate extrapolation, *see* Ds' Opp. at 6:9-15, given that it is Dr. Walker who hones in on outlier examples to support his contention that Plaintiffs should receive zero damages in several categories.  For his part, Mr.

---

[3] In this connection, Exel admits that Plaintiffs incurred actual expenses that are not reflected in Figure 8 of the Walker Report, *see* Ds' Opp. at 10:2, n.15, but it has nevertheless refrained from providing an actual numerical rebuttal to Mr. Breshears' analysis.

Breshears included an alternative damages calculation in his declaration submitted in connection with Plaintiffs' opposition to Exel's combined *Daubert* and decertification motion that excludes data potentially attributable to second drivers and eliminates extrapolation. *See* Declaration of David Breshears, Exhibit 17 to the Declaration of Nathan Piller in opposition to Defendants' combined *Daubert* and decertification motion [ECF 242-4].

Dr. Walker's testimony is thus unhelpful and inadmissible because it asks the jury to speculate about what damages might be, even though it will be Exel's burden at trial to provide more precise figures to rebut Plaintiffs' reasonable estimates.  *See, e.g.*, *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 403 (C.D. Cal. 2008) (reasoning that if the employer defendant "did not have the required records for a claimant, then the claimant would have a relatively light burden" to prove damages by just and reasonable inference "before the burden shifts to the employer to produce <u>specific evidence</u> refuting the employee's claim.") (emphasis added); *see also Bell v. Farmers Ins. Exchange,* 115 Cal.App.4th 715, 748 (2004) (same).

By merely criticizing Plaintiffs' experts for a methodology that allows for reasonable inferences while refraining from presenting more precise figures to rebut the just and reasonable inferences, Dr. Walker has merely reiterated Exel's own legal argument on damages.  This analysis does not meet the requirements of a rebuttal expert under the Federal Rules. Fed. R. Civ. P. 26 (a)(2)(C);  *Campbell v. Garcia*, 2015 WL 995244, at *2 (D. Nev. Mar. 6, 2015) ("Rebuttal expert testimony is restricted to subjects which are 'intended solely to *contradict or rebut* evidence on the same subject matter identified by another party.'"); *Boles v. United States*, 2015 WL 1508857, at *3 (M.D.N.C. Apr. 1, 2015) (excluding rebuttal expert's testimony where it did not rebut the conclusions of the opposing expert).

### E.    Dr. Walker's admitted lack of specialized knowledge renders his testimony regarding mileage reimbursement rates unhelpful and inadmissible

Under the Federal Rules of Evidence, only "a witness <u>qualified as an expert by knowledge, skill, experience, training, or education</u>, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702 (emphasis added).  As discussed in Plaintiffs' opening brief, Dr. Walker

11

REPLY MEMORANDUM ISO PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE, UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER

admittedly lacks knowledge or training regarding the calculation of mileage reimbursement rates, and does not claim to possess any qualifications bearing on mileage reimbursement rates. *See* Walker Report at ¶¶ 1-3; Walker Depo. at 76:23-78:10.  Indeed, Dr. Walker admits he does not know how mileage reimbursement rates are calculated. *Id.*  Dr. Walker's remarkable lack of familiarity with trucking costs and mileage reimbursement was made plain in his deposition, when he claimed not to know one way or another whether driving a truck for Exel would result in economic depreciation of tires. *Id.* at 70:18-25.

In opposition, Exel acknowledges that Dr. Walker is not an expert on mileage reimbursement rates, but argues that this admitted lack of specialized knowledge is excusable because he is "a rebuttal expert in the field of economics" and was merely "evaluat[ing] the Curtis calculations" to demonstrate that they are unreliable. *See* Ds' Opp. at 7:3-12.  Yet, neither a specialization in economics nor status as a rebuttal expert grant experts *carte blanche* to provide testimony regarding areas in which they admittedly lack *any* related expertise, experience, or specialized knowledge. *See, e.g., Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1339-40 (7th Cir. 1989) (reasoning that expert's qualification as an economist did not qualify him to opine on traditional banking practices).

