1

2

3

4                           UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6

7    DANIEL VILLALPANDO, et al.,

                    Plaintiffs,                    Case No.  12-cv-04137-JCS

8
            v.
9                                                  **ORDER RE MOTIONS IN LIMINE**

10   EXEL DIRECT INC., et al.,

                    Defendants.
11

12

## I.      INTRODUCTION

In preparation for a jury trial that commences on May 31, 2016, the parties have filed

fifteen motions in limine ("the Motions").   The Court's rulings on the Motions are set forth

below.[1]

## II.     ANALYSIS

Many of the parties' motions in limine relate to a relatively small number of highly

contentious issues.  Therefore, the Court starts its analysis by addressing these issues and then

addresses the remaining motions in limine individually.[2]

### A.     General Legal Standards Governing Motions in Limine

In the Motions, the parties seek exclusion of certain evidence and arguments pursuant to

Rules 401, 402 and 403 of the Federal Rules of Evidence.  Rule 401 provides that "[e]vidence is

relevant if . . . it has any tendency to make a fact more or less probable than it would be without

the evidence; and . . . the fact is of consequence in determining the action."  Rule 402 provides

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] On the evening of May 18, 2016, Plaintiffs filed a motion for leave to file a late motion in limine. *See*  Docket No. 307.  The Court defers ruling on Plaintiffs' MIL No. 8 pending further briefing.

that "[i]rrelevant evidence is not admissible."  Rule 403 gives the trial court discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

### B. Whether the Class Members With Second Drivers Should be Excluded From the Class and Related Issues (Defendants' MIL Nos. 3 & 5; Plaintiffs' MIL No. 3))

#### 1. Background

In its April 21, 2016 Order ("April 21 Order"), the Court declined to decertify the Class as to individuals who employed second drivers, concluding that "the legal and factual issues that relate to class members who have used second drivers do not require decertification of the class, but instead can be managed through the creation of a subclass of class members who used a second driver during the class period."  April 21 Order at 19.  The Court noted that the Class members who employed second drivers (hereinafter, "Second Driver Subclass") might be able to recover expenses of both the first and second drivers on the theory – advanced by Plaintiffs at the April 20 hearing – that they constitute a single, unitary "employee" under the California Labor Code.  The Court further noted, however, that if it ultimately rejected Plaintiffs' theory, it might "reconsider the question of whether the Class should be decertified as to the individuals who used second drivers because it does not appear the Plaintiffs have offered sufficient evidence to show liability or damages for these class members if their second drivers are not included." *Id*. Plaintiffs' "unitary employee" theory and Defendants' renewed request to decertify as to these class members are addressed in Defendants' MIL No. 5 (to exclude evidence regarding Second Driver Subclass and to decertify class).  The closely related question of whether class members can recover  for hours worked, routes driven or expenses incurred by second drivers is addressed in Defendants' MIL No. 3 (to exclude evidence and argument regarding hours worked, routes driven, breaks denied, and expenses incurred by second drivers).  Finally, these questions also have implications for Plaintiffs' MIL No. 3 (to exclude evidence or argument concerning class members' alleged entrepreneurial opportunities and business experience).

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 2.   Summary of Arguments

Plaintiffs argue that the class members with second drivers can recover unpaid wages, meal and rest break penalties and expenses not only for the days when they personally drove a truck for Exel but also for the days when the Exel routes were driven by their second drivers, citing California Labor Code section 3357 ("Any person rendering service for another, other than as an independent contractor, or unless expressly excluded herein, is presumed to be an employee") and 18 (defining "Person" as "any person, association, organization, partnership, business trust, limited liability company, or corporation").  Opposition (Defendants' MIL No. 3) at 1-2; Opposition (Defendants' MIL No. 5) at 1.  According to Plaintiffs, the plain language of these provisions makes clear that a "person" under the Labor Code is not limited to a natural person. Opposition (Defendants' MIL No. 3) at 2.  Plaintiffs further point to the remedial purpose of the Labor Code, which generally requires that it be construed broadly.  *Id*.  Plaintiffs contend their position is supported by the fact that "courts in this Judicial District have certified classes of 'employees' bringing claims under the Labor Code that include both individuals and entities." *Id*. at 3 (citing *Bowerman v. Field Asset Servs., Inc*., No. 13-CV-00057-WHO, 2015 WL 1321883, at *1, 11 (N.D. Cal. Mar. 24, 2015); *Saravia v. Dynamex, Inc*., 310 F.R.D. 412, 424 (N.D. Cal. 2015) (Alsup, J.); *De Giovanni v. Jani-King Int'l, Inc*., 262 F.R.D. 71, 87 (D. Mass. 2009)).

Plaintiffs also advance an alternative theory that would allow class members to recover damages incurred by second drivers, namely, that these damages are necessary expenses of the class members under California Labor Code section 2802.  *Id*.  Plaintiffs seem to contend that this theory applies not only to the expenses incurred by the second drivers and the chargebacks taken out of class members' compensation for items attributable to the second drivers but also the uncompensated time of second drivers and the damages associated with their missed meal and rest breaks.  *See id*.  In their Opposition to Defendants' MIL No. 5, though, Plaintiffs don't mention the meal and rest periods taken by second drivers, arguing that class members with second drivers "should be reimbursed for the out-of-pocket costs of enlisting second drivers to perform routes as an expense under Labor Code section 2802.  Opposition (Defendants' MIL No. 5) at 4.  Plaintiffs cite the testimony of Defendants' expert that the "market rate" for second drivers' daily wages is

United States District Court
Northern District of California

1    $120-150 per day.  *Id.*

2        If the Court rejects these arguments, however, Plaintiffs contend the data and analysis of

3    their expert, Mr. Breshears, allows the damages attributable to second driver work to be excluded

4    from their damages estimate.  *Id.* at 4-5.  They point to Breshears' deposition testimony that he

5    could "break up the data into separate slices, and for those days actually driven by the contractor

6    or those weeks where the contractor worked, and then those weeks that show no activity by the

7    contractor."  Piller Opposition Decl., Ex. 1 (Breshears Dep. at 200).  They also point to an

8    "alternative analysis" performed by Breshears, described in a March 11, 2016 declaration that was

9    filed with Plaintiffs' opposition to Defendants' combined *Daubert*/ Decertification motion.  *See*

10   Docket No. 242-4.  According to Plaintiffs, in this alternative analysis, Breshears incorporated the

11   assumptions of Exel's expert, Dr. Walker, which did not take into account any time worked or

12   miles driven by second drivers."  Opposition (Defendants' MIL No. 5) at 5 (citing Docket No.

13   242-4, Breshears Decl., ¶ 10).   Plaintiffs also argue that they should not be penalized for

14   Defendants' failure to keep accurate records,  that they can rely on just and reasonable inference to

15   establish their damages and that damages can be reduced, if necessary, based on the proportion of

16   all routes that Dr. Walker estimates were driven by second drivers (39%).  *Id.* at 5-6.

17       Finally, Plaintiffs argue class members who hired second drivers should not be excluded

18   from the class because some class members used second drivers for only a short period of time

19   (e.g, Alcala used a second driver for six months out of a total of six years with Exel) and

20   decertification as to these class members would be unfair.  *Id.* at 7.  Further, in Plaintiffs' MIL No.

21   3, Plaintiffs argue that Exel should not be permitted to argue or present evidence that class

22   members had "entrepreneurial  opportunities" in connection with the use of second drivers as the

23   prejudice that could result  would outweigh any probative value under Rule 403.  Plaintiffs' MIL

24   No. 3 at 1.

25       Defendants reject Plaintiffs' "entity employee" theory, arguing that under the Labor Code,

26   an employee is a natural person.  Defendants MIL No. 5 at 1.  Exel contends the Labor Code

27   "consistently frames employee status in terms of *natural persons,*" citing provisions in which the

28   words "his or her" are used to refer to the word "employee."   *Id.* at 2.  Exel also points to Wage

Order No. 9, in which the term "employee" is defined as "any person employed by an employer" whereas the term "employer" is defined as "any person *as defined in Section 18* of the Labor Code, who directly or indirectly, or through an agent or any other person, employs or exercises control over the wages, hours, or working conditions of any person." *Id*. at 2 n. 2 (IWC Wage Order 9, §§ 2(F), 2(G) (emphasis added).

Exel further asserts that the terms "labor" and "wages" refer to work that was personally performed by the employee. *Id*. at 3 (citing Cal. Labor Code sections 200(a) (defining "wages" as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation") and 200(b) (defining "labor" as "including labor, work, or service whether rendered or performed under contract, subcontract, partnership, station plan, or other agreement if the labor to be paid for is *performed personally by the person demanding paymen*t") (emphasis in Exel's brief). Exel contends Plaintiffs' claims for minimum wage, overtime, payment for all hours worked and unlawful wage deductions all depend on the existence of "wages" and therefore, cannot be based on the labor of the second drivers. *Id*.

Exel also argues that "the claims for meal and rest pay depend on proving that the employer failed to provide that employee with a meal or rest break during that employee's workday." *Id*. at 4 (citing Cal. Labor Code § 226.7(c) ("If an employer fails to provide an employee a meal or rest or recovery period in accordance with a state law . . ., the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest or recovery period is not provided"); 8 Cal. Code Regs. § 11090, sec. 12 ("Every employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period"). Exel also argues that the language of section 2802, for reimbursement of employment-related expenses, supports the conclusion that it entitles a class member only to his *own* expenses and not that of a second driver, requiring employees indemnify the "employee for all necessary expenditures or losses *incurred by the employee* in direct consequence of the *discharge of his or her duties." Id*. (emphasis in original).    To the extent the UCL and PAGA claims derive from the alleged Labor Code

5

1    violations, Exel asserts, the same requirement applies to those claims.  *Id*. at 4.