Even if he were qualified in this specialized area of mileage reimbursement rates, Dr. Walker's flawed methodology should not be admitted because it would confuse the jury. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595-97 (1993) (reasoning that the Court assumes a gatekeeping role to "prevent jury exposure to confusing and unreliable expert testimony"); *Botnick v. Zimmer, Inc.*, 484 F. Supp. 2d 715, 721 (N.D. Ohio 2007) (excluding expert testimony that was not based on a "reliable methodology" and reasoning that "*Daubert* recognizes the duty of the trial court to reduce the risk of jury confusion by exercising just such control over expert witnesses.").  For instance, Dr. Walker opines that costs of maintenance, repairs, and tire replacements, among other driving costs incurred incrementally in the course of driving numerous miles for Exel, cannot be included in a reasonable mileage reimbursement rate because Plaintiffs have not produced individualized proof of the actual expenses. *See* Walker Depo. at 69:23-70:23; 71:16-72:5.  However, as discussed in Plaintiffs' opening brief, reasonable mileage rates are

REPLY MEMORANDUM ISO PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE, UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER

designed to reimburse employees for costs incurred incrementally, not on a receipt-by-receipt basis. *See* Plaintiffs' Daubert Motion [ECF 237] ("Ps' Opening Br.") at 7:25-8:25. Dr. Walker's unreliable opinion demonstrates a flawed conceptual understanding of mileage rates, and would mislead the jury that wear and tear and other incremental costs were not incurred and/or are not recoverable under the law.

**F.    Dr. Walker does not rely on sound legal assumptions, but rather draws inadmissible legal conclusions**

Exel attempts to reframe Dr. Walker's testimony as merely relying on legal assumptions rather than drawing legal conclusions. *See* Ds' Opp. at 10:3-16. As discussed above, this vague distinction does not square with Exel's simultaneous admission that Dr. Walker's entire goal was to demonstrate that Plaintiffs' experts "did not meet acceptable standards for presenting reliable proof." *See* Ds' Opp. at 2:5-9. Indeed, by definition, determining the "acceptable standard" involves a determination as to what is sufficient proof under applicable law.[4] Rather than addressing Mr. Breshears' methodology, Dr. Walker is merely contending that the legal assumption on which Mr. Breshears relied is incorrect. *See id.* at 12:10-12 (acknowledging that

---

[4] Exel's criticism of Mr. Breshears' analysis of the meal period claims is simply to state that Plaintiffs' legal theory of recovery is wrong. *Id.* at 10:18-11:26. However, there is no basis for either Exel or Dr. Walker to make this conclusion. For example, Exel's uniform policy of requiring drivers to be perpetually responsible for ensuring the safety of the trucks and their cargo means that Class Members are not provided any off-duty time at all. *See* 2009.06.09 DLSE Op. Ltr. at 5 (finding that policy preventing truck driver from leaving truck unattended resulted in meal periods being on-duty); *Bono Enterprises, Inc. v. Bradshaw*, 32 Cal. App. 4th 968, 975 (1995) (equating on duty for purposes of meal periods with restraints that prevent the employees from using the time effectively for their own purposes). Aside from the on-duty issue, it will be Exel's burden of proof to demonstrate that compliant breaks were taken, once Plaintiffs show that the policy was systemically flawed. *See* Ps' Opp. to Ds' Combined Mtn.") at 11:19-14:22 Exel relies on inapplicable cases in opposition *See* Ds' Opp. at 11:10-26 (relying on 10th Circuit authority and an inapposite DLSE opinion letter stating that employees may be off duty if they have to respond to pages). In this respect, Dr. Walker indeed relied on an "invalid conclusion of law[,]" notwithstanding Exel's assertions to the contrary. *See* Ds' Opp. at 10:10-13. This analysis is unchanged by the "small subset" of records which Exel claims contain a space allowing Drivers to write in whether they took a break, and show drivers "recording breaks 68% of the time." *See* Ds' Opp. at 12:2-4. These records admittedly reflect only a small subset of Exel's overall records, most of which do not even include a space for drivers to enter meal periods taken. Exel also does not even attempt to argue that the recorded breaks meet the timing requirements of the Labor Code, and nor could it, as Mr. Breshears' analysis shows any "breaks" shown on these documents are noncompliant over 90% of the time. *See* Ps' Opp. to Ds' Combined Mtn. at 13:19, n.12.

1  Dr. Walker's charge was to explain why Mr. Breshears' approach was "insufficient.").  This is no

2  different than offering a legal conclusion, and is not helpful to the jury.

3          As just one other example, Exel misconstrues Dr. Walker's "corrections" to Mr. Breshears

4  damages analysis as mere commentary on methodology to conveniently suit its present interests.

5  As discussed in Plaintiffs' opening brief, Dr. Walker does not merely rely on legal assumptions,

6  but rather draws the legal conclusions that several categories of expense reimbursements should

7  simply be excluded as unrecoverable. *See, e.g.,* Walker Report at ¶¶ 56-57; 88; 93; 96.  Thus, Dr.