2        In its trial brief, Exel rejects Plaintiffs' assertion that courts in this judicial district have

3    "regularly certified classes of 'employees' bringing claims under the Labor Code that include both

4    individuals and entities," distinguishing the two cases cited by Plaintiffs that were decided in this

5    District (*Bowerman* and *Saravia*) and noting that the third case cited by Plaintiffs was decided in

6    Massachusetts and the court did not apply California law in that case.   Defendants' Trial Brief at

7    39 (quoting Plaintiffs' Opposition to Defendants' MIL No. 5 at 2).   In fact, Exel argues, there is

8    no authority that supports Plaintiffs' entity employee theory.  *Id.*

9        Because Plaintiffs' "entity employee" argument fails, Exel contends, evidence relating to

10   the hours worked, routes driven, breaks denied and expenses incurred by second drivers is

11   irrelevant and prejudicial and should be excluded.  Defendants' MIL No. 3 at 1.  Further,

12   Defendants assert, Plaintiffs should be required to "prove *up front* that the class members

13   personally worked all hours, drove all routes, missed all breaks, paid all expenses, etc., for which

14   they are offering evidence."  *Id*.   In Defendants' MIL No. 5, they also argue that the Second

15   Driver Subclass must be decertified because common issues do not predominate.  Defendants'

16   MIL No. 5 at 6.  This is because each class member with second drivers would have to prove that

17   "he personally worked specified hours, drove routes, missed breaks, or incurred expenses on any

18   given  day, and that those are not attributable to his second driver."  *Id*. at 6.

19       Even if class members could recover the costs of the second drivers under Plaintiffs'

20   alternative theory (treating the costs associated with using second drivers as an employee expense

21   under California Labor Code section 2802), Exel argues that this approach also would require

22   individualized inquiries that would predominate.  Defendants' Trial Brief at 40.  Exel uses fuel as

23   an example:  while Plaintiffs assert that something like fuel is still an out-of-pocket expense of the

24   class member regardless of whether the class member or the second driver drove the truck, Exel

25   contends there is no way to know if this is true because it has never had the opportunity to depose

26   the second drivers to discover whether it is the second driver or the class member who bears the

27   cost of the fuel.  *Id*.  Nor is there any evidence that there was a uniform practice as to who pays for

28   fuel when a second driver is used.  *Id*.  Moreover, Exel contends, Plaintiffs' experts "have not

United States District Court
Northern District of California

prepared any analysis to provide quantitative support for the Plaintiffs' new theory that class members now make claims for unreimbursed out-of-pocket expenses incurred by second driver payments." *Id*. at 41.

Finally, Exel now offers evidence that the Second Driver Subclass  – which appeared to be relatively small at the time of the Court's April 21 Order – includes 164 class members and not the approximately 12 class members the Court believed used second drivers. *See* Declaration of Landrie Weaver [Docket No. 283] ¶ 4.  According to Weaver, these 164 class members employed a total of 468 second drivers. *Id*.  Exel points out that at the April 20 hearing, the Court relied, in part, on the small size of the subclass in support of its conclusion that the individual issues raised by class members with second drivers were manageable and did not require decertification.  *Id*. at 40 n. 16.

### 3.  Discussion

Having considered the arguments of the parties in their motions in limine and trial briefs, and in light of the new evidence offered by Exel indicating that the Second Driver Subclass is significantly larger than the Court previously believed, the Court now reconsiders its previous conclusion that creation of that subclass will adequately address the problems of manageability that are likely to arise in connection with the claims of these individuals.  Instead, for the reasons set forth below, the Court concludes that the Class must be partially decertified.  Specifically, the Court decertifies the Class as to damages with respect to all class members who are in the Second Driver Subclass.  In addition, as to liability, the Court decertifies the Second Driver Subclass as to the Overtime claim only.

First, the Court is not persuaded by Plaintiffs' argument that the Class members who used second drivers may recover damages for hours worked, miles driven and expenses incurred by second drivers on the basis that the term "employee" encompasses entities under the California Labor Code.  The Court agrees with Exel that the definitions of "wages" and "labor" under California Labor Code section 200 support the conclusion that employees are natural persons who are entitled to wages only if they personally performed the work at issue.  Consequently, the claims for minimum wage and unpaid wages may not be asserted by the Second Driver Subclass

United States District Court
Northern District of California

United States District Court
Northern District of California

1   for time worked by second drivers.  Further, while deductions for second driver expenses were

2   taken directly from the settlement payments of the Second Driver Subclass members, the

3   settlement payments cannot be considered "wages" of those Class members to the extent they

4   were based on the work of the second drivers. The Court also agrees that the language of section

5   2802, for reimbursement of employee expenses, supports the conclusion that a Second Driver

6   Subclass member can recover only his *own* expenses.  Finally, the Court concludes that the meal

7   and rest break requirements apply only to *individual* employees.  While neither side has pointed to

8   any case law that addresses this question, the Court concludes that the meal and rest break

9   requirements as applied to an entity, as opposed to an individual, simply makes no sense.

10       Plaintiffs have not cited any authority that points to a contrary conclusion.  Neither

11   *Bowerman v. Field Asset Servs., Inc*., nor *Saravia v. Dynamex, Inc*., 310 F.R.D. 412, 424 (N.D.

12   Cal. 2015) held that an individual could recover wages or expenses owed to another individual on

13   the basis that the individuals constituted a single "entity" employee.   In *Bowerman*, the court

14   certified a class of "persons . . . [who] personally performed property preservation work" for

15   defendant FAS more than 70 percent of the time.  2015 WL 1321883, at *1 (N.D. Cal. Mar. 24,

16   2015).  The class members were "vendors" – a term the court used to refer to the individuals who

17   owned the businesses rather than the businesses themselves.  *Id*. at *1 n. 2.  Although the court

18   acknowledged that some of the vendors hired their own workers while others did not, *see id*. at

19   *12, nothing in the court's decision suggested that the class members would be able to recover

20   damages for work performed by individuals who were not members of the class.  In *Saravia*, the

21   court granted conditional certification under the FLSA to a class of delivery drivers who alleged

22   that they were misclassified.  310 F.R.D. at 424.  The court cited the lenient standard applied at the

23   conditional certification stage case.  *Id*.  It simply did not address the issue before the Court here.

24   Nor did the court in *De Giovanni v. Jani-King Int'l, Inc*. address that issue (under Massachusetts or

25   California law).   Therefore, the Court finds that the cases cited by Plaintiffs do not support their

26   position.

27       Having found that Second Driver Subclass members may not recover for the alleged Labor

28   Code violations based on the work performed or expenses incurred by the second drivers, the

United States District Court
Northern District of California

1   Court revisits the question of whether Plaintiffs' claims meet the predominance requirement of

2   Rule 23.  The challenge appears to be determining as to these class members what proportion of

3   the driving was personally performed by the class member and what proportion of the driving was

4   done by second drivers.  From this information a jury could potentially determine, at least by

5   reasonable inference, the amount of time Second Driver Subclass members may have spent in

6   morning meetings, the number of meal and rest breaks they may have missed, the deductions

7   taken from their "wages" and their reimbursable expenses, all of which would need to be

8   determined by the jury to come up with an overall damages figure for the Second Driver Subclass.

9   Yet Plaintiffs do not point to any evidence or expert opinion that will allow the jury to determine

10  for the Second Driver Subclass how much time the class members drove.  Although Plaintiffs

11  contend the iDirect data will allow them to identify who actually drove specific routes, that data

12  only covers a subset of drivers.  In addition, even assuming Mr. Breshears' recent declaration was

13  timely, it does not solve the problem because he has not performed an analysis that separates out

14  the Second Driver Subclass from the remaining Class members in a manner that would permit the

15  jury to draw inferences as to the amount of time and number of days these class members drove

16  for the purposes of determining liability on the overtime claim or damages for all of the claims.

17          Nor is the Court persuaded by Plaintiffs' assertion that this problem can be solved by

18  treating the cost of the second drivers to the Second Driver Subclass as a reimbursable expense

19  under California Labor Code section 2802.  Assuming section 2802 allows for such a recovery,

20  Plaintiffs have not demonstrated that there was any common practice as to how second drivers are

21  paid that would allow a jury to address this question for the Second Driver Subclass as a whole.

22  Nor have Plaintiffs demonstrated that they can establish the expenses of the second drivers by

23  common proof.  In short, the Court concludes that individual issues relating to how much Second

24  Driver Subclass members personally drove and what expenses they personally incurred will

25  overwhelm the common issues, making the determination of damages by the jury unmanageable

26  for this Subclass as to all of Plaintiffs' claims.  Similarly, because liability on the overtime claim

27  for the Second Driver Subclass will require the jury to determine whether the Second Driver

28  Subclass members drove more than 40 hours in a week and eight hours in a day – and because

9

1    Plaintiffs have not demonstrated that this question can be decided on the basis of common proof –

2    the Court concludes that the Second Driver Subclass must be decertified as to liability on the

3    overtime claim.

4           On the other hand, the Court concludes that the problems of common proof discussed

5    above do not apply to proving liability on the remaining claims, apart from the overtime claim.

6    These claims do not depend on the amount of time the Second Driver Subclass members drove for

7    Exel, the precise number of meal and/or rest breaks missed, or the amount of any reimbursable

8    expenses or deductions.  Rather, as to liability the jury need only decide that all Second Driver

9    Subclass members' rights were violated.  Plaintiffs intend to prove liability based on Exel's

10   policies and procedures and all Class members, including the Second Driver Subclass members,

11   have personally driven for Exel.  Regardless of what the jury concludes, this approach to proving

12   liability is manageable.  Therefore, the Second Driver Subclass will not be decertified as to

13   liability on Plaintiffs' claims for minimum wages, pay for all hours worked, missed meal periods

14   and rest periods, deductions from wages and reimbursement of expenses.