8  Walker's testimony is indistinguishable from legal conclusions and should be excluded.

9          **G.      Prejudicial methodological flaws render as moot any marginal relevance of**
           **Dr. Walker's rebuttal to Mr. Breshears' "savings to Exel" analysis**

10         Exel argues that Dr. Walker's lengthy examination of why Class Members may have been

11  better off financially as independent contractors is somehow relevant because Mr. Breshears

12  provided a calculation of Exel's own projected savings from reclassifying its employee delivery

13  drivers as independent contractors. *See* Ds' Opp. at 12:13-23.  Notably, Mr. Breshears' analysis

14  did not comment on the theory of restitution underlying Plaintiffs' claim under California's Unfair

15  Competition law, which alleges that Exel's unlawful misclassification scheme gave it an unfair

16  competitive advantage, resulting in savings to Exel and commensurate losses to Class Members.

17  *See* Cal. Bus. & Prof. Code § 17200; Consolidated First Amended Complaint [ECF 65] at ¶¶ 173-

18  180. Rather, Mr. Breshears merely calculated Exel's total savings, assuming as true Exel's own

19  figures regarding its savings per truck and the number of trucks. *See* Exhibit 5, Expert Report of

20  David Breshears ("Breshears Report") at ¶¶ 49-52.  In this respect, Mr. Walker's commentary on

21  the viability of Plaintiffs' theory of restitution does not rebut Mr. Breshears' analysis, and should

22  be stricken as irrelevant.

23         In contrast, Dr. Walker's attempt to demonstrate that drivers classified as independent

24  contractors earned more, on average, than the second drivers that they managed for Exel's benefit,

25  is methodologically flawed. Walker Report, at Section IV; ¶¶ 16-30.  As discussed in Plaintiffs'

26  opening brief, instead of using wage rates of employee drivers determined in a market free from

27  unlawful misclassification, Dr. Walker uses the wages of Exel's second drivers—who were paid

REPLY MEMORANDUM ISO PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE,
UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER

directly by Class Members in an environment tainted by misclassification—as a proxy for the "market" rate for employee drivers. *See id.* at ¶¶ 27-30.   Moreover, Dr. Walker relied on extrapolation from a non-representative sample of class member testimony to determine a "market" rate. *See id.* at ¶ 27, n.9.  Wage figures determined within an unlawful environment like Exel's misclassification scheme are "tainted variables" because the unlawful environment skews their value and conceals disparities. *Cf. Butler v. Home Depot, Inc.*, 1997 WL 605754, at *11 (N.D. Cal. Aug. 29, 1997) (denying motion for summary judgment where the defendant's statistical analysis depended on the "tainted variable" of starting wages, which were affected by an environment of gender discrimination).

Exel argues that this flaw "goes only to the weight of Dr. Walker's testimony, not the nature of his expertise." Ds' Opp. at 13:1-14.  Not so.  Indeed, methodological errors that render conclusions unreliable are inadmissible because they are prejudicial and misleading. *See, e.g. Moisenko v. Volkswagenwerk Aktiengesellschaft,* 198 F.3d 246, 1999 WL 1045075 at *4 (6th Cir.1999) (finding that the absence of a reliable methodology forms the basis to exclude expert testimony as prejudicial); *Botnick*, 484 F. Supp. 2d at 721 (excluding expert's testimony and reasoning that "the introduction of his hypothesis without a reliable methodology implicates the jury prejudice concerns enunciated in Fed.R.Evid. 403.").  Thus, the methodological flaws in Dr. Walker's comparison between employee driver wages and independent contractor driver wages do not merely go to the weight of the evidence, but must be stricken entirely to prevent prejudice.

## III.   CONCLUSION

For all the foregoing reasons, Plaintiffs' *Daubert* motion should be granted.

Respectfully submitted,

Dated:  March 18, 2016

SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP


/s/ *Joshua G. Konecky*
Joshua G. Konecky
Counsel for Plaintiffs

REPLY MEMORANDUM ISO PLAINTIFFS' DAUBERT MOTION TO EXCLUDE SPECULATIVE,
UNSUBSTANTIATED AND LEGAL OPINION TESTIMONY OF JONATHAN WALKER

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2016, I electronically filed the foregoing document with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to all CM/ECF participants.

*/s/ Joshua Konecky*
Joshua Konecky (SBN 182897)
SCHNEIDER WALLACE
COTTRELL KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
jkonecky@schneiderwallace.com