15          In connection with the partial decertification of the Class, the Court also concludes that the

16   Class should be divided into two subclasses: the Second Driver Subclass and another subclass that

17   consists of all of the remaining Class members, that is, the Class members who did *not* use second

18   drivers at any time during the class period (the "Single Driver Subclass").  In creating their revised

19   verdict form the parties should ask the jury to determine liability separately for each of the

20   subclasses as to all claims except for the overtime claim, which should address only the Single

21   Driver Subclass.  The damages verdict form should address only the Single Driver subclass as the

22   Second Driver Subclass is decertified as to damages.

23          Based on the foregoing analysis, the Court GRANTS Defendants' MIL No. 3 to the extent

24   that Plaintiffs will not be permitted to introduce evidence relating to the hours worked, routes

25   driven, breaks missed or expenses incurred by second drivers.   On the other hand, the Court

26   DENIES Defendants' MIL No. 3 to the extent Exel asserts Plaintiffs must "prove up front" that

27   that the class members "personally  worked all hours, drove all routes, missed all breaks, paid all

28   expenses, etc. for which they are offering evidence, as this issue is now moot.   The Court also

United States District Court
Northern District of California

1   GRANTS Plaintiffs' MIL No. 3 as to evidence relating to entrepreneurial activities on the basis

2   that such evidence is no longer relevant to Plaintiffs' claims, though the Court may permit Exel to

3   introduce such evidence at trial if it can make a specific showing to the Court that the evidence at

4   issue is relevant to Plaintiffs' claims and/or Exel's defenses.   The Court also GRANTS in part and

5   DENIES in part Defendants' MIL No. 5 by partially decertifying the class as set forth above.

6   **C.    Whether Exel Should Be Permitted to Argue and Present Evidence that it Paid
7           Enhanced Compensation to Cover Morning Meeting Time, Expenses and Meal
        and Rest Breaks (Plaintiffs' MIL No. 1)**

8           **1.  Background**

9           In the parties' Proposed Final Pretrial Order, Exel lists as one of its defenses that

10  "Plaintiffs cannot recover for reimbursement of expenses, because Exel already reimbursed them

11  for expenses, and Exel is entitled to a set-off."  Proposed Final Pretrial Order at 4.  It appears that

12  Exel intends to assert analogous defenses as to Plaintiffs' claims for minimum wage, unpaid

13  wages and deductions from wages.   In particular, with respect to the minimum wage and unpaid

14  wages claims, Exel contends in its Opposition to Plaintiffs' MIL No. 1 that "[t]he stop rate was

15  intended to cover all steps necessary to perform delivery services, and class members knew this."

16  Because the morning meetings were of "like character" to the deliveries drivers performed, Exel

17  argues, this time was included in the stop rate.  Opposition (Plaintiffs' MIL No. 1) at 7;  *see also*

18  Defendants' Proposed Jury Instruction No.4 (Non-Payment of Minimum Wage -- Essential

19  Factual Elements) (citing *Balasanyan v. Nordstrom, Inc.*, 913 F. Supp. 2d 1001, 1006 (S.D. Cal.

20  2012)).

21          With respect to the allegedly unlawful deductions, Exel appears to advance a similar

22  defense, including in its proposed jury instruction the following language:  "Exel claims that it did

23  not deduct from wages but rather from weekly payments that included advances on payments of

24  expenses, and that were recovering amounts already expended by Exel on the class members'

25  account . . . ."  Defendants' Proposed Jury Instruction No. 23.  In the Proposed Final Pretrial

26  Order, the parties also include the following "factual issue" to be tried for the "Deductions From

27  Wages" claim:  "Does the law permit Exel to argue that its settlement payments cover expenses as

28  well as wages, and if so, did they?"  Proposed Final Pretrial Order at 7.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    It does not appear that Exel is asserting that the stop rate included compensation for rest

2    breaks but Exel *does* contend that to the extent Plaintiffs are seeking to recover minimum wages

3    for rest breaks that class members have taken (as opposed to premium pay for breaks denied), the

4    claim has been waived.  *See* Exel's Brief Explanation of Position re: Instruction No. 18.

5              **2.   Summary of Arguments**

6         In their MIL No. 1, Plaintiffs argue that "Exel should be precluded from introducing or

7    soliciting any testimony or argument suggesting, directly or indirectly, that its independent

8    contractor compensation pay structure included payments for expenses, rest periods, overtime or

9    minimum wage." Plaintiffs' MIL No. 1 at 1.   Plaintiffs first point to *Estrada v. FedEx Ground*

10   *Package Sys., Inc*., 154 Cal. App. 4th 1, 15 (2007) and *Smith v. Cardinal Logistics Mgmt. Corp*.,

11   2009 WL 2588879, at *3 (N.D. Cal. Aug. 19, 2009) (Conti, J.), arguing that in these cases the

12   courts held "under strikingly similar circumstances that a nearly identical compensation scheme as

13   Exel's here does not cover expense reimbursements." *Id*. at 2.  Plaintiffs contend the Court should

14   following the reasoning and holdings in those cases to bar Exel from asserting the same defense

15   here.  *Id*. at 2-3.

16        Plaintiffs further contend that Exel cannot rely on its "lump sum" defense because

17   employers who use such an approach to meet their obligations under Labor Code § 2802 must

18   "actually apportion the expense reimbursements from the wages."  *Id*. at 3 (citing *Gattuso v.*

19   *Harte-Hanks Shoppers, Inc*., 42 Cal. 4th 554, 573 (2007)).   According to Plaintiffs, Exel has

20   admitted that the alleged expense reimbursements are *not* apportioned.  Therefore, Plaintiffs ask

21   the Court to hold, as a matter of law, that Exel has not satisfied *Gattuso* and may not assert this

22   defense.  *Id*.  Plaintiffs also contend that Exel cannot argue both that expenses are variable (and

23   therefore may not be handled on a class-wide basis) and that it pays a flat rate to reimburse

24   expenses as these two arguments are contradictory.  *Id*. at 4.  Plaintiffs also object to Exel's

25   assertion that the stop rate was "sufficient" to cover employee expenses, arguing that this term is

26   "subjective and meaningless."  *Id*. at 5.

27        Plaintiffs argue that Exel should also be precluded from arguing that the deductions taken

28   from Plaintiffs' settlement payments are covered by Exel's compensation structure, citing *Smith v.*

*Cardinal Logistics*.  *Id*.  Similarly, Plaintiffs contend Exel should not be permitted to claim that its compensation structure covers time spent taking rest breaks.  *Id*. at 5-6 (citing *Bluford v. Safeway Stores, Inc.,* 216 Cal. App. 4th 864, 872 (2013)).  Nor should it be permitted to argue that the compensation structure covers morning meetings.  *Id*. at 6 (citing *Gonzales v. Downtown Motors, LP*, 215 Cal. App. 4th 314, 323 (2005);  *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005)).

Plaintiffs contend Exel's arguments related to their allegedly "enhanced" compensation scheme are simply intended to appeal to the jury's emotions and will be prejudicial as well as confusing to the jury.  *Id*. at 6-7.

Exel opposes Plaintiffs' MIL No. 1 on the basis that it is a summary judgment motion disguised as a motion in limine and argues that it should not be permitted.  Opposition  (Plaintiffs' MIL No. 1) at 2-3.  Exel further contends *Estrada* and *Smith v. Cardinal Logistics* do not support Plaintiffs' position because those cases were decided on their specific facts and not as a matter of law.  Exel also rejects Plaintiffs' assertion that Exel's witnesses admit that the alleged reimbursement included in the stop rate is not apportioned.  *Id*. at 5-6.  This is a question of fact, according to Exel, and Exel plans to offer evidence that meets the requirements of *Gattuso*.  *Id*. at 5-6.  In particular, Exel plans to offer evidence showing that the rates of compensation were sufficient to fully reimburse drivers for all their necessary expenses.  *Id*. at 6.  According to Exel, it will also "offer evidence of the cost estimates used to construct the stop rate – estimates that are actually *higher than those proposed by Plaintiffs' expert* Mr. Curtis, as he admits.  *Id*. (emphasis in original).  Exel asserts that "[t]hese estimates, viewed in context of Exel's revenue projections across estimated numbers of stops, provide the basis to easily calculate the 'apportionment' between wages and expense reimbursement . . . ."  *Id*. (citing *Gattuso*, 42 Cal. 4th at 573).  Exel notes that under *Gattuso*, a flat payment can cover variable expenses such as mileage.  *Id*.

As discussed above, Exel also argues that the morning meeting time is covered in the stop rate because it is related to the Plaintiffs' delivery work, and that any claim for minimum wages for rest breaks taken has been waived. *Id*. at 7.

United States District Court
Northern District of California

13

### 3.  Discussion

#### a.   Reimbursement and Deduction Claims

Exel's defense to Plaintiffs' reimbursement and deduction claims is based on *Gattuso v. Harte-Hanks*, 42 Cal. 4th 554, 568 (2007).  In that case, the plaintiffs were sales representatives who used their own vehicles in the performance of their jobs and sought reimbursement from their employer under California Labor Code section 2802 for the automobile expenses they actually and necessarily incurred in performing their employment tasks.  42 Cal. 4th at 567.  The defendant did not dispute that it was required to reimburse its employees for their necessarily incurred expenses under section 2802.  *Id*.  The only dispute was whether the employer could meet its obligations "through an increase in overall compensation rather than through a separately identified reimbursement payment."  *Id*. at 568.  The Court found that it could, reasoning that "[n]othing in the language of section 2802 restricts the methods that an employer may use to calculate reimbursement, and we are required to construe section 2802 in a manner that produces a workable and reasonable result."  Thus, for example, "[i]f . . . an employee drives exactly the same route day after day, so that the mileage driven varies little if at all from one day to the next, it would be unreasonable to require a meticulous record of actual miles driven.  In that situation, an employer should be able to dispense with actual mileage reports and calculate a lump-sum payment based on the employer's knowledge of the distances that an employee must drive to perform the duties of the employee's job."  *Id*. at 570-71.

The *Gattuso* court also found, however, that if an employer uses a lump sum payment, the "employee must be permitted to challenge the amount of a lump-sum payment as being insufficient under section 2802," by comparing the amount of the lump sum to the employee's actual expenses or to an estimate based on mileage.  *Id*. at 571.  Thus, while the employer may reimburse employees under section 2802 by paying an enhanced salary, the employer must:

> provide some method or formula to identify the amount of the combined employee compensation payment that is intended to provide expense reimbursement. Using that method or formula, the employee (and also officials charged with enforcement of state and federal wage laws) then can readily determine whether the employer has discharged all of its legal obligations as to both wages and business expense reimbursement. Although section 2802 does not

14

> expressly require the employer to provide an apportionment method, *it is essential that employees and officials charged with enforcing the labor laws be able to differentiate between wages and expense reimbursements.* Because providing an apportionment method is a practical necessity for effective enforcement of section 2802's reimbursement provisions, it is implicit in the statutory scheme.

*Id.* at 573 (emphasis added); *see also id.* at 574 ("As we have explained, an employer that uses salary and/or commission increases to discharge its reimbursement obligation must also communicate to its employees the method or basis for apportioning any increases in compensation between compensation for labor performed and business expense reimbursement. Such a requirement, as noted, is necessary for effective enforcement of section 2802's reimbursement provisions and, thus, implicit in the statutory scheme").

In *Smith v. Cardinal Logistics*, Judge Conti addressed the apportionment requirement under circumstances that appear to be similar to the facts of this case. There, the plaintiffs were delivery drivers who were hired by defendant Cardinal as independent contractors and paid based on the number of deliveries they completed. 2009 WL 2588879, at *1 (N.D. Cal. Aug. 19, 2009). The drivers asserted they were misclassified and sought to recover necessarily incurred expenses under Labor Code section 2802. *Id.* at *2. Before they were hired, Cardinal provided drivers with "Worksheets that detailed a driver's estimated gross revenue or earnings, estimated operating expenses or equipment charges that would be deducted from gross revenue, and estimated net revenue or earnings." *Id.* at *1. In addition, after they began driving for Cardinal the drivers received a weekly "Settlement Sheet" from Cardinal listing their taxable earnings (based on the number of deliveries they performed) and certain deductions. *Id.* Cardinal sought summary judgment that it met its obligations under section 2802 "because based on the Earnings Worksheets and the Settlement Sheets, the drivers can identify the portion of compensation attributable to expense reimbursement, and they have been fully reimbursed for their necessary expenses." *Id.* at *3. The Court disagreed, however. *Id.*

Judge Conti found not only that there were fact questions as to whether the rates paid were "sufficient to fully reimburse drivers for all necessary expenses." *Id.* at *4. He also concluded, as a matter of law, that Cardinal's "compensation system does not satisfy the test for expense

1    reimbursement established by the California Supreme Court in *Gattuso*." *Id.* He reasoned as

2    follows:

> Under Cardinal's system, there was no up-front, lump-sum payment
> that included a means of identifying the amount being paid for labor
> performed and the amount being paid as reimbursement for business
> expenses. Instead, the Earnings Worksheets merely provided the
> drivers with an estimate of rates per delivery and likely expenses.
> See Earnings Worksheet Class A Daycab; Earnings Worksheet
> Reno, NV; Earnings Worksheet San Francisco, CA. The only
> payment the drivers received occurred after expenses had already
> been deducted. See Figueroa Settlement Sheet; Rady Settlement
> Sheet; Smith Settlement Sheet. Cardinal wants the Court to treat
> these deductions as functionally equivalent to reimbursements. This
> system of compensation is too far removed from what the California
> Supreme Court had in mind. The Court will not treat it as equivalent
> to the lump-sum payment method endorsed by the California
> Supreme Court in *Gattuso*.

11   *Id.* [3]

12       Here, Exel plans to show that it paid a lump sum to reimburse employees for work-related

13   expenses and similarly, that the deductions listed on the settlement statements given to drivers

14   were simply to avoid double-counting for items that were also covered by these lump sum

15   payment. Exel does not dispute that the *Gattuso* apportionment requirement applies to both types

16   of expenses, whether Plaintiffs seek reimbursement or object to deductions. The evidence it plans

17   to offer to show the apportionment requirement is satisfied, however, appears to be deficient on its

18   face. As discussed above, Exel intends to offer evidence of the estimates that were used to come

19   up with the stop rates, which it contends -- when viewed in context of Exel's revenue projections

20   across estimated number of stops -- will allow for an "eas[y] calculation" of the apportionment

21   between wages and expense reimbursement. *Gattuso* is clear, however, that a lump sum payment

22

23   ───────────────

[3] Exel suggests Judge Conti was "confused as to how an item shown on a settlement statement as a
24   'deduction' could actually be a reimbursement." Defendants' Opposition to Plaintiffs' MIL No. 1.
     Exel explains that because "in Cardinal's model," Cardinal paid upfront for certain expenses such
25   as fuel and maintenance, these expenses had to be deducted from the settlement payments to avoid
     double-reimbursement because the stop-rate was *also* designed to cover these items. *Id.* The
26   undersigned does not agree with Exel that Judge Conti was confused. The issue in *Cardinal
     Logistics* and in this case is whether the information provided by the employer was sufficient for
27   the drivers to *verify* that the stop rate actually covered the items for which deductions were later
     taken. While neither Exel nor Cardinal is required to pay twice for employee expenses, they
28   cannot meet their obligations by simply stating that their stop rate covers these expenses; they
     must provide their employees with a means of determining whether these assertions are true.

United States District Court
Northern District of California

only satisfies an employer's obligations if the employee is given sufficient information to determine what part of his salary constituted "wages" and what part was for the reimbursement of expenses.  There is no authority to suggest that this obligation is satisfied if that information only becomes available through litigation, nor would such a rule comport with the reasoning of *Gattuso*.  Whether the jury will be able to easily calculate the amount of the lump sum payments using information that was not available to Exel drivers prior to this litigation  (such as the evidence Exel plans to offer showing the estimates it allegedly used to come up with its stop rates) is not the issue.

As Exel has not pointed to any evidence that Class members could have determined that either their unreimbursed expenses or the expenses that were later deducted from their pay were actually included in their settlement pay, it appears that Exel will be unable to prevail on this defense, as a matter of law.  Therefore, unless Exel can make a showing that it will be able to offer evidence from which a jury could reasonably conclude that the apportionment requirement is met, Exel will not be permitted to introduce evidence that the settlement payments were enhanced to include unreimbursed expenses or expenses for which deductions were later taken.

b.  Morning Meetings (Minimum Wage and Unpaid Wages Claims)

Plaintiffs also ask the Court to exclude evidence and arguments by Exel that time spent in morning meetings was covered by the piece rate that was paid to drivers because that time was related to the drivers' delivery work.  Plaintiffs rely on the rule announced in *Armenta v. Osmose* that California's minimum wage law, Labor Code section 1194, requires that employees be paid at least minimum wage for *each* hour worked and that the law is violated where an employer pays only for "productive time," even if the average  pay for all "productive" and "nonproductive time" combined meets or exceeds the minimum wage rate. 135 Cal. App. 4th 314, 324 (2005).  In that case, the employees were utility pole workers who were paid only for time when they were actually at work sites and not for time spent driving in the company vehicle between sites, even though the driving time was frequently used for "safety meetings, planning the day's work, training, and reviewing maps." 135 Cal. App. 4th at 318.  In *Gonzalez v. Downtown LA Motors, LP,* the court found that the rule in *Armenta* also applied to piece workers.  215 Cal. App. 4th 36,

United States District Court
Northern District of California

49 (2013).  In that case, the court held that a class of automatic service technicians who were paid on a piece-rate basis for repair work were entitled to separate  hourly compensation for time spent waiting for repair work or performing other non-repair tasks directed by the employer during their work shifts regardless of whether their average compensation for all hours work fell below the minimum wage.  *Id.* at 40.

Exel attempts to avoid the *Armenta* rule by arguing that the stop rate was intended to cover "all steps necessary to perform delivery services, and class members knew this."   The relevance of Class members' alleged knowledge is addressed in connection with Plaintiffs' MIL No. 2.  The Court addresses here whether there is any basis in California law for Exel to contend that the activities that occur before a driver leaves the warehouse are adequately compensated under California's minimum wage law.

Exel relies on *Balasanyan v. Nordstrom, Inc*., 913 F. Supp. 2d 1001, 1006 (S.D.Cal. 2012), in support of its assertion that it can meet its minimum wage obligation for the unpaid pre-trip time by averaging the piece rate paid over all hours worked.  That case, however, does not support Exel's position.  In *Balasanyan*, the plaintiffs were salespeople who were paid commissions only unless the total amount of their commissions for a given pay period, when averaged across all "Selling Time," fell below the minimum wage, in which case the employees received the minimum wage instead. 913 F. Supp. 2d at 1002-03.  The "Selling Time" included not only time actually on the store floor serving customers but also "30 minutes of daily stocking assignments as well as up to 40 minutes of pre-opening and post-closing time."  *Id*. at 1002.  The plaintiffs argued that this scheme violated the minimum wage law because commission could only be used to compensate them for "commission-earning activities" and therefore, they should have been compensated separately for the pre-opening, post-closing and stocking time, when they couldn't make sales that would earn commissions.  *Id*. at 1003.

The court in *Balasanyan*  agreed with the plaintiffs, finding that *Armenta*  precluded the averaging approach used by Nordstrom and required that "compensation must be *directly* tied to the activity being done, whether it is selling on commission or preparing to sell on commission."  *Id*. at 1006. The court implied that *preparing* to sell on commission was only indirectly tied to the

United States District Court
Northern District of California

1    commission payment and therefore did not satisfy *Armenta*.  The court went on to reject

2    Nordstrom's argument that "[c]ompensating employees via commission for [time spent in

3    connection with sales, including facilitating future sales]  is . . . appropriate because those

4    activities are related to the Plaintiffs' ability to generate profits."  *Id*. at 1007.  It noted that the

5    cases cited by Nordstrom were not on point because they did not involve pay averaging.  *Id*.  The

6    court further noted that this argument had been expressly rejected, citing two case decided in

7    federal district courts applying California law in which courts held that employers violated

8    California minimum wage law when they failed to pay workers for activities that were "essential"

9    or "integral and necessary" to the work that was compensated.  *Id*. at 1007-08 (citing *Ontiveros v.*

10   *Zamora*, 2009 WL 425962 (E.D.Cal.2009) and *Cardenas v. McLane Food Servs., Inc*., 796

11   F.Supp.2d 1246, 1249-53 (C.D.Cal.2011)).

12          For the reasons stated in *Balasanyan*, the Court rejects Exel's assertion that the unpaid

13   morning meetings and other activities are "directly related" to the actual deliveries for which Class

14   members are paid and therefore that averaging of the piece rate payments is permitted.   As a

15   matter of law, Class members in this case, as in *Balasanyan*, cannot make deliveries during this

16   time and therefore, cannot *directly* earn compensation under the piece rate scheme used by Exel.

17   As a consequence, the averaging that is barred under *Armenta* is also barred here.   Neither

18   *Balasanyan* nor any other case the Court has found supports Exel's assertion that it may establish

19   compliance with California's minimum wage law by showing that Plaintiffs' average wages for all

20   hours worked (including drivers' pre-trip work in the morning) is at or above the minimum wage

21   rate and that the work was "directly related" to deliveries.  Exel may not present such an argument

22   at trial and any evidence that is *only* relevant to that defense will be excluded.[4]

23          c.   Rest Periods

24          Plaintiffs also ask the Court to hold that Exel may not argue that its pay structure

25   compensates Class members for rest breaks actually taken because such pay must be separately

26

27   _____

28   [4] Similarly, the Court finds that Exel's proposed Jury Instruction No. 4 is not in compliance with
     California law to the extent it includes as an element "[t]hat the morning meetings were not
     directly related to the delivery services for which Villalpando was paid."

1   compensated.  Plaintiffs are correct that pay for rest periods taken by employees must be separate

2   from piece-rate compensation and cannot be satisfied by averaging.  *See Bluford v. Safeway*

3   *Stores, Inc.,* 216 Cal. App. 4th 864, 872 (2013) ("a piece-rate compensation formula that does not

4   compensate separately for rest periods does not comply with California minimum wage law").

5   Moreover, Exel concedes that it "didn't separately pay minimum wage for rest periods."

6   Defendants' Opposition to Plaintiffs' MIL No. 1 at 7.   Therefore, the Court GRANTS Plaintiffs'

7   MIL No. 1 to the extent Plaintiffs seek to preclude Exel from arguing that it compensated Class

8   members for rest breaks taken in its settlement payments.[5]

### D. Whether Exel Should be Precluded from Arguing or Presenting Evidence that Plaintiffs Waived their Rights under the California Labor Code by Signing the Independent Truckman's Agreement ("ITA") or the Equipment Lease Agreement ("ELA") (Plaintiffs' MIL No. 2)

#### 1. Summary of Arguments

Plaintiffs ask the Court to "preclude Defendants' witnesses testifying, and Defense counsel from referencing, arguing, soliciting testimony, or submitting documentary evidence that Class Members agreed to relinquish their rights under the Labor Code, by contract or otherwise." Plaintiffs' MIL No. 2 at 1.  Because the protections afforded by the California Labor Code may not be waived, they contend, such evidence could only be introduced to suggest to the jury an improper basis for rejecting Plaintiffs' claims.  *Id.*

Exel does not dispute that the protections of the California Labor Code cannot be waived by contract and state that it has "no intention of arguing that Plaintiffs waived rights that the Labor Code makes unwaivable.   Opposition  (Plaintiffs' MIL No. 2) at 2.  Nonetheless, it contends, it must be allowed to argue that Plaintiffs "agreed to particular methodologies for fulfillment of their Labor Code rights."  *Id.*   For example, it contends, it should be allowed to point to the compensation scheme established under the ITA and ELA to show that Plaintiffs agreed to be

---

[5] At the May 20 hearing, the Court found that to the extent Plaintiffs were seeking to recover minimum wage for rest breaks taken they had waived that claim by stipulating that the minimum wage claim was limited to morning meetings.  On further consideration, the Court concludes that the wages sought for rest breaks taken are governed by a separate provision of the California Labor Code, section 226.2 (requiring separate compensation for rest breaks as to employees who are compensated on a piece rate), and therefore, that Plaintiffs' stipulation as to the minimum wage claim did not result in any waiver as to their rest break claim.

United States District Court
Northern District of California

1    reimbursed for their expenses and for their morning meeting time in the manner specified under

2    these agreements and that Exel's scheme was in compliance with the Labor Code.  *Id*. at 4.  Exel

3    further asserts that "because Plaintiffs have a claim under the Unfair Competition Law, Exel's

4    waiver, estoppel, and laches arguments apply to that claim" and "[u]nless the Court decides to

5    bifurcate the UCL claim . . ., Exel has a right to put on evidence relating to these defenses, even if

6    the Court will ultimately be the fact-finder."  *Id*.  at 2.  Exel also argues that Plaintiffs' motion in

7    limine is too broad and will result in the exclusion of relevant evidence.  *Id*.

8                    **2.  Discussion**

9          The parties do not dispute that the claims Plaintiffs assert under the California Labor Code

10   are based on rights that cannot be waived by the agreement of the parties, and the Court agrees.

11   *See, e.g., Gentry v. Superior Court*, 42 Cal. 4th 443, 455 (2007), abrogated on other grounds ("By

12   its terms, the rights to the legal minimum wage and legal overtime compensation conferred by the

13   statute are unwaivable."); Cal. Lab. Code §  2804 (providing that any agreement made by an

14   employee to waive his or her right to expense reimbursement is null and void); Cal. Lab. Code §

15   206.5 (providing that employers and employees may not enter into agreements that waive the

16   employee's right to receive wages).  Consequently, Exel will not be permitted to argue to the jury

17   that the ITA and/or ELA gave rise to a waiver of any of Plaintiffs' claims.

18         On the other hand, to the extent this evidence may be relevant to Exel's defenses on the

19   Labor Code claims – and also may be necessary for the jury to understand the nature of Plaintiffs'

20   claims --  the Court does not preclude the introduction into evidence of the ITA and the ELA.

21   With proper instruction, this evidence need not be so prejudicial as to warrant a blanket exclusion.

22   Exel is incorrect, however, as to its assertion that it has a "right" to put on evidence relating to the

23   equitable defenses of estoppel, waiver and laches that it intends to assert on Plaintiffs' UCL claim.

24   The Court has already decided – and the parties agreed – that the UCL claim is to be tried to the

25   Court after the jury trial has concluded.  Evidence that relates only to Exel's equitable defenses on

26   the UCL claim may not be presented to the jury, as such evidence is not relevant to the issues the

27   jury is being asked to decide, will be confusing (to the extent the Labor Code rights cannot be

28   waived),  and is likely to be highly prejudicial.

Therefore, Plaintiffs' MIL No. 2 is GRANTED in part and DENIED in part as stated above.

### E. Whether Exel Should be Precluded from Arguing or Presenting Evidence Regarding the Propriety of Class Certification ("Plaintiffs' MIL No. 4)

#### 1. Summary of Arguments

Plaintiffs ask the Court to "preclude Defendants' witnesses from testifying, referencing, and defense counsel from soliciting testimony, arguing, mentioning in testimony, questions or comments or submitting documentary evidence regarding the propriety of class certification in this case." Plaintiffs' MIL No. 4 at 1. Plaintiffs contend the propriety of class certification is now the "law of the case" and that permitting Exel to introduce evidence pertaining to class certification, such as evidence that Plaintiffs are not similarly situated, would be unduly prejudicial and confusing to the jury. *Id.* at 2.

Exel contends this motion in limine should be denied because it is vague and overbroad and does not identify the specific evidence Plaintiffs seek to exclude. Opposition (Plaintiffs MIL No. 4) at 2. Exel agrees that it would not be appropriate to argue to the jury that the class should be decertified. *Id.* at 3. It contends, however, that it must be allowed to offer evidence on damages and liability that turn on individualized issues.

#### 2. Discussion

There is no question (and Exel does not dispute) that Exel may not argue to the jury that the Class should not have been certified. The Court declines, however, to rule generally that evidence of variation among class members or relating to individual class members is impermissible as Exel, as a general matter, is entitled to present such evidence as a defense to both liability and damages. Therefore, Plaintiffs' MIL No. 4 is GRANTED in part and DENIED in part as stated above.

### F. Motions in Limine Relating to the Types of Evidence and Testimony Plaintiffs May Use to Prove their Claims (Plaintiffs' MIL No. 5 and Defendants' MIL Nos. 2, 6 & 7)

#### 1. Background

In the Court's April 21 Order, it addressed whether Plaintiffs would be permitted to rely on

representative evidence, estimates and sampling under *Mt. Clemens* to prove their claims on the basis of "reasonable inference." The Court concluded that they could, finding that the paper records produced by Exel were inadequate and that Exel's duty to keep accurate records applied not only to hours worked but also to expenses. April 21 Order at 15-17. It further concluded that Plaintiffs could use estimates to establish damages on its claim for employee expenses under California Labor Code section 2802 and that they are not required to prove their expenses through actual receipts. *Id*. at 31-32. In the same Order, the Court rejected both parties' *Daubert* challenges, finding that Plaintiffs' damages experts and Defendants' rebuttal expert satisfied the requirements of Rule 702 of the Federal Rules of Evidence and that the parties' challenges to these experts' methodologies and conclusions could be addressed through cross-examination at trial. *Id*. at 33-34 (Curtis), 35-38 (Breshears) & 39-41 (Walker).

### 2. Summary of Arguments

#### a. Plaintiffs' MIL No. 5

In their MIL No. 5, Plaintiffs ask the Court to "preclude Defendants from presenting testimony, other evidence or argument suggesting that Plaintiffs cannot demonstrate class liability or damages by estimates, averaging, extrapolation, or other reasonable inference, or that Plaintiffs' recovery should be reduced because it is possible they could have proved damages more precisely with additional data or individualized inquiry." Plaintiffs' MIL No. 5 at 1. Defendants respond that this motion in limine should be denied because it does not identify the specific evidence Plaintiffs seek to exclude. Opposition (Plaintiffs' MIL No. 5) at 4. Exel expresses concern that if the Court were to grant this motion, relevant evidence, such as Dr. Walker's testimony challenging the reliability of Plaintiffs' estimates, would be excluded. *Id*.

#### b. Defendants' MIL No. 2

In Defendants MIL No. 2, Exel asks the Court to "bar[] Plaintiffs, their counsel, and any witness Plaintiffs may call or examine, from making any reference to, commenting about, introducing testimony, evidence or documents, or presenting any argument in an effort to show Plaintiffs' allegedly unreimbursed expenses by Plaintiffs, class members, or Plaintiffs' experts, except to the extent those expenses are supported by contemporaneous receipts or other

23

documentation that was actually produced in discovery in this case." Defendants' MIL No. 2, Notice of Motion. In this motion in limine, Exel repeats the arguments it made in its combined *Daubert*/ Decertification Motion. Plaintiffs oppose the motion on the basis that Exel is attempting to reargue an issue that the Court already decided. Opposition (Defendants' MIL No. 2).

### c. Defendants' MIL No. 6

In Defendants' MIL No. 6, Defendants argue that the damages estimates of Plaintiffs' experts, Breshears and Curtis, should be excluded because actual records exist and Breshears and Curtis have relied on "a small subset of actual records to extrapolate class-wide damages for unpaid employee expenses, overtime pay, and meal and rest period premiums." Defendants' MIL No. 6 at 3-4 & Notice of Motion. According to Exel, the paper driver daily logs are "extremely accurate." *Id*. at 5 (citing Capotosto Dep. at 70-73). At a minimum, Exel contends, the Court should hold a hearing on the adequacy of the paper records under Rule 104 of the Federal Rules of Evidence and make a finding on this question. *Id*. at 4. Defendants further assert that because the paper records were adequate, *Mt. Clemens* does not apply to Plaintiffs' claims and Plaintiffs may not rely on estimates, representative evidence or sampling. *Id*. at 4-6. Because the estimates of Curtis and Breshears will result in prejudice to Exel under Rule 403, that evidence should be excluded, Exel contends. *Id*. at 7. If the Court permits these experts to testify, Exel asks that the jury be instructed that their estimates have no bearing on liability. *Id*.

Plaintiffs oppose Defendants' MIL No. 6 on the grounds that the Court has already ruled on these issues. Opposition (Defendants' MIL No. 6) at 1-3. Moreover, it asserts, the paper records are inadequate and the deposition testimony offered by Exel of Henry Capotosto to show that they are complete and accurate relates only to drivers' logs, which represent only a very small percentage of Exel routes. *Id*. at 4-5. Plaintiffs argue that Exel still has not shown that it maintained complete and adequate records and that as a consequence Plaintiffs must be permitted to prove their damages by "just and reasonable inference." *Id*. at 5-6.

### d. Defendants' MIL No. 7

In its MIL No. 7, Exel asks the Court to preclude Plaintiffs' expert witness Breshears from testifying as to four specific estimates that they contend are arbitrary: 1) the miles driven by class

members (where classwide evidence is absent); 2) the number of hours and days class members worked (where classwide evidence is absent); 3) the class members' regular hourly rate; and 4) the average length of morning meetings.  Defendants' MIL No. 7 at 1.  Exel repeats the challenges to these estimates it raised in its Combined *Daubert*/Decertification motion and argues that while Plaintiffs' counsel can argue to the jury as to these amounts, Breshears should not be permitted to offer them as "expert" conclusions.  Plaintiffs argue that Exel is attempting to reargue its *Daubert* motion and that the Court has already rejected Exel's position.

### 3.  Discussion

All of the issues addressed in the motions in limine discussed above were decided in the Court's April 21 Order.  For the reasons stated in that Order: 1) the Court GRANTS Plaintiffs' MIL No. 5 to the extent Plaintiffs seek to preclude Exel from arguing at trial that Plaintiffs may not prove their claims based on reasonable inference, estimates and representative testimony.   In particular, Exel may not argue or seek to elicit testimony that the methodology of Plaintiffs' experts was unreasonable because they did not use actual receipts or rely on the paper records that the Court has found were inadequate.  On the other hand, Exel is not prohibited from introducing the content of the paper records in order to show that the inferences Plaintiffs' experts have drawn are unreasonable;   2) The Court  DENIES Defendants' MIL Nos. 2, 6 and 7.

The Court also rejects Exel's request to hold an evidentiary hearing regarding the adequacy of the paper records that it produced under Rule 104 of the Federal Rules of Evidence, as requested in Defendants' MIL No. 6.  The Court recognizes the importance of this question, given that the applicability of the *Mt. Clemens* rule to some of Plaintiffs' claims turns on the Court's determination of whether Exel maintained adequate records.  A review of the evidence offered by Exel in support of its motion in limine, however, persuades the Court that the conclusions stated in the April 21 Order are correct.  As a preliminary matter, Exel challenges the Court's conclusion that it is the employer who bears the burden of *demonstrating* that it has maintained adequate records.  *See* Defendants' MIL No. 6 at 1.  Instead, Exel argues that the employees must demonstrate that an employers' records are inadequate before they will be entitled to prove their claims by "just and reasonable inference," citing *Mt. Clemens*, 328 U.S. at 687-88.  *Mt. Clemens*

United States District Court
Northern District of California

1   says no such thing and in fact, does not appear to address the situation here, where there is a

2   dispute as to the adequacy of the records produced.

3         As the Court noted in its previous order, it is the *employer* who is in "the best position to

4   keep accurate records of an employee's work and should bear the risk that records will be

5   inadequate." April 21 Order (quoting *Grimes v. Kinney Shoe Corp.*, 902 F. Supp. 1070, 1074 (D.

6   Alaska 1995)). Similarly, the Court finds that it is the employer who is in the best position to

7   demonstrate that its records are complete and accurate. Therefore, it is the employer who should

8   bear the burden of establishing that it is produced complete and accurate records. Having

9   reviewed the evidence offered by Exel as to the adequacy of the paper records it produced to

10  Plaintiffs, the Court concludes that Exel has not met its burden and also has not demonstrated that

11  it would be able to do so if the Court were to conduct a hearing on this question under Rule 104.

12        In support of its Combined *Daubert*/Decertification motion, Exel's counsel, Angela Cash,

13  provided a declaration describing the collection of the paper records in response to Plaintiffs'

14  discovery requests. *See* Cash Decl., Docket No. 240 at ECF pages 24-26. She states that 1,300

15  boxes of documents were collected from various work sites and delivered to a central location in

16  Los Angeles. *Id.* ¶ 3. These boxes contained an estimated 4,500,000 pages of documents. *Id.* ¶ 5.

17  Cash describes Plaintiffs' initial efforts to go through all of the boxes to "extract" specific

18  categories of records, namely, driver activity logs, driver daily logs, driver time sheets, driver

19  vehicle inspection reports, and trip sheets. *Id.* ¶ 6. Mixed in with these documents were delivery

20  manifest, bills of lading, customer receipts and "other documents." *Id.* ¶ 7. According to Cash,

21  Plaintiffs' counsel eventually gave up trying to go through each box and instead selected 40 boxes

22  for scanning, from 7 Exel facilities. *Id.* ¶ 12. Cash states that Plaintiffs scanned 89,697 pages. *Id.*

23  It is clear from Cash's declaration that the documents produced were not organized in any

24  particular fashion or even grouped together by category. Cash does not state that the paper records

25  contained in the 1,300 boxes covered all Class members and/or relevant time period for any

26  particular category of document.[6]

27  _____

28  [6] In its motion in limine, Exel cites to the Cash Declaration in support of the assertion that Exel
    produced "driver's daily logs for every driver in the class during the class period." Defendants'

United States District Court
Northern District of California

In support of its Motion in Limine No. 6, Exel offers testimony by its National Director of Safety, Henry Capotosto, to show that the paper records were adequate.   Capotosto testified that the driver daily logs are audited by Exel and are likely about 90% accurate because Exel can incur penalties from the Department of Transportation for inaccurate or incomplete logs.   *See* Capotosto Depo. at 70-73.  Capotosto also acknowledged, however, that drivers are not required to complete daily logs unless they drive outside of a 150-mile radius of the location where they are based.  *Id*. at 73.  Further, Capotosto did not testify that the driver daily logs produced to Plaintiffs were complete;  nor has anyone else from Exel offered such testimony.  In short, nothing in the evidence offered in support of Exel's MIL No. 6 suggests that Exel will be able to establish that that the paper records were complete and accurate such that Plaintiffs should be deprived of the opportunity to prove their claims by "just and reasonable inference."  Therefore, the Court finds, as a factual matter, that the records produced by Exel were inadequate.

### G.   Whether Dr. Walker Should be Precluded from Offering Opinions Based on Allegedly incorrect Legal Assumptions (Plaintiffs' MIL No. 7)

#### 1.   Summary of Arguments

In Plaintiffs' MIL No. 7, they ask the Court to preclude "Defendants and their expert witnesses from testifying and/or soliciting testimony that is premised on legal conclusions regarding what expenses are recoverable and/or what deductions are allowable under the law." Plaintiffs' MIL No. 7 at 1.  In particular, Plaintiffs ask the Court to prohibit Defendants' expert, Dr. Walker, from offering testimony "premised on legal conclusions or assumptions that a particular cost is not recoverable under Labor Code § 2802, or that a particular chargeback is legally permitted, notwithstanding Labor Code §§ 221, 223, at 400-410."  *Id*.  They point, in particular, to Dr. Walker's opinions that Plaintiffs should receive no recovery for certain categories of expenses on the basis that they are unavailable as a matter of l (e.g. truck liability

---

MIL No. 6 at 2 (citing Cash Decl. generally). Ms. Cash did not state anything of the sort.  She stated only that Plaintiffs requested driver's daily logs, timesheets and manifests, that these documents were stored on site at various locations throughout California, and that in the end, 1,300 boxes of documents were collected.  She makes no representations as to whether the documents collected by Exel were complete or accurate.

insurance, license, registration and permit fees, parking tickets). *Id*. at 3.

Plaintiffs also contend Dr. Walker should not be permitted to testify that Class members should receive no recovery on damage claims (costs deducted from Class members' paychecks for property or product damages) on the basis that they might have caused the damage themselves. *Id*. at 2. According to Plaintiffs, this will mislead the jury because under California law, employees are only required to pay for damage to property or equipment if it was the result of willful conduct, and there is no evidence that any Class member has ever willfully damaged a delivery item. *Id*. (citing Cal. Code Regs. tit. 8 § 11090; *Hudgins v. Neiman Marcus Grp.*, 34 Cal. App. 4th 1109, 1111 (1995)).

Defendants respond that both sides' experts have made assumptions of law in their analysis and that doing so is permissible so long as the expert does not rely on an incorrect legal assumption. Opposition (Plaintiffs' MIL No. 7) at 2. As Plaintiffs have not shown that any of the legal assumptions Dr. Walker relied upon were incorrect, the motion should be denied, Exel contends. *Id*.

### 2. Discussion

It is well-established that "[e]xpert testimony is not proper for issues of law." *Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996). As the court explained in *Crow Tribe*, "[e]xperts interpret and analyze factual evidence. They do not testify about the law."' *Id*. (internal quotations and citations omitted). Further, expert opinion that is only a legal conclusion without underlying factual support constitutes "unsupported speculation" and does not meet the requirements of *Daubert*. *Plush Lounge Las Vegas LLC v. Hotspur Resorts Nevada Inc*., 371 F. App'x 719, 720 (9th Cir. 2010) (citing *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 590 (1993)). This does not mean, however, that an expert cannot incorporate legal assumptions into his or her analysis, though an expert's reliance on *incorrect* legal assumptions would warrant exclusion, as the Court recognized in its April 21 Order. *See* April 21 Order at 40 ("to the extent Plaintiffs challenge Walker's opinions as being based on incorrect legal assumptions . . . the Court concludes that these are issues that should be addressed in motions in limine").

With these principles in mind, the Court GRANTS in part and DENIES in part Plaintiffs'

MIL No. 7.  The motion is granted to the extent Exel's expert (like any expert witness) is prohibited from testifying as to the state of the law; it is DENIED to the extent that he may offer factual testimony that is based on legal assumptions.  In the latter scenario, Dr. Walker (and Plaintiffs' experts as well) may testify that they have been asked to make certain assumptions but may *not* testify as to the legal basis for those assumptions.

### H.   Motions in Limine Related to Who Benefited from Plaintiffs' Classification as Independent Contractors (Plaintiffs' MIL No. 6, Defendants' MIL No. 1)

#### 1.   Summary of Arguments

##### a.   Plaintiffs' MIL No. 6

In their MIL No. 6, Plaintiffs ask the Court to exclude argument or testimony that Plaintiffs are better off as independent contractors than they would be as employees, asserting that such evidence is irrelevant.  Plaintiffs' MIL No. 6 at 1-2.  They also argue that Dr. Walker's analysis on this subject is highly prejudicial and confusing because he relied on the amount Class members paid their second drivers in support of his conclusion, even though the rates paid to second drivers is tainted by the fact that the Class members themselves are misclassified.  *Id.* at 2 (citing *Butler v. Home Depot, Inc.*, 1997 WL 605754, at *11 (N.D. Cal. Aug. 29, 1997).   Defendants counter that this testimony is relevant because it rebuts Plaintiffs' expert's testimony that Exel saved money by treating its drivers as independent contractors.  Opposition (Plaintiffs' MIL No. 6) at 1-2.  As to whether the rate paid to second drivers is "tainted," Exel contends, this is a question that can be handled through cross-examination and does not require exclusion under Rule 403. *Id.*  Exel further contends that the amount Class members would earn as employees, as compared to independent contractors, is directly relevant to Exel's defense that Plaintiffs were already reimbursed for their expenses through their settlement payments.  *Id.* at 4.

##### b.   Defendants' MIL No. 1

In Defendants' MIL No. 1, Exel asks the Court to exclude evidence or testimony that Exel benefitted economically from reclassifying its delivery drivers as independent contractors. Defendants' MIL No. 1 at 1.  According to Exel, this evidence is irrelevant because it does not indicate the damages the employees may recover under the Labor Code.  *Id.* at 2-3.  To the extent

Plaintiffs intend to rely on this evidence in connection with their UCL claim, Exel contends they should not be permitted to do so because: 1) Breshears is only a damages expert and Plaintiffs refer to this testimony in connection with liability; 2) Plaintiffs have only asked to be "restored" their wrongfully withheld wages and other employee benefits, and savings Exel might have made from reclassifying the drivers are not a measure of such wages and benefits; and 3) the UCL claim is derivative of the Labor Code claims and Exel's alleged savings have no bearing on those claims. *Id*. at 4.  Exel also argues that evidence about its alleged savings should be excluded under Rule 403 because it is unduly prejudicial and potentially confusing to the jury.  *Id*. at 5.

In their Opposition, Plaintiffs challenge Exel's assertion that evidence and testimony showing its costs savings is not relevant to Plaintiffs' claims. Opposition (Defendants' MIL No. 1).  According to Plaintiffs, the evidence "consists of a series of Exel's own internal cost calculations showing, among other things, the amount of expenses it would no longer have to cover (i.e., reimburse) under an independent contractor model," which is "directly relevant to Plaintiffs' claim that Exel did not reimburse their expenses and that it made unlawful deductions, as well as to the *amount* of the expenses Exel did not reimburse."  *Id*. at 2 (emphasis in original). Plaintiffs further contend this evidence is relevant to show that the estimates of its expert, Mr. Breshears, are reasonable in the face of Exel's assertions that they are not.  *Id*. at 3.  This evidence is particularly important, Plaintiffs' contend, because Exel did not keep adequate records, leaving Plaintiffs to prove their claims by way of "just and reasonable inference."  *Id*. at 3.  Plaintiffs also note that this evidence will be relevant to the extent Exel intends to argue as a defense to Plaintiffs' reimbursement claim that it did not know employees were incurring expenses.  *Id*. at 6.

### 2.  Discussion

These motions in limine turn largely on whether or not the evidence and testimony at issue in the motions is relevant to any claims or defenses in the case.  As in its previous Order, the Court concludes that determinations of relevance are better decided closer to trial, or even at trial, given that some of the theories of relevance advanced by the parties will be affected by the way in which the evidence comes in.   Therefore the Court DENIES both motions without prejudice. Nonetheless, the Court offers the following guidance to the parties.

United States District Court
Northern District of California

First, to the extent Exel intends to argue that it factored certain expenses into its compensation scheme when it developed its "stop rate," evidence that it performed cost benefit analyses to determine how much it would save if it did *not* cover those expenses would be highly relevant to Exel's defense.  As discussed above, Exel will not be permitted to assert such a defense unless it makes a showing as to the apportionment requirement.  If it can overcome this hurdle, however, Plaintiffs will likely be permitted to introduce evidence relating to how much Exel expected to save by reclassifying its drivers as independent contractors.

Second, to the extent that Exel claims the expense estimates of Plaintiffs' experts are unreasonable for the purposes of determining damages, evidence of Exel's own internal evaluation of expenses made in connection with the reclassification decision will likely be relevant as well, at least as to damages.

Third, as a general matter, the Court is not persuaded that evidence showing that drivers benefited from being treated as independent contractors has any bearing on Plaintiffs' Labor Code claims.  That said, Exel may be permitted to introduce evidence and testimony to show that the settlement payments made to Class members satisfy the requirements of California Labor Code § 2802 *if* it is able to demonstrate to the Court that there is evidence from which a jury could reasonably conclude that the apportionment requirement of *Gattuso* is met, as discussed above.

### I.   Whether Plaintiffs Should be Permitted to Introduce Exel Bids and Costs Estimates (Defendants' MIL No. 4)

#### 1.   Summary of Arguments

In Defendants' MIL No. 4, they argue that Plaintiffs should be precluded from introducing into evidence Exel bids and cost estimates that were prepared in connection with customer proposals.  Defendants' MIL No. 4 at 2.  According to Exel, these Request for Proposal ("RFP") documents are only "rough projection[s]" of delivery costs, do not reflect "actual expenses" and do not account for variations.  *Id*. at 1.  Because they have no bearing on *actual* expenses, Exel asserts, they are irrelevant and inadmissible.  *Id*. at 3-4.  Exel argues that these RFPs are not only irrelevant but also highly prejudicial and should be excluded under Rule 403.

Plaintiffs oppose this motion in limine on the basis that the Court has already decided that

1   that they will be permitted to prove their expenses by "just and reasonable inference" rather than

2   requiring Plaintiffs prove their actual expenses.  Opposition (Defendants' MIL No. 4).  To the

3   extent the RFP documents are Exel's own estimates, Plaintiffs argue that they are highly probative

4   of whether the estimates of Plaintiffs' experts are reasonable and therefore must be allowed. *Id.* at

5   3-6.

6        **2.  Discussion**

7     The Court DENIES Defendants' MIL No. 4.  First, the Court rejected the main premise of

8   Exel's motion – that Plaintiffs must prove their actual expenses and may not rely on estimates –

9   for the reasons stated in the Court's  April 21, 2016 Order.  Second, to the extent that the RFP

10  documents are directly relevant to the reasonableness of Plaintiffs' estimates as to their employee

11  expenses, Plaintiffs are entitled to rely on them to rebut Exel's assertion that the estimates of

12  Plaintiffs' experts are not reasonable.

13    **J.**  **Whether Plaintiffs Should Be Permitted to Introduce Evidence Related to Costs
    of Operating a Truck (Defendants' MIL No. 8)**

14

15      **1.  Background**

16    In its summary judgment order, the Court held that Defendants were entitled to summary

17  judgment on Plaintiffs' reimbursement claim to the extent they sought to recover the lease

18  payments on their delivery trucks.  *See* Order re Cross Motions for Summary Judgment [Docket

19  No. 210] at 67-68.  The Court relied on *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal.

20  App. 4th 1 (2007), as well as a series of DLSE Opinion Letters addressing whether an employee

21  can be required to furnish his or her own vehicle.  *Id.*  The Court explained that "[t]he DLSE has

22  found that although the costs of operating a motor vehicle in the course of employment may be

23  covered by California Labor Code section 2802, the costs of furnishing the vehicle itself are not."

24  *Id.* at 67 (citing DLSE Interpretive Bulletin No. 84-7 (Jan. 8, 1985) ("Bulletin 84-7") ("an

25  applicant for employment may be required, as a condition of employment to furnish his [ ] own

26  automobile or truck to be used in the course of employment, regardless of the amount of wages

27  paid"); DLSE Opinion Ltr. 1991.02.25-1 (Feb. 25 1991 Opinion Letter presuming that employer

28  may require employee to use own car while opining that employer must reimburse for insurance

United States District Court
Northern District of California

premiums); DLSE Opinion Ltr. 1991.08.30 (Aug. 30, 1991 Opinion Letter presuming that employer can require employee to use own truck but opining that employer must reimburse employee for costs of operation); DLSE Opinion Ltr. 1994.08.14 (Aug. 14, 1994 Opinion Letter presuming employees may be required to provide own trucks or automobiles and addressing reimbursement rates); DLSE Opinion Ltr. 1998.11.05 (Nov. 5, 1998 Opinion Letter presuming employee could be required to use own vehicle while opining that employer must reimburse for insurance premiums)).

### 2.  Summary of Arguments

In Defendants' MIL No. 8, Exel asks the Court to preclude the introduction of evidence are arguments relating to the following categories of expenses that Exel contends are unavailable as a matter of law: 1) parking and speeding tickets; 2) toll fees;  3) medical insurance; 4) costs of furnishing a vehicle (licenses, permits and insurance).  Defendants' MIL No. 8 at 3.

Exel argues that Plaintiffs may not recover the cost of parking or speeding tickets because Labor Code section 2802 allows only for the recovery of "necessary" employee expenses.  *Id*. Whether expenses are necessary "depends on the reasonableness of the employee's choices" and incurring fines can never be reasonable, Exel contends.  *Id*. (quoting *Gattuso*, 42 Cal. 4th at 568).

Plaintiffs should not be permitted to seek reimbursement for tolls, according to Exel, because some class members never paid tolls and even as to those who paid tolls, "there is no indication as to whether those tolls were incurred in connection with their duties."  *Id*. at 4-5.

Exel argues that Plaintiffs should not be permitted to seek medical insurance premiums because these would be paid by employees regardless of whether one drove a truck for Exel.  *Id*. at 5.

Exel argues that Plaintiffs should not be able to recover meal expense because these "are not incurred in direct consequence of the driver's job duties" and typically are not reimbursable. *Id*.

Finally, Exel argues that *Estrada* precludes recovery not only on lease payments (as this Court has also held) but also for payments on purchased vehicles.  *Id*.  Therefore, Exel argues, Plaintiffs cannot recover the expenses incurred in connection with furnishing a truck such as

licenses, permits, and insurance. *Id.* These "sunk costs" are part of furnishing a truck rather than operating a truck, according to Exel, and therefore are barred under *Estrada*. *Id.* at 5-6.

In their Opposition, Plaintiffs argue that the question of what types of expenses are necessarily incurred under section 2802 should be decided by the jury and that there are material issues of facts as to whether tolls, parking and traffic tickets and medical insurance are necessary expenses. Opposition (Defendants' MIL No. 8) at 1, 4.   They argue in addition that there are disputed facts as to whether permits, licensing and insurance are necessary expenses and contend Exel is incorrect in its assertion that these expenses are unavailable as a matter of law. *Id*. at 2, 4. Plaintiffs point to the fact that the IRS includes insurance, license, registration and permits in the mileage reimbursement rate it uses for employers. *Id.* It also argues that all of these expenses are ongoing and therefore are part of the cost of *operating* – rather than furnishing – a vehicle. *Id*. at 3. Exel also points out that this Court has held only that lease payments are unavailable and has not held that licenses, permits and insurance are unavailable. *Id*. at 4. It also argues that these costs can be recovered because, under California law, "[a]n employer is vicariously liable for risks broadly incidental to the enterprise undertaken by the employer – that is, for an employee's conduct that, in the context of the employer's enterprise, is 'not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.'" *Id*. (citing *Takacs v. A.G. Edwards & Sons, Inc*., 444 F. Supp. 2d 1100, 1124 (S.D. Cal. 2006) (quoting *Jacobus v. Krambo Corp*., 78 Cal. App. 4th 1096, 1101 (2000)).[7]

### 3.  Discussion

California Labor Code section 2802 provides that:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

United States District Court
Northern District of California

---

[7] Plaintiffs do not dispute that the cost of the drivers' meals are not reimbursable and they do not seek to recover that category of expenses. Therefore, the motion in limine is GRANTED as to meal expenses.

1    Cal. Lab. Code § 2802(a).   "Whether a business expense incurred is 'necessary' for purposes of

2    applying Cal. Labor Code § 2802 'is ordinarily a question of fact, but the issue may be determined

3    as a question of law when the material facts are undisputed and no conflicting inferences are

4    possible.'" *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1124-25 (S.D. Cal. 2006)

5    (quoting *Jacobus*, 78 Cal. App. 4th at 1101).

6         The Court rejects Exel's assertion that insurance, licenses and permits are not reimbursable

7    expenses as a matter of law.  In *Estrada*, the court ruled only that "it is perfectly lawful for an

8    employer to require its employees to provide their own vehicles as a condition of employment"

9    and therefore,  that Defendant was not required to "reimburse the drivers for the cost of their

10   trucks."  *Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 25 (2007).  Similarly,

11   this Court held on summary judgment that Plaintiffs could not recover their lease payments.

12   Nothing in *Estrada*, however, supports Exel's broad interpretation  of the holding of that case to

13   include insurance, licenses and permits as part of the "cost" of furnishing a truck (as opposed to

14   the costs of operation, which Exel concedes may be subject to reimbursement).  To the contrary,

15   the *Estrada* court's conclusion that employees could be required to provide a vehicle as a

16   condition of employment was based, in part, on a DLSE opinion letter finding that "when an

17   employee uses his own automobile for his work, *the employer must pay for the employee's*

18   *insurance premiums*." *Id*. (citing  February 25, 1991 Opinion Letter (No. 1991.02.25–1)

19   (emphasis added)).

20        Another opinion letter the *Estrada* court relied upon "respond[ed] to a question about

21   employees who regularly drive their personal vehicles for business purposes and discusse[d] the

22   employer's obligation to pay insurance premiums for coverage above the legal minimum." *Id*.

23   (citing November 5, 1998 Opinion Letter (No. 1998.11.05)).   That opinion letter stated, in part, as

24   follows:

25            As long as the employer reimburses the employee for the cost of the
             insurance and does not dictate which company supplies the
26           insurance, the Labor Code does not prevent the employer you
             describe from requiring its employees to obtain insurance coverage
27           beyond the legal minimum. *Those expenses which an employer*
             *causes an employee to incur, however, must be reimbursed, since*
28           *Labor Code § 2802 requires that the employer indemnify the*
             *employee for such loss or expenditure which is in direct*

United States District Court
Northern District of California

*consequence of the discharge of his duties.*

Nov. 5, 1998 Opinion Letter (emphasis added). This Court, like the *Estrada* court, relied on these opinion letters in its summary judgment order. *See* Docket No. 210 at 67.

Based on *Estrada* and the DLSE opinion letters upon which that court (and the undersigned relied), the Court concludes that the exclusion for the cost of furnishing a truck must be construed narrowly to apply only to lease payments or the purchase price of the truck and does not extend to insurance, licenses and permits. The Court notes that its conclusion is supported by *Gattuso*, in which the California Supreme Court stated, "[t]he actual expenses of using an employee's personal automobile for business purposes include fuel, maintenance, repairs, insurance, registration, and depreciation." *Gattuso v. Harte-Hanks Shoppers, Inc.*, 42 Cal. 4th 554, 568 (2007). While the dispute in *Gattuso* was about *how* the employer could meet its obligations under section 2802 rather than the types of expenses that are recoverable, the Court nonetheless finds the California Supreme Court's pronouncement as to the types of expenses that are reimbursable to contradict Exel's position. Therefore, the Court declines to hold as a matter of law that Plaintiffs cannot recover expenses incurred in connection with insurance, licenses and permits and DENIES Exel's motion in limine to the extent it asks the Court to preclude evidence and arguments as to those expenses because there are fact questions as to whether these expenses were necessarily incurred by Plaintiffs in direct consequence of the discharge of their duties.

The Court also rejects Exel's assertion that Plaintiffs should not be allowed to present evidence or arguments about tolls because some class members may not have incurred that particular expense. At most, this is a damages question as Plaintiffs need only establish for the purposes of liability that all of the Class members incurred *some* expense for which they are owed reimbursement under Section 2802. At the damages phase of the case, Exel may present the evidence that they contend shows that some class members did not incur this expense and the jury can, if it finds this evidence to be credible, reduce its award on the Section 2802 claim accordingly.

On the other hand, the Court finds that Plaintiffs may not seek medical insurance expenses, both because a jury could not reasonably conclude that medical insurance is a necessary employee

United States District Court
Northern District of California

1   expense and because the question is not susceptible to classwide proof.

2          The Court also finds, as a matter of law, that speeding and parking tickets are not

3   reimbursable, and therefore, that evidence relating to those expenses must be precluded.

4   Although Exel has not cited any case in which a court has held that such expenses cannot be

5   recovered under Section 2802, the language of that provision suggests that it was not intended to

6   apply to expenses arising from conduct that was unlawful *and* that the employee "believed . . . to

7   be unlawful."  Cal. Labor Code § 2802.  Given the public policy implications of awarding

8   expenses associated with knowing unlawful conduct, the Court declines to allow such expenses in

9   the absence of any case law indicating that they are allowable under section 2802.

10          For the reasons stated above, Defendants' MIL No. 8 is GRANTED in part and DENIED

11  in part.

12  **III.    CONCLUSION**

13          The Court's rulings on the Motions in Limine are as follows:

14          Plaintiffs' Motions in Limine:

15          **Plaintiffs' MIL No. 1**: GRANTED as to Reimbursement and Deduction claims to the

16  extent that Exel will not be permitted to introduce evidence that the settlement payments were

17  enhanced to include unreimbursed expenses or expenses for which deductions were later taken

18  unless it can first demonstrate to the Court that it will be able to offer evidence from which a

19  reasonable jury could conclude that the apportionment requirement in *Gattuso* is met.  GRANTED

20  as to minimum wage and rest break claim.

21          • **Plaintiffs' MIL No. 2**: GRANTED in part and DENIED in part.
22          • **Plaintiffs' MIL No. 3**: GRANTED.
            • **Plaintiffs' MIL No. 4:** GRANTED in part and DENIED in part.
23          • **Plaintiffs' MIL No. 5:** GRANTED in part and DENIED in part.
24          • **Plaintiffs' MIL No. 6:** DENIED.
            • **Plaintiffs' MIL No. 7:** GRANTED in part and DENIED in part.
25

26          Defendants' Motions in Limine
            • **Defendants' MIL No. 1:** DENIED.
27          • **Defendants' MIL No. 2:** DENIED
28          • **Defendants' MIL No. 3:** GRANTED in part and DENIED in part.

37

*United States District Court*
*Northern District of California*

- **Defendants' MIL No. 4:** DENIED.
- **Defendants' MIL No. 5:** GRANTED in part and DENIED in part.
- **Defendants' MIL No. 6:** DENIED.
- **Defendants' MIL No. 7:** DENIED.
- **Defendants' MIL No. 8:** GRANTED in part and DENIED in part.

Plaintiffs' counsel shall submit to the Court, no later than May 31, 2016, a proposed form of notice  informing the Second Driver Subclass of this Court's Order and provide a plan of notice distribution for approval.  In addition, the parties are ordered to meet and confer, and submit revised joint jury instructions and verdict forms consistent with the rulings in this Order by **May 25, 2016.**[8]

**IT IS SO ORDERED.**


Dated:  May 20, 2016


_____
JOSEPH C. SPERO
Chief Magistrate Judge

---
[8] Additional materials that are to be submitted by May 25, 2016 will be set forth in the Court's minutes for the May 20, 2016 hearing.